UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARISOL ORDONEZ VARGAS,<br><br>               Plaintiff,<br><br>-against-<br><br>ORANGE COUNTY; NEW YORK CORRECT CARE SOLUTIONS MEDICAL SERVICES, P.C.; JOSEPH PATRICK HARKINS; TENESHIA WASHINGTON, RN; JILLIAN M BARONE, RN; MANDI LEE ZACCAGNINO, NP; DOMINICK PIACENTE; AND DOE DEFENDANTS 1-4,<br><br>               Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff MARISOL ORDONEZ VARGAS,[1] by her attorneys, Cohen&Green PLLC, complaining of the Defendants, alleges, upon information and belief and personal knowledge:

**NATURE OF THE CASE**

1. Plaintiff brings this action for damages for personal injury and pain and suffering she suffered while detained Orange County at the Orange County Correctional Facility ("OCCF") in Orange County, New York.

2. Plaintiff also brings this action pursuant to 42 U.S.C. § 1983 and New York State Law against Orange County and its employees, agents, and servants, including but not limited to various correction officers and medical professionals, and against other named individuals.[2]

---

[1] Ms. Ordonez Vargas is a transgender person. Her name on her birth certificate is Oswaldo Jose Ordonez Vargas. Her correct name, used here, is Marisol Ordonez Vargas.

[2] As set out below, upon information and belief, and in the alternative as relevant, Plaintiff also has claims against WELLPATH LLC (formerly known as CORRECT CARE SOLUTIONS MEDICAL SERVICES PC), WELLPATH NEW YORK LLC, H.I.G. CAPITAL, LLC, and other related entities (together, "Wellpath"). In the interest of clarity, Plaintiff notes the following to explain Wellpath's absence and her currently intended (subject to change) plan as concerns Wellpath. Wellpath is currently in bankruptcy. *See, In re: Wellpath Holdings Inc., et al.,* 24-90533 (S.D. Bank. Tx. 2024). Accordingly, the time to file such claims against those entities is paused. *See* 11

1

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

3. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4) and over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

4. The federal civil rights claims in this action are brought pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper under 28 U.S.C. § 1402(b) in the District Court for the Southern District of New York, because the acts and omissions giving rise to Plaintiff's claims occurred within the Southern District of New York.

6. On January 2, 2024, Plaintiff filed a notice of claim with Defendant Orange County.

7. Plaintiff appeared for her 50-H hearing on May 29, 2024.

8. More than thirty days have elapsed since Plaintiff served a Notice of Claim and Orange County has not offered adjustment or payment thereof.

9. Accordingly, Plaintiff has complied with all statutorily jurisdictional requirements and conditions precedent to commencement and prosecution of this litigation.

## PARTIES

10. Plaintiff has been at all times relevant to this action, a resident of Bronx County in the State of New York.

11. Defendant Orange County is sued for personal injuries to Plaintiff caused by the wrongful or negligent acts or omission of Defendants' agents or employees, who were acting

---

U.S.C. § 108(c). New York Correct Care Solutions is not named in *In re: Wellpath*, and is named here in an abundance of caution, given the lack of clarity on whether the pause of the statute of limitations applies to it.

Plaintiff intends to do some or all of: File a claim against Wellpath as part of the bankruptcy process, seek an exception to the stay to name and serve Wellpath, and/or take other steps to appropriate litigate her rights as concerns Wellpath and any entity owned by Wellpath.

within the scope of their office or employment as correctional and/or law enforcement agents of Orange County.

12. Defendant New York Correct Care Solutions Medical Services, P.C. ("NY Correct Care"), is sued for personal injuries to Plaintiff caused by the wrongful or negligent acts or omission of Defendants' agents or employees, who were acting within the scope of their office or employment as medical providers at Orange County Correctional Facility.

13. Defendant NY Correct Care contracted with Orange County for the purpose of providing medical care and treatment for OCCF inmates and detainees.[3]

14. Non-Defendants collectively identified above as Wellpath contracted with Orange County for the purpose of providing medical care and treatment for OCCF inmates and detainees.

15. At all times hereinafter mentioned, Defendants Joseph Patrick Harkins, Teneshia Washington, RN; Jillian M Barone, RN; Mandi Lee Zaccagnino, NP; and Dominick Piacente worked at OCCF.

16. At all times hereinafter mentioned, Doe Corrections Defendants 1-3 were people employed by Orange County as members of the Department of Corrections.

17. At all times hereinafter mentioned, Doe Medical Defendant 4 worked at OCCF.

18. Each individual Defendant is sued in her or his individual and official capacities.

---

[3] It is not clear — and Plaintiff has no ability to discern definitively — exactly the corporate structure and status of whom Orange County has contracted with to provide care, and which entities signed what contracts with Orange County. NY Correct Care appears to be an active entity according to the Secretary of State and appears to be an entity responsible for relevant care at various points. Wellpath also appears to have had some of the relevant contracts, but it is not clear exactly how responsibility was divided between the two and the relationship of the two entities to each other.

Given the bankruptcy and lack of public information definitively resolving this issue, as well as the information asymmetry, Plaintiff proceeds here alleging responsibility jointly, severally, and in the alternative, upon information and belief.

19. Medical care providers, employees and agents, employed by a government entity are state actors for 42 U.S.C. § 1983 purposes acting under color of law when treating inmates and/or implementing policies and practices regarding provision of medical care. *West v. Atkins*, 487 U.S. 42, 54 (1988).

20. Private managers, executives, owners, directors, board members, supervisors employed to direct the delivery of medical care to inmates are state actors acting under color of law for purposes of § 1983. *Id.*

21. A municipality cannot delegate its constitutional duties to provide adequate medical care.

**FACTUAL ALLEGATIONS**

**Facts Specific to Plaintiff's Treatment.**

22. Plaintiff emigrated to the United State in September of 2022 to Houston, TX. She then moved to New York. In both Houston and New York, Ms. Ordonez Vargas had been regularly checking in and attending her ICE appointments as requested.

23. On October 4, 2023, Ms. Ordonez Vargas received an email notification from ICE requesting her to appear at Federal Plaza in New York.

24. On October 5, 2023, Ms. Ordonez Vargas reported to Federal Plaza.

25. On October 5, 2023, ICE detained Plaintiff and transferred her to OCCF in Goshen, New York.

26. Plaintiff was scheduled to have surgery on her fractured nose from a recent car accident on October 5, 2023, and she had documentation with her proving this when she was detained.

27. Plaintiff told the ICE employees who detained her and transferred her to OCCF that her nose was in pain and that she was scheduled to have surgery that day.

28. Lakeena T. Lloyd, a registered nurse, examined Plaintiff in ICE custody on October 5, 2023 and noted that Plaintiff had a fractured nose and was scheduled for surgery that day.

29. Throughout Plaintiff's time at OCCF, the staff provided wholly inadequate treatment for her fractured nose, causing severe pain and mental distress including but not limited to bleeding, difficulty breathing, and anxiety.

30. OCCF staff refused to provide Plaintiff with the medication or treatment which she needed and did not take her health concerns seriously. Additionally, they placed her in solitary confinement without proper justification.

31. Plaintiff speaks Spanish and does not speak English. Throughout Plaintiff's time at OCCF, OCCF repeatedly failed to make available employees who speak Spanish or translators.

32. Upon arrival at OCCF, Plaintiff informed approximately ten staff members that Plaintiff had a headache and nose pain due to her broken nose, and that she was supposed to be having surgery that day.

33. Medical Doe 4, a medical professional, believed to be a nurse and a Black man, told Plaintiff a specialist would examine her, but this never happened.

34. Defendant Joseph Patrick Harkins, who could be Medical Doe 4, e-signed a Suicide Watch Initial Assessment for Mental Health, which led to Plaintiff's placement in solitary confinement.

35. Defendant Harkins does not speak Spanish, and the tele-method of interpretation made it such that Defendant Harkins could not understand Plaintiff's answers to his questions. Defendant Harkins noted in the Suicide Watch Initial Assessment for Mental Health that he could not understand Plaintiff's answers and noted the language barrier. Despite this, Defendant

Harkins e-signed a form recommending that Plaintiff be placed in solitary confinement, because Defendant Harkins stated that Plaintiff had a prior suicide attempt.

36. Plaintiff has not attempted to commit suicide in the past, and did not state that she had attempted suicide in the past.

37. A different Commission of Correction Suicide Prevention Screening stated that Plaintiff did not have a prior suicide attempt.

38. Despite this, Defendants then placed Plaintiff in solitary confinement where her nose continued to bleed and where she did not receive any treatment.

39. As a result of her broken nose, Plaintiff had trouble breathing.

40. Plaintiff repeatedly informed the guards outside of her cell, Defendant Corrections Does 1-3, that her nose was bleeding and in extreme pain, but Defendants provided no medical treatment for her.

41. Plaintiff was in solitary confinement for a week during which Defendants refused to provide adequate medical treatment.

42. While in solitary confinement, Defendant Corrections Doe 1-3 and other OCCF staff threw trays of food on the ground in her cell. She had to sleep on the floor in isolation, with no sheets. She was not given any privacy when using the bathroom, despite asking. In the cell, there was no toilet paper. She was not permitted to shower until she was removed from solitary confinement, and she was prohibited from making calls for several days into her detainment.

43. Defendant Corrections Doe 1-3 and other OCCF staff told Plaintiff that there was no doctor available.

44. Defendant Corrections Doe 1-3 and other OCCF staff told Plaintiff that they did not speak Spanish and could not understand her pleas for medical treatment. Upon information and belief, they did not attempt to find a staff member who spoke Spanish or a translator.

45. After Plaintiff was transferred to the general population, she was finally able to request a visit with a medical provider.

46. Plaintiff saw Defendants Teneshia Washington, RN; Jillian M Barone, RN; Mandi Lee Zaccagnino, NP; and Dominick Piacente, Provider who all confirmed that she had a fractured nose, but all either provided no medical care or only administered ibuprofen.

47. An x-ray taken on October 12, 2023 at OCCF confirmed that Plaintiff's nose was fractured.

48. NYU Langone faxed records to OCCF confirming that Plaintiff was in pain and had surgery scheduled for October 5, 2023.

49. Despite Plaintiff's confirmed nasal fracture, confirmed appointment for surgery, and that she repeatedly requested medical help because she could not breathe, her nose was bleeding, and she was in immense pain that the ibuprofen was not helping, Defendants did not provide any medical treatment besides ibuprofen.

50. Defendants released Plaintiff from custody on November 9, 2023.

51. Because Defendants failed to treat Plaintiff's fractured nose while she was in OCCF, her nose healed before it could be realigned or otherwise treated, leading to ongoing (and likely permanent) difficulty breathing and pain.

52. Plaintiff's nose will also likely need to be re-broken before she can receive appropriate treatment.

**Orange County's Contract with Wellpath and Correct Care NY.**

53. Defendants Orange County and Correct Care NY[4] have a pattern of failing to ensure that adequate intake screening and health assessments are provided.

54. Defendants Orange County and Correct Care NY have a pattern of failing to develop and implement appropriate medical screening instruments that identify observable and non-observable medical needs, including chronic diseases, and ensure timely access to a physician when presenting symptoms require such care.

55. Defendants Orange County and Correct Care NY have a pattern of failing to provide access to health care, ensure inmates have adequate access to health care, ensure that the medical request process for inmates is adequate and provides inmates with adequate access to medical care. This process should include logging, tracking, and timely responses by medical staff.

56. Defendants Orange County and Correct Care NY have a pattern of failing to provide access to health care, ensure inmates have adequate access to health care, ensure that the medical request process for inmates is adequate and provides inmates with adequate access to medical care. This process should include logging, tracking, and timely responses by medical staff.

57. Defendants Orange County and Correct Care NY did not understand the New York health services market well enough to provide quality care to OCCF inmates and detainees.

58. A report issued by the Project on Government Oversight indicated Wellpath's predecessor CCS had been sued 1,395 times in federal court as of September 12, 2019.

59. In 2019 investigative reports by CNN[5] and The Atlantic[6] detail the denial of medical care, lack of medical care and other serious inadequacies in the level of medical care provided by

---

[4] For this and the following allegations, the same applies to Wellpath and the related entities. Wellpath is — as noted above — not currently a party to this suit, so it is discussed only as relevant to the conduct of the parties herein.
[5] https://www.cnn.com/interactive/2019/06/us/jail-health-care-ccs-invs/
[6] https://www.theatlantic.com/politics/archive/2019/09/private-equitys-grip-on-jail-health-care/597871/

Wellpath and its predecessor entity in jails, including county jails such as OCCF throughout the United States, especially for inmates with mental health disabilities.

60. The CNN report cited "internal documents and emails, medical records, autopsy reports, audits, interviews with more than 50 current and former employees and scathing correspondence from government clients show that amid a focus on 'cost containment' and massive corporate growth, [Wellpath] has provided substandard care that has led to deaths and other serious outcomes that could have been avoided."

61. The CNN report went on to state:

   i. "Across the country, the same themes have been found: doctors and nurses have failed to diagnose and monitor life-threatening illnesses and chronic diseases. CCS employees have denied urgent emergency room transfers. They have failed to spot or treat serious psychiatric disorders and have allowed common infections and conditions to become fatal."

   ii. "A review of lawsuits filed over the last five years found the company has been sued for more than 70 deaths. In other lawsuits over that time period, inmates have alleged prolong suffering, ongoing complications, shortened complications and debt."

   iii. "Among the references to multiple instances of inmates being denied medical care the report made reference to two inmates, Henry Clay Stewart and Jeff Lillis, and stated, "Doctors who examined records from around a dozen deaths and other incidents for CNN said they believed that in the majority of the cases they reviewed, serious outcomes could have been avoided and inmates including Stewart and Lillis could have lived had CCS provided proper care."

  iv. "In December, the US Department of Justice took the rare step of declaring the medical program at a Virginia jail unconstitutional. It found that inmate requests at the Hampton Roads Regional Jail were ignored or otherwise not taken seriously, resulting in serious harm and death."

 62. Directly referencing and implicating the pattern, practice, policy and/or custom of WELLPATH, the CNN report stated, "In a deposition in a South Carolina lawsuit, a [now-Wellpath] medical director …, said in 2014 that the company made it clear that employees who 'run up the tab' wouldn't be around very long. He said there was pressure on him from both the county and [Wellpath] to limit emergency room transfers because of the 'severe expense' involved -- regardless of who had to foot the bill."

 63. Further evidence of this pattern, practice, policy and/or custom of prioritizing profit by denying medical care was another CCS employee interviewed by CNN, "[W]ho said she started working for the facility more than a decade ago when the county ran the medical unit, said that after CCS took over she repeatedly made it clear to her supervisors and a county official that she believed inmates were at risk. Medical decisions and staffing were being driven by an 'obsession with profit,' she said.

 64. More specific to OCCF and the actions, inaction, pattern, practice, policy and/or custom of Defendants Orange County and Correct Care NY at OCCF, Plaintiff incorporates by reference herein a complaint made on February 17, 2022 by Catholic Charities Community Services – Archdiocese of New York, among others, regarding the conditions at OCCF including complaints of "medical neglect, abuse, and retaliatory withholding of care."[7]

 65. The Catholic Charities complaint states:

---

[7] https://www.law.nyu.edu/sites/default/files/OCCF%20Multi-Organization%20DHS%20CRCL%20Complaint%20and%20Index_2%2017%202022.pdf

i. "Medical care at OCCF is described as "poor," "bad," and "slow." Detained people are regularly "ignored." Medical staff often take days, at times weeks, to respond to requests for medical attention. People have to submit "four or five sick calls" to get the attention of staff, and "go without medication for two or three weeks" due to gaps in prescription refills. Not only do sick calls and medication requests generally go unanswered, but OCCF also fails to give detained people copies of their requests, making it harder for them to keep a record of the number of times they have asked for help."

ii. "Painkillers regularly substitute for actual care, even when medically inappropriate or inadequate."

iii. "One person's medical records revealed that despite measurements of elevated liver enzymes indicative of liver disease, OCCF failed to conduct any additional testing, leaving the individual at risk of chronic liver damage."

iv. "Reports indicate that OCCF also deprives detained people of access to critical treatment such as outpatient care. This includes one individual referred to MPN with chronic tonsillar masses and swollen lymph nodes who had yet to receive a diagnosis, biopsy, or treatment prior to MPN intervention. OCCF at last provided an ultrasound, yet even after the scan revealed a mass, medical staff continued to ignore the need for urgent follow-up treatment and evaluation. Records further indicate that OCCF has failed to provide one individual with the recommended blood pressure checks to monitor hypertension; another individual has not received the outpatient operation recommended for his chronic pain; another person showing abnormal lung scans has yet to be seen for further testing and

imaging. OCCF's failure to render critical care has put individuals at risk of fatal harm."

66. Also, in New York, a federal lawsuit was filed by the estate of a prisoner against certain Defendants including Correct Care Solutions (WELLPATH's former corporate entity name) for denying adequate medical and providing such inadequate medical care that the inmate died. *See, Melvin v. County of Westchester, et al*, Case No. 7:14-CV02995. The case settled for an undisclosed amount.

67. Many other similar cases exist, including, for example, *Freundenberg v. County of Orange et al.*, 23-cv-8477 (SDNY 2023).

68. There are thousands of cases against Wellpath alleging similar failures to provide care to the allegations here.

69. Upon information and belief, Defendant Orange County knew or should have known about Wellpath's long pattern and practice of failures to provide medical care.

## FIRST CLAIM FOR RELIEF:
42 USC § 1983: Deliberate Indifference to Medical Needs

70. Plaintiff, MARISOL ORDONEZ VARGAS, repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

71. Defendants failed to provide plaintiff with timely medical attention despite their knowledge that she was suffering from a serious medical condition.

72. Defendants actions constituted an unnecessary and wanton infliction of pain.

73. By their conduct and actions in failing to provide medical treatment to PLAINTIFF ORDONEZ VARGAS, who was suffering from a serious medical condition, and by failing to intercede to prevent the complained of conduct, the DEFENDANTS, acting under color of law and without justification, intentionally, and/or with deliberate indifference to or a reckless

disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiff's constitutional rights as guaranteed under 42 U.S.C. Section 1983 and the United States Constitution, including its Fourth Amendment and the Due Process Clause of the Fourteenth Amendment.

74. As a result of the foregoing, Plaintiff suffered physical injuries, conscious pain and suffering, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of her constitutional rights as guaranteed under 42 U.S.C. § 1983.

75. Defendants' conduct was such that punitive damages should be imposed against the non-municipal Defendants.

**SECOND CLAIM FOR RELIEF:**
Negligence under State Law and related *Respondeat Superior*

76. Plaintiff repeats and restates each and every statement made hereinabove as if set forth fully at length once again.

77. Defendants, including by the agents and servants thereof, at all times relevant hereto failed to properly provide medical care to Plaintiff.

78. Defendant New York Correct Care failed to promulgate, enforce, abide by, or follow appropriate rules, regulations, guidelines, procedures, policies, or protocols with respect to the performing, rendering or providing of medical, surgical, orthopedic, medical imaging, or nursing examinations, evaluations, care, treatments, procedures, services, prescribing medication, or advice of, for, and to medical, surgical, orthopedic, or nursing patients.

79. Defendant Orange County, by the agents and servants thereof at all times relevant hereto failed to properly provide medical care to Plaintiff.

80. Defendant Orange County failed to promulgate, enforce, abide by, or follow appropriate rules, regulations, guidelines, procedures, policies, or protocols with respect to the

performing, rendering or providing of medical, surgical, orthopedic, medical imaging, or nursing examinations, evaluations, care, treatments, procedures, services, prescribing medication, or advice of, for, and to medical, surgical, orthopedic, or nursing patients.

81. The individual Defendants failed to abide by, or follow appropriate rules, regulations, guidelines, procedures, policies, or protocols with respect to the performing, rendering or providing of medical, surgical, orthopedic, medical imaging, or nursing examinations, evaluations, care, treatments, procedures, services, prescribing medication, or advice of, for, and to medical, surgical, orthopedic, or nursing patients.

82. As a result of all of the foregoing, the Plaintiff was caused severe and serious personal injuries, severe and serious conscious pain and suffering, severe and serious mental anguish, and will suffer future severe and serious economic losses by reason of the negligence, carelessness, neglect and medical malpractice of the Defendants.

83. The medical evaluations, consultations, care, treatments, procedures, services, medical imaging, or advice or lack thereof ordered for, requested for, recommended for, advised for, performed upon, rendered to, requested, ordered or provided to Plaintiff on behalf of, jointly with, or under the supervision of various Defendants named herein, were ordered, neglected, requested, recommended, advised, performed, rendered, or provided in a negligent, careless, or improper manner, or in a manner contrary to good and accepted medical, surgical, radiological, orthopedic or nursing practices in the community.

84. The medical evaluations, consultations, care, treatments, procedures, services, medical imaging, or advice or lack thereof constituted negligence and was careless, and improper manner, or in a manner contrary to good and accepted medical, surgical, radiological, orthopedic or nursing practices in the community.

85. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties and sustained other damages.

86. The foregoing acts constitute negligence on the part of the Defendants hereto.

### THIRD CLAIM FOR RELIEF:
Gross Negligence under State Law and related *Respondeat Superior*

87. Plaintiff repeats and restates each and every statement made hereinabove as if set forth fully at length one again.

88. The above constitutes a gross deviation for the normal standard and practice and caused direct injury to Plaintiff.

89. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; and sustained other damages.

### FOURTH CLAIM FOR RELIEF:
Medical Malpractice under State Law

90. The Plaintiff repeats, reiterates and re-alleges each and every statement and allegation as set forth above.

91. The foregoing acts constituted medical malpractice on the part of the Medical Defendants hereto including their staff, agents and servants.

92. The foregoing constitutes a deviation from standard and accepted medical practice and standards of conduct.

93. The above acts constitute medical malpractice.

94. The aforesaid acts constitute malpractice on the part of each and all medical Defendants.

### FIFTH CLAIM FOR RELIEF:
42 U.S.C. § 1983 *Monell* Claims Against Orange County

95. The Plaintiff repeats, reiterates and re-alleges each and every statement and allegation as set forth above.

96. The actions and/or omissions of Defendant Correct Care NY and non-party Wellpath in responding and/or providing to the requests and demands for medical attention of Plaintiff were done in accordance with the policy, practice, and custom of Defendant Orange County.

97. The practice of failing to respond in an adequate manner and in providing inadequate care was so persistent and widespread that it constituted an official policy or custom.

98. Orange County's policies, including those policies of Wellpath and Correct Care NY that it adopted by contract, were inadequate in that there was a deliberate indifference to their serious medical needs and that Defendants and Wellpath were totally unconcerned with the welfare of those in their care.

99. The policies, practices and customs of Defendants as described above and in the documents incorporated by reference include the failure to respond to serious medical needs documented by inmates by way of medical request forms, the prescribing and providing of painkillers when inappropriate or inadequate to treat inmates serious medical needs, denial of access to necessary emergency room care, denial of access to outpatient care, denial of testing, imaging and biopsies in order properly diagnosis serious and/or life threatening medical

conditions, and the failure to diagnose and monitor life-threatening illnesses and chronic diseases.

100. Further, the aforementioned policies, practices and customs of Defendants were in furtherance of the improper motive of reducing costs and/or increasing profits while denying adequate and necessary care to inmates and detainees.

101. Defendants Orange County and the individual Defendants were on notice of these policies, practices and customs of Defendant Correct Care NY and non-party Wellpath, and KHOURI and failed to take any action to prevent the harm caused to inmates such as Plaintiff.

102. The policies, practices, and customs discussed above led to the refusal to provide adequate medical care to Plaintiff; to the delay of proper care to Plaintiff; to the negligent training of its employees; to the lack of physician access for Plaintiff: and to the misdiagnosis and indifference of the serious medical needs of Plaintiff; and deprived her of the rights, privileges, and immunities secured by the Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. §1983.

## JURY TRIAL DEMAND

103. Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of Defendants:

    a. Compensatory damages;

    b. Punitive damages;

    c. The convening and empaneling of a jury to consider the merits of the claims herein;

    d. Costs and interest and attorney's fees;

    e. Such other and further relief as this court may deem appropriate and equitable.

Dated: Ridgewood (Queens), New York
       January 3, 2024

                                      **COHEN&GREEN P.L.L.C.**

By: _____
Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
e: elena@femmelaw.com
   remy@femmelaw.com
   jessica@femmelaw.com