# MAIN STREET
# LEGAL SERVICES

October 10, 2025

**BY ECF**

Hon. Philip M. Halpern
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: Plaintiffs' Response to Defendant Orange County's Pre-Motion Letter
*Ordonez-Vargas v. Orange County*, 25-cv-0064

Dear Judge Halpern:

Plaintiffs write to respond to Defendant Orange County's letter requesting a pre-motion conference in anticipation of moving to dismiss the First Amended Complaint in this action. *See* Dkt. 54. For the reasons set forth below, Plaintiffs have amply pled their claims against the County and the County's proposed motion to dismiss is unavailing.

## I.    Orange County Has Already Answered the Operative Complaint, Thus Their Proposed Motion to Dismiss is Improper.

Orange County's request for a pre-motion conference is procedurally improper. The County has already filed an Answer to the First Amended Complaint—which means that a Rule 12(b)(6) motion is no longer possible. *See* Dkt. 44; *see also* Fed R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made *before pleading*") (emphasis added). Nor can this Court convert the County's motion to a Rule 12(c) motion because several of the other remaining defendants have not answered the First Amended Complaint and so the pleadings remain open at this juncture. *See* Dkts. 55-56; *see also Vann v. Perisco*, No. 20-CV-628 (KMK), 2022 WL 4368110, at *7 (S.D.N.Y. Sept. 20, 2022) ("Union Defendants' Motion therefore cannot yet be made pursuant to Rule 12(c) either […] because that rule applies after the pleadings are closed") (*citing Johnson v. Myers*, No. 10-CV-1964, 2011 WL 709481, at *1 (E.D.N.Y. Feb. 18, 2011) ("To begin with, the Nassau University Defendants purport to move under Rule 12(b)(6), despite having answered the Complaint […] although the Court could, in some instances, construe this motion as a Rule 12(c) motion for judgment on the pleadings, it cannot do so here, because the pleadings remain open")). Orange County's proposed motion is therefore procedurally improper.[1]

## II.    Plaintiffs Amply Allege Deliberate Indifference to Their Serious Medical Needs.

Orange County suggests that Plaintiffs failed to state a claim for deliberate indifference to Plaintiffs' medical needs. Dkt. 54, at 2. But Plaintiffs amply plead: (1) a sufficiently serious harm;

---

[1] To the extent Orange County argued deficient service by Plaintiff Cruz in its Answer, the County is incorrect. *See* Dkt. 44, ¶¶ 26-63. This Court already had personal jurisdiction over Orange County and the Answer filed is the operative answer. *See, e.g., Fashion Novelty Corp. of N.J. v. Cocker Mach.and Foundry Co.*, 331 F.Supp. 960, 962 (D. N.J.1971) (the federal rules do not "requir[e] for example that where a complaint [is] amended to add a new party plaintiff, the new pleading shall be served in the manner provided for service of summons"); *see also In re Heigle*, 401 B.R. 752, 755 (Bankr. S.D. Miss 2008) ("[Defendant] maintains that because the Amended Complaint added new plaintiffs, a summons and the Amended Complaint must have been served upon each Defendant [...] Service of a summons […] was not required to establish personal jurisdiction") (collecting cases). Regardless, Orange County's proposed motion focuses almost entirely on portions of the First Amendment Complaint to which it did squarely answer. *Compare* Dkt. 54, at 3-4 (*Monell* letter arguments), *with* Dkt. 44, ¶¶ 147-154 (prior answer as to *Monell* claim).

and (2) that Orange County knew, or should have known, about those harms. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (requiring that "the challenged conditions were sufficiently serious to constitute objective deprivations" and that "a reasonable person knew, or should have known" about those harms). We address each Plaintiff in turn.

**Plaintiff Ordonez Vargas.** Ms. Ordonez Vargas suffered a broken nose, persistent bleeding, and difficulty breathing. *See* FAC ¶¶ 70, 71, 74, 88, 89, 93 (fractured nose); *id.* ¶¶ 71, 82, 91 (persistent bleeding); *id.* ¶¶ 71, 81, 93 (difficulty breathing). These conditions are sufficiently serious under the Fourteenth Amendment. *See, e.g., Burns v. Cnty. of Rensselear*, No. 9:02-CV-0165, 2005 U.S. Dist. LEXIS 41743, at *34 (N.D.N.Y. Dec. 12, 2005) ("a profusely bloody broken nose that requires medical attention may be a sufficiently serious injury"); *Lasher v. City of Schenectady*, No. 02–CV–1395, 2004 WL 1732006, at *15-17 (N.D.N.Y. Aug. 3, 2004) ("Here, there is evidence that Plaintiff's nose was broken and was bleeding profusely [...] Courts have found similar conditions of profuse bleeding to be actionable."); *see also Farrow v. Dalman*, No. 97-3598, 1998 WL 879553, at *1 (7th Cir. Dec. 7, 1998) ("no treatment for the broken nose and [...] breathing difficulties and substantial pain" was sufficiently serious).

Ms. Ordonez Vargas informed approximately *ten* Orange County employees that she had a headache and nose pain due to her broken nose and that she was scheduled for surgery the day she was detained. FAC ¶ 74. Employees of Orange County placed Ms. Ordonez Vargas in solitary confinement where she received no medical treatment, despite repeatedly asking for help, while she had difficulty breathing and a visibly bleeding nose. *Id.* ¶¶ 80-86. After she was moved to the general population, the only medical care she received was ibuprofen, despite imaging which confirmed she had a fractured nose and her ongoing issues with breathing and her bleeding nose. *Id.* ¶¶ 87-92. Orange County also received confirmation that Ms. Ordonez Vargas' doctor stated that surgery was necessary—and yet did nothing. *Id.* ¶¶ 90-91. Plaintiff's repeated complaints establish that Orange County should have known of the severity of Plaintiff's condition—and Orange County's refusal to heed the doctor's treatment plan amounts to deliberate indifference. *See Tirado v. City of New York,* No. 19-CV-10377, 2021 U.S. Dist. LEXIS 14406, at *19 (S.D.N.Y. Jan. 25, 2021) ("[Defendant's] refusal of [detainee's] request for medical assistance [...] plausibly establishes that [Defendant] should have known of the obvious risk"); *Johnson v. Wright,* 412 F.3d 398, 404 (2d Cir. 2005), *citing Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir. 1987) ("prison officials are more than merely negligent if they deliberately defy the express instructions of a detainee's doctors").

**Plaintiff Stefany Cruz.** Ms. Cruz has lupus and received test results while incarcerated that informed doctors that her kidneys were functioning improperly. FAC ¶¶ 48-50. That is a serious medical condition under the Fourteenth Amendment. *See Revels v. Corr. Med. Care, Inc.*, No. 9:17-cv-0088, 2018 U.S. Dist. LEXIS 511110, at *11-12 (N.D.N.Y. Mar. 28, 2018) ("A number of district courts in this circuit have found kidney failure to constitute a sufficiently serious medical condition to satisfy the objective component of a deliberate indifference claim") (collecting cases). For 42 days, however, Plaintiff was denied critical medication prescribed to her. FAC ¶ 45, 47-49. When Plaintiff reported the increased severity of her condition following an emergency room visit, the jail told her she would be seen by a nephrologist, but staff never set up that appointment. *Id.* ¶¶ 51-52. As a result, Plaintiff developed lupus nephritis and has kidney scarring. *Id.* ¶¶ 58-60. Orange County's failure to provide medication for weeks, and failure to schedule the critical nephrology appointment, amounts to deliberate indifference. *See Freudenberg v. Cnty. of Orange,* No. 23-CV-847, 2024 U.S. Dist. LEXIS 175739, at *13 (S.D.N.Y. Sep. 25, 2024) ("despite [the detainee's] worsening symptoms and dozens of requests for attention, Defendants did nothing to address any [...] risk until it was too late").

### III.    Merely Seeing a Doctor—Without the Provision of *Any* Appropriate Care—Is Itself a Fourteenth Amendment Violation.

Orange County purports that Plaintiffs' deliberate indifference claims are a mere disagreement with the course of treatment they received during their detention. See Dkt. 54 at 3. That is false. The law is well-settled that the provision of *some* treatment is not dispositive when the treatment provided is wholly inadequate for the condition it is intended to treat. *See, e.g., Ramsay-Nobles v. Keyser*, No. 16 Civ. 5778, 2019 U.S. Dist. LEXIS 147693, at *90 (S.D.N.Y. Aug. 21, 2019) ("when a [detainee] has received some medical treatment, deliberate indifference will be found when the medical attention rendered [was] so woefully inadequate as to amount to no treatment at all") (citation modified); *Freudenberg*, 2024 U.S. Dist. LEXIS 175739, at *13 ("Plaintiff admits that Defendants […] administered treatment in the form of pain medication […] But Plaintiff correctly points out that the provision of some treatment is not dispositive where […] the treatment appears so woefully inadequate compared to the [detainee's] condition") (citation modified); *see also Abdiasiis v. Lewis*, No. 2:20-CV-3315, 2022 U.S. Dist. LEXIS 127456, at *17 (S.D. Ohio Jul. 18, 2022) ("a reasonable juror could find [the Defendant's] actions of giving Gatorade and Ibuprofen [were] woefully inadequate treatment in light of the Plaintiff's symptoms and complaints as to amount to no treatment at all"). Plaintiff Ordonez Vargas had a fractured, bleeding nose—which disrupted her breathing—that her doctor informed Orange County required prompt surgery. FAC ¶¶ 90-91. Providing Ibuprofen was not even remotely appropriate as a form of treatment. *Id.* Similarly, Plaintiff Cruz was deprived of preventative medication for her lupus for 42 days, and never saw the nephrologist Orange County acknowledged as necessary. *Id.* ¶¶ 45, 51-52. These are precisely the "woefully inadequate" treatments that the Fourteenth Amendment is designed to protect against. *See Freudenberg*, 2024 U.S. Dist. LEXIS 175739, at *13.

### IV.    Plaintiffs Have Amply Pled Facts Supporting Municipal Liability Under *Monell*.

Plaintiffs clearly allege that Orange County—both itself and through its private medical provider—has engaged in a widespread practice of ignoring requests for medical care at Orange County Jail. FAC ¶¶ 148-149 ("the actions and/or omissions of Defendant Correct Care NY […] in responding to the requests and demands for medical attention of Plaintiffs were done in accordance with the policy, practice, and custom of the Defendant, Orange County"); *see also Hollis v. Davis*, No. 13-CV-0590, 2014 WL 7184406, at *6 (N.D. Okla. Dec. 16, 2014) ("[t]he Supreme Court has made clear that the provision of medical care by an independent contractor does not prevent finding a jail official liable under § 1983"), *citing West v. Atkins*, 487 U.S. 42, 56 (1988). Orange County's arguments against *Monell* liability are incorrect as a matter of law.[2]

#### A.    Plaintiffs Allege a Systemic Pattern of Medical Neglect to Cut Costs.

Orange County suggests in passing that the various incidents of medical neglect alleged in the complaint are not similar enough. *See* Dkt. 54 at 3. Its positions misstate the governing law. Plaintiffs' *Monell* claims are based on a systemic policy: a cost-cutting regime that results in the denial or delay of medically necessary treatment across the board—particularly where outside referrals are required. *See* FAC ¶ 152, ¶ 102. Plaintiffs specifically identify at least a *dozen* individuals who have experienced shocking medical neglect as a result of Defendants' cost-cutting agenda. *Id.* ¶¶ 51-52, 91, 114-121. Both Ms. Ordonez-Vargas and Ms. Cruz experienced delays, denials, and substandard care traceable to this unified cost-control regime. *Id.* ¶¶ 95-98. Courts

---

[2] Orange County's arguments concerning other "named defendants" are misplaced. *See* Dkt. 54, at 3. The County can only speak for itself as a municipal defendant.

have repeatedly recognized that such cost-driven policies, even where they manifest in different medical conditions, give rise to actionable *Monell* claims because the constitutional harm—the denial of adequate care—is the same. *See*, *e.g.*, *Lehal v. Cent. Falls Det. Facility Corp.*, No. 13cv3923 (DF), 2016 WL 7377238, at *14 (S.D.N.Y. Nov. 21, 2016) ("CFDFC's motion to dismiss is denied as to Plaintiff's Monell claim that it had a policy, custom, or practice to deny its detainees medical treatment in order to save costs"); *Steele v. Wexford Health Sources*, Inc., No. 17 C 6630, 2018 WL 2388429, at *8 (N.D. Ill., Mar. 25, 2018) ("numerous courts […] have denied motions to dismiss *Monell* claims against Wexford where the plaintiff alleged deprivation of more expensive treatment (such as denying or delaying referrals to specialists outside the prison) based on Wexford's alleged costcutting policy") (citation modified); *see also Harper v. Wexford Health Sources, Inc.*, No. 14-CV-04879, 2016 WL 1056661, at *1-3 (N.D.Ill., Mar. 17, 2016) (custom of cost-cutting and refusal to review outside physicians' recommendations); *Shaw v. Obaisi*, No. 13–cv–9335, 2015 WL 638521, at *11 (N.D.Ill., Feb. 12, 2015) (policy of refusing or delaying treatment prescribed off-site). Taken together, these cases demonstrate that where plaintiffs allege they were injured as a direct result of a uniform cost-cutting policy, the "nexus" requirement is satisfied. The policy—not the specific diagnosis—ties the claims together.

B. <u>Investigative Reports Clearly Address Medical Care at Orange County Jail—As Do Press Reports and Other Lawsuits—All of Which Provide Adequate *Monell* Allegations</u>.

To the extent the County suggests that investigative reports, news articles, or other lawsuits are not appropriate to consider as allegations supporting municipal liability, the County is also incorrect. *See* Dkt. 54 at 3-4. Each of these sources are valid at this stage of the litigation. *See*, *e.g.*, *Gleeson v. Cnty. of Nassau*, No. 15-CV-6487, 2019 WL 4754326, at *16 (E.D.N.Y. Sept. 30, 2019) ("The Comptroller's report and the AAG's affirmation detail the same kinds of inadequate medical care […] the reports are sufficient to create a jury question regarding whether [the contractor] had a custom of providing inadequate medical care"); *Gomez v. City of New York*, No. 16-CV-1274, 2017 WL 1034690, at *11 (E.D.N.Y. Mar. 16, 2017) ("Research reports may be used to bolster Monell claims" if they are recent and relevant); *Rodriguez v. City of New York*, No. 15-CV-07945, 2018 WL 1276826, at *7 (S.D.N.Y. Mar. 9, 2018) ("Plaintiff may… rely on publicly reported information about the experiences of other detainees to corroborate his allegations," including "reports that […] officers neglected or delayed medical treatment for inmates"); *see also Osterhoudt v. City of New York*, No. 10 CV 3173, 2012 WL 4481927, at *2 (E.D.N.Y. Sept. 27, 2012) ("plaintiff's citations to pending lawsuits and settlement agreements will not suffice to overcome summary judgment […] they do permit a plausible inference of deliberate indifference") (citation modified); *Shepherd v. Powers*, No. 11 Civ. 6860(LTS), 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012) ("the steady stream of suits filed against the County alleging excessive use of force in the [Westchester County Jail]" added credibility to the claims alleged in the complaint). Orange County provides no law to the contrary.

Meanwhile, Plaintiffs have introduced an overwhelming number of these investigations, reports, and related lawsuits against Orange County for deficient medical care at Orange County Jail. *See* FAC ¶¶ 109-112 (four recent Orange County jail investigations by the NYS Commission on Corrections, by the NYC Council, by the NYCLU, and by Catholic Charities); *id.* ¶¶ 100-109, 113-114 (listing investigative reports, news reports, statements from legislators, and other individual accounts of medical mistreatment); *id.* ¶¶ 115-121 (listing several recent lawsuits for denial of adequate medical care at Orange County Jail).

C. <u>Which Final Policymaker is Responsible at Orange County for Purposes of *Monell* Need Not Be Addressed at the Pleadings Stage</u>.

Defendants claim that Plaintiffs' *Monell* allegations fail because the First Amended Complaint does not identify which final policymaker at Orange County was responsible for or made aware of the alleged unconstitutional practices. Dkt. 54,at 4. But that is not required at the pleadings stage. *See, e.g.*, *Fant v. City of Ferguson*, No. 4:15-CV-00253-AGF, 2018 WL 10245936, at *2 (E.D. Mis. Feb. 13, 2018) ("even if identification of the policymaker is ultimately required in this case based on the theories of municipal liability asserted, the Court does not believe that it is required at this stage"); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1279–80 (11th Cir. 2016) ("Although Mr. Hoefling may ultimately have to identify (and provide proof concerning) a single final policymaker in order to survive summary judgment or prevail at trial, […] we do not think that he had to name that person in his complaint in order to survive a Rule 12(b)(6) motion. All he needed to do was allege a policy, practice, or custom of the City"); *see also Gonalez v. Webb Cnty.*, No. 5:20-CV-52, 2022 WL 190709, at *3 (S.D. Tex. Jan. 21, 2022) ("while a policymaker should be determined before submitting a case to the factfinder, at the pleading stage, Plaintiff is not actually required to identify a final policymaker at all, and dismissal is not proper on this basis"). Plaintiffs need only demonstrate, at subsequent stages of the proceeding, the existence of a final policymaker responsible for the County's conduct.

**V.     Plaintiffs' State Law Claims are Properly Asserted Against Orange County.**

Orange County may be held liable for the actions of the Orange County Sheriff and his employees, and contractors. *See, e.g.*, *Meriwether v. Sherwood*, 514 F.Supp. 433, 434 (S.D.N.Y. 1981) ("[T]he jury found […] Sheriff Sherwood and Orange County liable to plaintiffs Meriwether and Jackson in negligence"); *see also Murcia v. County of Orange*, 185 F.Supp.2d 290, 293 (S.D.N.Y. 2002) ("Counties, not the State, are liable in damages if sheriffs, acting as head of a county correctional facility, promulgate unconstitutional […] policies and County officials remain deliberately indifferent to that policy"). Furthermore, the County is actually *directly* involved in contracting with—and therefore responsible for—the medical care that is provided at Orange County Jail.[3] Additionally, a County cannot delegate its duty to provide medical care to people in custody in the County. *Gil v. Vogilano*, 131 F. Supp. 2d 486, 493 (S.D.N.Y. 2001) ("a municipality's duty to provide medical care to inmates is non-delegable and is not absolved by contracting with a third party to provide care"); *Bryant v. Maffucci*, 729 F. Supp. 319, 324 (S.D.N.Y. 1990) (county "may not avoid liability by delegating the duty to provide medical care"). Accordingly, there is no question that Plaintiffs' state law claims against the County are appropriate and timely.[4] Nor is there duplication between the malpractice and negligence claims—which are against different actors. *See Kikumura v. Osagie*, 461 F.3d 1269, 1301 (10th Cir. 2006) (officers' failure to contact infirmary about ill prisoner supported negligence claim).

**VI.     Plaintiffs Have Announced Their Willingness to Amend.**

For the reasons noted above, Plaintiffs' FAC amply states claims against the County. However, for the reasons shared with this Court via separate letter, Plaintiffs anticipate a further amended complaint to address other issues raised by Defendants in this case. *See* Dkt. 59.

---

[3] *See* Lana Bellamy, Times Union, *Orange County continues to use controversial medical provider at jail as it prepares new request for proposals* (Apr. 16, 2024), https://www.timesunion.com/hudsonvalley/news/article/orange-county-jail-wellpath-correct-care-19403303.php ("Though the commission directed the Orange County Legislature to assess Wellpath's fitness as a provider, Golden explained that it was actually the responsibility of the county sheriff's office, which works with the county's executive branch to handle health care contracts at the jail").

[4] Ms. Ordonez complied with all conditions precedent to filing this suit (FAC ¶¶ 6-8), and timely filed against Orange County within one year and 90 days (CPLR §217(a)). As the County stated, there is a pending action to deem Ms. Cruz's Notice of Claim timely in Organge County Supreme Court, # EF007296-2025 (Honorable Judge E. Loren Williams presiding) and we request the Court allow Judge Williams to decide the petition before issuing its ruling.

*\*\**

We thank the Court for its consideration of this letter.

Respectfully submitted,

/s/ Zal K. Shroff
Zal K. Shroff, # 5560669
Main Street Legal Services, Inc.
2 Court Square West
Long Island City, NY 11101

*Counsel for Plaintiffs*

Jonathan Alleyne
Jennifer Cardoza
Alison Klein
Jayden Lopez

*Law Student Interns\**

\* Student Appearances Forthcoming