# EXHIBIT A

# Trust Distribution Procedures

# WELLPATH HOLDINGS, INC.

## TRUST DISTRIBUTION PROCEDURES FOR TRUST CLAIMS

### ARTICLE I
### PURPOSE AND GENERAL GUIDELINES

**A.** **Purpose**. The purpose of the Trust (or the "**Trust**") is to, among other things, (i) assume legal liability for Trust Claims—*i.e.*, Second Lien Deficiency Claims and General Unsecured Claims (which are referred to herein as "**GUC Claims**"), including indirect General Unsecured Claims, which are referred to herein as "**Indirect Claims**"—pursuant to the terms of the Plan, (ii) prosecute and assert the Liquidating Trust Causes of Action, (iii) to hold, preserve, maximize, liquidate, and administer the Liquidating Trust Assets (the "**Liquidating Trust Assets**") for the benefit of the beneficiaries of the Trust, (iv) liquidate the Liquidating Trust Assets, (v) employ procedures to allow valid Trust Claims (as further set forth herein) in accordance with section 502 of the Bankruptcy Code and/or applicable law (each, an "**Allowed GUC Claim**" or an "**Allowed Indirect Claim**" and, together, "**Allowed Trust Claims**"), (vi) determine an allowed liability amount for each Allowed GUC Claim or Allowed Indirect Claim (the "**Allowed Claim Amount**"), and (vii) process and direct payment of all Allowed Trust Claims. These Trust Distribution Procedures (the "**TDPs**") are adopted pursuant to the Trust Agreement (the "**Trust Agreement**") and have been approved as fair, equitable, and reasonable by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"). The TDPs are designed to provide fair, equitable, and substantially similar treatment for Allowed Trust Claims. The TDPs provide the means for resolving all Trust Claims that were assumed by the Trust and for which the Debtors had or is alleged to have legal responsibility. As set forth in the Trust Agreement, the Trustee (the "**Trustee**") will implement and administer the TDPs, with the goals of securing the just, speedy, fair, reasonable, and cost-efficient determination of every General Unsecured Claim, providing substantially similar treatment to holders of similar, legally valid and supported Allowed Trust Claims as set forth herein, and obtaining and maximizing the benefits of the Liquidating Trust Assets.

**B.** **General Principles.** To achieve maximum fairness and efficiency, and recoveries for holders of Allowed Trust Claims, the TDPs are founded on the following principles:

1. objective claim eligibility criteria;

2. clear and reliable proof requirements;

3. administrative transparency;

4. a rigorous review and evidentiary process that requires the Trustee to determine and reach final determinations and to achieve Allowed Claim Amounts that are fair and reasonable;

5. robust audit procedures to verify the submission and payment of valid Trust Claims; and

6. independence of the Trust and the Trustee.

**C.** **Payment of Allowed GUC Claims.** Pursuant to the Plan, the Trust has assumed the legal liability for, and obligation to pay, Trust Claims to the extent such Claims are Allowed Claims. The Liquidating Trust Assets shall be used to fund distributions to Claimants who hold Second Lien Deficiency Claims or who are determined by the Trustee to hold Allowed GUC Claims under the TDPs; *provided*, for the avoidance of doubt, that the Second Lien Deficiency Claims are Allowed in full pursuant to Article III.B.5 of the Plan. The amounts that certain Claimants who are determined by the Trustee to hold Allowed GUC Claims will be paid on account of their Trust Claims will depend on, among other things, the Trust's ability to liquidate and recover the proceeds of the assigned insurance rights and other causes of action. The amount of any instalment payments, initial payments, or payment percentages established under the TDPs or the Trust Agreement will be calculated based on (i) any Claimant's Allowed Claim Amount or (ii) the right to payment that the holder of a Trust Claim has against the Debtors, as assumed by the Trust.

**D.** **Interpretation.** In the event of any ambiguity or conflict between the terms of these TDPs, the Trust Agreement, the Plan and the Confirmation Order, each document shall have controlling effect in the following order of priority: (1) the Confirmation Order, (2) the Plan, (3) the Trust Agreement, and (4) the TDPs.

## ARTICLE II
## DEFINITIONS AND RULES OF INTERPRETATION

**A.** **Incorporation of Plan Definitions.** Capitalized terms used but not defined in the TDPs have the meanings ascribed to them in the Plan or the Trust Agreement and such definitions are incorporated in the TDPs by reference.

**B.** **Definitions.** The following terms have the respective meanings set forth below:

1. "**Acceptance and Release**" shall have the meaning set forth in ARTICLE VIII.E.

2. "**ADR Procedures**" shall have the meaning set forth in ARTICLE IV.J.

3. "**Allowed Claim Amount**" shall have the meaning set forth in ARTICLE I.A.

4. "**Allowed Claim Notice**" shall have the meaning set forth in ARTICLE IV.H.

5. "**Allowed GUC Claim**" shall have the meaning set forth in ARTICLE I.A.

6. "**Basic Claim Submission**" shall mean the submission of Identifying Information to the Trust and the election to make or not make the Expedited Distribution Election.

7. "**Claim Notice**" shall have the meaning set forth in ARTICLE IV.H.

8. "**Claim Objection**" shall have the meaning set forth in ARTICLE IV.J.

3

9. "**Claimant**" shall mean the holder of a GUC Claim or the holder of an Indirect Claim.

10. "**Claims Audit Program**" shall have the meaning set forth in ARTICLE IV.K.

11. "**Disallowed Claim**" shall have the meaning set forth in ARTICLE IV.E.

12. "**Disallowed Claim Notice**" shall have the meaning set forth in ARTICLE IV.G.

13. "**Exigent Hardship Claim**" shall mean a GUC Claim that is compensable hereunder, for which the Trustee, in his, her or its sole discretion, determines that the claimant needs immediate financial assistance based on the claimant's expenses and all sources of available income.

14. "**Expedited Distribution**" shall have the meaning set forth in ARTICLE V.A.

15. "**Expedited Distribution Election**" shall mean an irrevocable election made by an individual to receive an Expedited Distribution on account of a GUC Claim.

16. "**Expedited Distribution Threshold**" shall mean an aggregate dollar amount of Expedited Distributions not to exceed $1,500,000.00.

17. "**FIFO**" shall mean "first-in-first-out" and refers to the impartial basis for establishing a sequence pursuant to which GUC Claims shall be initially reviewed by the Trust.

18. "**FIFO Processing Queue**" shall mean the FIFO line-up on which the Trust initially reviews Trust Claims Submissions.

19. "**Final Determination**" shall have the meaning set forth in ARTICLE IV.I.

20. "**GUC Claim**" shall be a Second Lien Deficiency Claim or General Unsecured Claim as those terms are defined in the Plan.

21. "**GUC Claimant**" shall mean the holder of a GUC Claim.

22. "**GUC Claim Criteria**" shall have the meaning set forth in ARTICLE VI.A.

23. "**Identifying Information**" shall mean, with respect to the holder of a Trust Claim, the holder's: (a) name; (b) address; (c) social security number or employer identification number (if the holder has one); and (d) counsel serving as the holder's representative (if any) and such counsel's address.

24. "**Indirect Claim**" shall have the meaning set forth in ARTICLE VII.A.

25. "**Indirect Claimant**" shall have the meaning set forth in ARTICLE VII.A.

4

26. "**Indirect Claim Criteria**" shall have the meaning set forth in ARTICLE VII.A.

27. "**Initial Claims Filing Date**" shall mean the date on which the Trust first provides notice that it is able to accept Trust Claim Submissions.

28. "**Initial Distribution**" shall have the meaning set forth in ARTICLE VIII.C.

29. "**Initial Payment Percentage**" shall have the meaning set forth in ARTICLE VIII.A.

30. "**Liquidating Trust Causes of Action**" shall have the meaning ascribed to it in the Plan.

31. "**Potentially Liable Party**" means any party that is potentially co-liable with the Trust for a Trust Claim, including governmental entities. Potentially Liable Parties shall not include any Released Party.

32. "**Proposed Allowed Claim Amount**" shall have the meaning set forth in ARTICLE IV.H.

33. "**Reconsideration Request**" shall have the meaning set forth in ARTICLE IV.J.

34. "**Reconsideration Deadline**" shall have the meaning set forth in ARTICLE IV.J.

35. "**Rejection Notice**" shall have the meaning set forth in ARTICLE IV.J.

36. "**Released Parties**" shall have the meaning ascribed to it in the Plan.

37. "**Revised Proposed Allowed Claim Notice**" shall have the meaning set forth in ARTICLE IV.J.

38. "**Revised Proposed Allowed Claim Rejection**" shall have the meaning set forth in ARTICLE IV.J.

39. "**Supplemental Payment Percentage**" shall have the meaning set forth in ARTICLE VIII.D.

40. "**TAC**" shall mean the Trust Advisory Committee that represents the interests of holders of GUC Claims pursuant to the Plan and Trust Agreement.

41. "**Threshold Criteria**" shall have the meaning set forth in ARTICLE IV.D.

42. "**Trust Claim**" shall have the meaning set forth in the Recitals.

43. "**Trust Claim Submission**" shall mean the submission of additional information beyond the Basic Claim Submission that the Claimant and/or the Trustee

5

believe is relevant to understanding a claim and determining the appropriate Allowed Amount for such claim as described in ARTICLE IV.E.

44. "**Trust Claim Submission Date**" shall have the meaning set forth in ARTICLE IV.E.

**C.** **Interpretation; Application of Definitions and Rules of Construction.** For purposes of the TDPs, unless otherwise provided herein: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference to a person as a holder of a Claim includes that person's estate, successors, and assigns; (3) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the TDPs as a whole and not to any particular article, section, subsection, or clause; (4) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation;" (5) the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory; (6) any effectuating provisions of the TDPs may be reasonably interpreted by the Trustee in such a manner that is consistent with the overall purpose and intent of the TDPs without further notice to or action, order, or approval of the Bankruptcy Court; (7) the headings in the TDPs are for convenience of reference only and shall not limit or otherwise affect the provisions hereof; (8) in computing any period of time prescribed or allowed by the TDP, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply; (9) "or" is not exclusive; and (10) all provisions requiring the consent of a person shall be deemed to mean that such consent shall not be unreasonably withheld.

## ARTICLE III
## TDP ADMINISTRATION

**A.** **Administration.** Pursuant to the Plan and the Trust Agreement, the Trust and the TDPs shall be administered by the Trustee subject to the consultation and consent provisions applicable to the TAC.

**B.** **Powers and Obligations.** The powers and obligations of the Trustee, and the consultation and consent provisions applicable to the TAC are set forth in the Trust Agreement. For the avoidance of doubt, the TAC shall have no authority or ability to modify, reject, or influence any claim review or Allowed Claim Amount determination under the TDPs.

**C.** **Consent Procedures.** The Trustee shall obtain the consent of the TAC on any amendments to the TDPs pursuant to ARTICLE X.A, and on such matters as are otherwise required below. Such consent shall not be unreasonably withheld, conditioned or delayed.

**D.** **Extension of Deadlines.** The Trustee with the consent of the TAC may extend any deadlines set forth in the TDPs.

6

## ARTICLE IV
## GENERAL TRUST PROVISIONS

     **A.**    **Confidentiality.** Documents submitted to the Trust by a Claimant are for the sole benefit of the Trust and not third parties or defendants. All submissions to the Trust by a Claimant, including Trust Claim Submission and any documents submitted therewith, shall be treated as made during settlement discussions between the Claimant and the Trust and are intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including those directly applicable to settlement discussions. The Trust will preserve the confidentiality of such Claimant submissions and shall disclose the contents thereof only to such persons as authorized by the Claimant, the TDPs, or in response to a valid subpoena of such materials, seeking non-privileged, non-mediation protected materials, issued by the Bankruptcy Court, the United States District Court for the Southern District of Texas, or any other court of competent jurisdiction. The Trust shall provide counsel for the Claimant, or if the Claimant is unrepresented, the Claimant, with a copy of any such subpoena immediately upon being served. In such a case, the Trust shall provide notice to counsel for the Claimant, or if the Claimant is unrepresented, the Claimant, to allow such party sufficient time to object to the production. The Trust shall on its own initiative or upon request of the Claimant or Claimants in question take all necessary and appropriate steps to preserve all privileges. Notwithstanding anything in the foregoing to the contrary, the Trust may disclose information, documents, or other materials reasonably necessary in the Trust's judgment to (i) one or more consultants and professionals (including a third party claims processing firm) retained by the Trust to assist in the administration of the Trust Claims, and (ii) preserve, obtain, litigate, resolve, or settle insurance coverage, or pursue any other claims transferred or assigned to the Trust by the holder of the Trust Claim or operation of the Plan; *provided*, *however*, that the Trust shall take all steps reasonably feasible to preserve the further confidentiality of such information, documents, and materials.

     **B.**    **FIFO Claims Process Queuing and Exigent Claims.** Except as otherwise provided herein with respect to Exigent Hardship Claims, the Trust shall commence review of all Trust Claim Submissions for processing purposes on a FIFO basis, provided, however, that nothing herein shall require the Trust to complete the review of any Trust Claim prior to reviewing and paying any subsequently filed Trust Claims. A Claimant's position in the FIFO Processing Queue shall be determined as of the Claimant's Trust Claim Submission Date. A Claimant that seeks recovery on account of an Exigent Hardship Claim shall be moved in front of the FIFO Processing Queue no matter what the order of processing otherwise would have been under the TDPs.

     **C.**    **Statute of Limitations or Repose.** The statute of limitations and the choice of law determination applicable to claims against the Trust shall be determined by reference to the jurisdiction where a claim was pending on the Petition Date, or where such a claim could have been timely and properly filed as asserted by the Claimant. To be considered timely submitted and eligible for compensation, all Trust Claims filed against the Trust that are Claims for alleged personal injury, wrongful death, or other similar Claim or Cause of Action arising out of or relating to an injury or death allegedly caused by the Debtors must either (a) in the case of claims first filed against the Debtors prior to the Petition Date, have been filed prior to the applicable federal or state statute of limitations and repose that was in effect at the time of the filing of the claim, and such claim must not have been dismissed prior to the Petition Date; or (b) in the case of claims not filed against the Debtors prior to the Petition Date, have been filed with the Trust prior to the

7

applicable federal or state statute of limitations and repose that was in effect at the time of the filing of a Basic Claim Submission with the Trust. For the purpose of applying the TDPs, the running of the applicable statute of limitations or repose shall be tolled as of the earliest of: (a) the actual filing of a claim against the Debtors prior to the Petition Date; (b) the date specified by agreement or otherwise among the Debtors and/or the Trust, on the one hand, and the applicable claimant, on the other hand, (or, if none, the date of the agreement) in the case of tolling prior to the Petition Date by an agreement or otherwise, provided such tolling was still in effect on the Petition Date; or (c) the Petition Date. The tolling as of the Petition Date shall run and exhaust as of 30 days after the Effective Date of the Plan. If a Trust Claim meets any of the tolling provisions in the foregoing sentence and the claim was not barred by the applicable federal or state statute of limitations or repose at the time of the relevant tolling event, it shall be treated as timely filed if a Basic Claim Submission in respect of such claim is filed with the Trust within sixth (60) days after the Initial Claims Filing Date.

      **D.**    **Threshold Eligibility.** To be eligible to potentially receive compensation from the Trust on account of a Trust Claim, except with respect to Second Lien Deficiency Claims, each Claimant must:

    (1)    have timely filed, or have been deemed to have timely filed, or have obtained appropriate leave from the Bankruptcy Court to file late, a Proof of Claim with the Bankruptcy Court;

    (2)    have signed the Proof of Claim attesting to the truth of its contents under penalty of perjury, or, if not, supplements the Proof of Claim to so provide such verification;

    (3)    have filed a Proof of Claim that is free of material defect such that the Trustee is able to determine from the Proof of Claim that Trust Claim is *prima facie* valid and is not barred by any applicable federal or state statute of limitations or repose; and

    (4)    have not previously had the Trust Claim dismissed on the merits or have received payments on the Trust Claim such that no recovery from the Trust would be permissible under the TDPs, including ARTICLE X.

Trust Claims asserted by Claimants who do not satisfy this threshold eligibility criteria (collectively, the "**Threshold Criteria**") shall be deemed by the Trustee to be Disallowed Claims after a Disallowed Claim Notice has been delivered in accordance with ARTICLE IV.H, and shall not be paid by the Trust. For the avoidance of doubt, holders of Second Lien Deficiency Claims automatically shall be deemed to satisfy the Threshold Criteria.

      **E.**    **Claims Evaluation.** As soon as practicable following the Effective Date, the Trustee shall create a process by which GUC Claimants can submit additional information relating to their claims beyond the information included in the Basic Claim Submission, Schedules, or a filed Proof of Claim, with such submissions being made electronically or via U.S. Mail. The process will include a date by which GUC Claimants must submit this additional information (the "Trust Claim Submission Date"). The Trust shall evaluate each GUC Claim (except Second Lien

8

Deficiency Claims) individually and will follow the uniform procedures and guidelines set forth herein to determine, based on the evidence obtained by the Trust, whether a GUC Claim should be Allowed; *provided*, for the avoidance of doubt, that the Second Lien Deficiency Claims are Allowed in full pursuant to Article III.B.5 of the Plan and (i) shall not be subject to such Claims Evaluation, (ii) automatically are deemed Allowed GUC Claims, and (iii) shall not be required to make a Trust Claim Submission. After a review of the documentation provided by the Claimant in his, her or its Trust Claim Submission and any follow-up materials, the Trust will determine the Trust Claim to be either (i) legally valid and an Allowed GUC Claim or an Allowed Indirect Claim or (ii) legally invalid and ineligible for compensation (a "**Disallowed Claim**").

F. **Deficiency Notices.** If the Trust Claim, other than a Second Lien Deficiency Claim, does not include evidence that is presumptively reliable, or the Trustee otherwise determines that additional evidence is reasonably required to establish the validity of a Trust Claim, the Trust may issue deficiency notices to Claimants identifying the information requested by the Trust to cure the deficiency. The failure to provide information requested by the Trust shall be grounds for the Trustee to determine that a claim is a Disallowed Claim.

G. **Disallowed Claims.** If the Trustee determines that a Trust Claim, other than a Second Lien Deficiency Claim, is a Disallowed Claim, the Trustee shall provide written notice of his, her or its determination to the relevant Claimant (an "**Disallowed Claim Notice**"). If the Trustee determines that a Trust Claim is a Disallowed Claim, the Trustee will not perform the Allowed Trust Claim valuation analysis described herein.

H. **Allowed Trust Claims.** If the Trustee determines that a Trust Claim is an Allowed Trust Claim, the Trustee shall utilize the procedures described in ARTICLE VI.C to determine the value of Trust Claim and the procedures described in ARTICLE VII.C to determine the value for Indirect Claims (each, a "**Proposed Allowed Claim Amount**"), and provide written notice of allowance and the Proposed Allowed Claim Amount to the Claimant (an "**Allowed Claim Notice**" and together with the Disallowed Claim Notice, a "**Claim Notice**") as set forth in ARTICLE IV.J below. To the extent the Trustee determines that sufficient information necessary to determine a Proposed Allowed Claim Amount has not been provided, the Trustee may, at his discretion, request additional information from a GUC Claimant in writing. Notwithstanding anything to the contrary herein, the Allowed Claim Amount of each Second Lien Deficiency Claim shall be based on the amount of the respective positions held by each Holder of a Second Lien Deficiency Claim as evidenced by a register of such claims to be provided by the Second Lien Agent. The Trustee shall have the right to develop additional procedures necessary to determine the value of any Trust Claims that are not subject to ARTICLE VI or ARTICLE VII so that they are valued in accordance with state law or, if applicable, other non-bankruptcy law and result in values consistent with values ascribed to other Trust Claims under the TDPs.

I. **Claims Determination.** If the Claimant accepts the Proposed Allowed Claim Amount in the Allowed Claim Notice or the reconsideration process set forth hereinafter in ARTICLE IV.K has been exhausted, the Proposed Allowed Claim Amount shall become the Allowed Claim Amount for such Trust Claim, operating as a final settlement for such Trust Claim and a determination of the Debtors' liability for such Trust Claim (a "**Final Determination**"); *provided* that the Allowed Claim Amount of each Second Lien Deficiency Claim shall automatically be deemed a Final Determination. The holder of each such Allowed Trust Claim

9

shall be approved for payment in accordance with ARTICLE VIII.B, subject to the Claimant executing the Acceptance and Release set forth in ARTICLE VIII.E; *provided* that, notwithstanding anything to the contrary herein, the holders of Second Lien Deficiency Claims shall not be required to execute an Acceptance and Release.

   **J.**  <u>**ADR Procedures for Reconsideration Requests.**</u> A Claimant may make a request for reconsideration of (i) a determination that his, her or its Trust Claim is ineligible for compensation, or (ii) the valuation of the Trust Claim by the Trust (a "**Reconsideration Request**") within ninety (90) days of receiving a Disallowed Claim Notice or an Allowed Claim Notice (the "**Reconsideration Deadline**"). Any Claimant who fails to submit a Reconsideration Request to the Trust by the Reconsideration Deadline shall be deemed to accept the disallowance of the Trust Claim or the Proposed Allowed Claim Amount. The Trustee shall develop non-binding alternative dispute resolution procedures (the "**ADR Procedures**") to resolve Reconsideration Requests. Disputes over the validity of a Trust Claim shall be eligible for reconsideration and resolution under the ADR Procedures. The Claimant may submit further evidence in support of the Trust Claim with the Reconsideration Request. The neutral designated in the ADR Procedures will reconsider the Trust Claim—including all new information provided by the Claimant in the Reconsideration Request—and will have the discretion to maintain the prior determination or determine that the Trust Claim in question is an Allowed Trust Claim or should receive a new Proposed Allowed Claim Amount. If the neutral designated in the ADR Procedures determines upon reconsideration that a Trust Claim is an Allowed Trust Claim and/or should receive a new Proposed Allowed Claim Amount, the neutral designated in the ADR Procedures will deliver their recommendation to the Trustee.

   Neither the Trustee nor the Claimant is bound by the neutral's determination. The Trustee may accept or reject the neutral's recommendation. If the Trustee accepts the neutral's recommendation in whole or in part, the Trustee will provide the Claimant a written notice containing a revised Proposed Allowed Claim Amount (a "**Revised Proposed Allowed Claim Notice**"). The Claimant may accept this revised Proposed Allowed Claim Amount, or reject it. If the Claimant rejects the revised Proposed Claim Amount, the Claimant will provide notice of such rejection to the Trustee within thirty (30) days of receiving a Revised Proposed Allowed Claim Notice (a "**Revised Proposed Allowed Claim Rejection**"). Any Claimant who fails to submit a timely Revised Proposed Allowed Claim Rejection following receipt of a Revised Proposed Allowed Claim Notice shall be deemed to accept the Revised Proposed Allowed Claim Amount. If the Trustee rejects the neutral's recommendation for any reason, then the Trustee shall provide a written notice of such rejection to the Claimant (the "**Rejection Notice**"). Within thirty (30) days of the submission of the Rejection Notice or the receipt of a Revised Proposed Allowed Claim Rejection, the Trustee shall file a written objection to the Trust Claim with the Bankruptcy Court (the "**Claim Objection**"). The Claim Objection creates a contested matter that shall proceed under Fed. R. Bankr. P. 9014 and the Trust Claim shall be allowed in such amount to be determined by entry of a final order of the Bankruptcy Court; *provided, however,* that to the extent a GUC Claim would be subject to 28 U.S.C. § 157(b)(5) and Claimant opposes having the Bankruptcy Court determine the allowed amount for the claim, the Claimant may proceed in the appropriate civil court and litigate such claim with the Liquidating Trust included as a nominal defendant. In such instances, the Liquidating Trust's liability will be limited to Trust Distributions pursuant to the theses procedures and any judgment obtained against the Liquidating Trust would be used to determine Claimant's Allowed Claim Amount as provided for herein.

10

K.  **Claims Audit Program.**  The Trustee may institute procedures for auditing the reliability of evidence submitted to the Trust involving Trust Claims for which the Trust has legal responsibility (the "**Claims Audit Program**").  The Trustee may utilize the services of a third-party claims processing facility to assist in the evaluation of Trust Claims submitted to the Trust.  The filing of any Trust Claim with the Trust, regardless of the treatment sought, shall constitute consent for the Trust to release to any entity overseeing the Claims Audit Program all information submitted to the Trust on behalf of the Claimant and to disclose the status of any such Trust Claim and the amount and date of any payments on account of such Trust Claim.  Any Claimant subject to the Claims Audit Program shall cooperate and provide the Trust with non-privileged information reasonably requested by the Trust and, if requested by the Trust, authorization to obtain information such Claimant has submitted to any other trusts or third parties relating to such Claimant's Trust Claim.  If an audit reveals that fraudulent information has been provided to the Trust, the Trust may penalize any claimant or claimant's attorney by disallowing the Trust Claim or by other means including requiring the return of any payments received from the Trust and requiring the claimant to pay the costs associated with the audit, as well as any other appropriate action or sanction.

## ARTICLE V
## EXPEDITED DISTRIBUTIONS

A.  **Expedited Payment Criteria.**  So long as the Expedited Distribution Threshold has not been reached, a Claimant who meets the following criteria may elect to resolve their GUC Claim for an expedited distribution of $2,500 (the "**Expedited Distribution**"):  (i) the Claimant is a GUC Claimant who makes an Expedited Distribution Election by submitting an Acceptance and Release in the form attached hereto as Exhibit 1-1 (Expedited Distributions); and (ii) the Claimant satisfies the Threshold Criteria.

B.  **Process and Payment of Expedited Distributions.**  GUC Claimants who have elected to receive the Expedited Distribution and who also have met the Threshold Criteria shall be entitled to receive their Expedited Payment upon executing the Acceptance and Release in the form attached hereto as Exhibit 1-1 (Expedited Distributions).  A GUC Claimant who elects to receive the Expedited Distribution shall have no other remedies with respect to their GUC Claim against the Trust and will not be eligible to receive any further distribution on account of their GUC Claim from the Trust.

C.  **Process and Payment of Expedited Distributions.**  Except as otherwise provided herein with respect to Exigent Hardship Claims, the Trust shall commence review of all Expedited Distribution Elections for processing purposes on a FIFO basis, provided, however, that nothing herein shall require the Trust to complete the review of any Trust Claim prior to reviewing and paying any subsequently filed Trust Claims (the "**Expedited Distribution FIFO Processing Queue**").  A Claimant's position in the Expedited Distribution FIFO Processing Queue shall be determined as of the Trust's receipt of the Claimant's Acceptance and Release in the form attached hereto as Exhibit 1-1 (Expedited Distributions).  In the event that the Expedited Distribution Threshold is met prior to the payment of all GUC Claims for which an Expedited Distribution Election has been made, the GUC Claimants for those remaining GUC Claims shall be notified in writing by the Trustee of the exhaustion of the Expedited Distribution Threshold and that the GUC

11

Claimant's GUC Claim shall be processed and paid under the terms and conditions set forth in Article VI and Article VIII.

## ARTICLE VI
## CLAIMS ALLOWANCE PROCESS FOR GUC CLAIMS

**A.     General Criteria for Evaluating Claims.**  In addition to satisfying the Threshold Criteria, to be eligible to receive compensation from the Trust on account of a GUC Claim, each GUC Claimant must have a GUC Claim against the Debtors that is (i) valid under applicable state or federal law, and (ii) not subject to (y) disallowance under section 502 of the Bankruptcy Code, including subsection (b) thereof, or (z) subordination under sections 509(c) or 510 of the Bankruptcy Code, or otherwise under applicable law.  The foregoing requirements are herein referred to as the "**GUC Claim Criteria**."  GUC Claims asserted by GUC Claimants who do not satisfy the GUC Claim Criteria shall be deemed by the Trustee to be Disallowed Claims after a Disallowed Claim Notice has been delivered in accordance with ARTICLE IV.G, and shall not be paid by the Trust.  For the avoidance of doubt, notwithstanding anything to the contrary herein, Second Lien Deficiency Claims shall be (i) Allowed as set forth in the Plan, (ii) deemed to satisfy the GUC Claim Criteria, and (iii) eligible to receive compensation from the Trust as GUC Claims.

**B.     Valuation of Allowed GUC Claims.**  If a GUC Claimant has satisfied the GUC Claim Criteria, then it shall have an Allowed GUC Claim and such GUC Claim shall be valued by the Trust utilizing the following factors:  (i) the likelihood that the Claimant is able to show the Debtors was liable to the Claimant on the basis set forth in the Claimant's filed Proof of Claim; (ii) any defenses the Debtors had to the Allowed GUC Claim; (iii) the portion of the Allowed GUC Claim constituting interest, late charges, collection costs or attorneys' fees; (iv) any other factors bearing on the amount set forth in the Claimant's filed Proof of Claim. The Trustee shall, with input from and consent of the TAC and input from any other knowledgeable resources as the Trustee sees fit, develop a schedule of valuations based on claim type to assist with valuation of unliquidated claim types held by multiple Trust Beneficiaries for the purpose of maximizing efficiency and preserving Liquidating Trust Assets for distribution in the valuation of such claims. After analyzing the Allowed GUC Claim under these factors and referencing such schedule as applicable, the Trustee will determine a Proposed Allowed Claim Amount for each Allowed GUC Claim.  For the avoidance of doubt, notwithstanding anything to the contrary herein, the Allowed Claim Amount of each Second Lien Deficiency Claim shall be based on the amount of the respective positions held by each Holder of a Second Lien Deficiency Claim as evidenced by a register of such claims to be provided by the Second Lien Agent.  The Proposed Allowed Claim Amount for an Allowed GUC Claim shall be deemed to be the Debtors' liability for such GUC Claim (*i.e.*, the claimant's right to payment for his, her or its GUC Claim), irrespective of how much the holder of such GUC Claim receives from the Trust pursuant to the payment provisions set forth in ARTICLE VIII.  In no circumstance shall the amount of the Debtors' legal obligation to pay any GUC Claim be determined to be any payment percentages hereunder or under the Trust Agreement (rather than the liquidated value of such GUC Claim as determined under the TDP).

**C.     Liquidated Judgments.**  Notwithstanding the process of valuing Allowed GUC Claims set forth in this ARTICLE VI, if (1) prior to the Effective Date an Allowed GUC Claim was liquidated by a judgment of a court of competent jurisdiction that has not been reversed or vacated on appeal, (2) such judgment is not secured by a bond or other collateral such that the

judgment can be satisfied by a source other than the Trust, and (3) the holder of such Allowed GUC Claim did not elect to Opt Out pursuant to the Plan, then the Trustee will adopt the judgment amount as the Proposed Allowed Claim Amount.

## ARTICLE VII
## INDIRECT CLAIMS

**A.** **Indirect Claim Eligibility Criteria.** In addition to the threshold eligibility criteria for Trust Claims set forth in ARTICLE IV.A, to be eligible to receive compensation from the Trust on account of a Claim against the Debtors for defense, contribution, indemnification, reimbursement, or subrogation of any entity that is liable with the Debtors on a GUC Claim held by another creditor, whether contractual or implied by law and whether in the nature of or sounding in contract, tort, warranty, statute, common law, or any other theory of law or equity whatsoever (a "**Indirect Claim**"), each holder of an Indirect Claim (a "**Indirect Claimant**") must:

    (i) have a valid Indirect Claim against the Debtors that is (a) valid under applicable state or federal law, and (b) not subject to (y) disallowance under section 502 of the Bankruptcy Code, including subsection (b) thereof, or (z) subordination under sections 509(c) or 510 of the Bankruptcy Code, or otherwise under applicable law; and

    (ii) must establish to the Trust's satisfaction that:

        (a) such Indirect Claimant has paid in full the liability and/or obligation of the Trust to a GUC Claimant to whom the Trust would otherwise have had a liability or obligation under the TDPs (and which has not been paid by the Trust);

        (b) the Indirect Claim is not otherwise subject to a valid defense; and

        (c) the GUC Claimant and the Indirect Claimant have or will have forever and fully released the Trust in respect of the Indirect Claim.

The foregoing requirements are herein referred to as the "**Indirect Claim Criteria**." Indirect Claims asserted by Indirect Claimants who do not satisfy the Indirect Claim Criteria shall be deemed by the Trustee to be Disallowed Claims after a Disallowed Claim Notice has been delivered in accordance with ARTICLE IV.H, and shall not be paid by the Trust.

**B.** **Indirect Claimant Trust Claim Submission.** To properly make a Trust Claim Submission, each submitting Indirect Claimant must, in addition to completing and filing a Basic Claim Submission with the Trust, submit documents sufficient to establish to the Trust's satisfaction that the Indirect Claimant satisfies the Indirect Claim Criteria. The Trust may develop any additional claim forms for Indirect Claimants so that appropriate documentation is provided by each Indirect Claimant to substantiate and pay Indirect Claims. The date on which the foregoing is submitted to the Trust by an Indirect Claimant shall be the Trust Claim Submission Date for the applicable Indirect Claim.

13

C.  **Allowance of Indirect Claims.**  If an Indirect Claimant has satisfied the Indirect Claim Criteria, then it shall have an Allowed GUC Claim and its Indirect Claim shall be valued by the Trust in accordance with applicable law; *provided*, *however*, no Indirect Claim may be liquidated and paid in an amount that exceeds what the Indirect Claimant has paid to the related GUC Claimant in respect of such claim for which the Trust would have liability, and in no event shall any Indirect Claim exceed the Allowed Claim Amount of the related GUC Claim as determined under the TDPs.  In any case where the Indirect Claimant has satisfied the claim of a GUC Claimant against the Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain a release for the benefit of the Trust substantially in the form and substance of the release provided in Exhibit 1-2.  If the Indirect Claimant can show that it has paid such liability or obligation of the Trust to a GUC Claimant and the Trust has not already paid the GUC Claimant, and the Indirect Claimant provides a release of the Trust pursuant to a document substantially in the form and substance of the release provided in Exhibit 1-2 for the GUC Claim, then the Indirect Claim may be allowable pursuant to the procedures described herein.  In no event shall any Indirect Claimant have any rights against the Trust superior to the rights that the GUC Claimant to whose claim the Indirect Claim relates would have against the Trust under applicable law and the TDPs, including any rights with respect to timing, amount, priority, or manner of payment.

D.  **Offset.**  The liquidated value of any Indirect Claim paid by the Trust shall be treated as an offset to or reduction of the Allowed Claim Amount of any related GUC Claim that has been or will be submitted to the Trust.

## ARTICLE VIII
## PAYMENT OF FINAL DETERMINATION

A.  **Initial Payment Percentage.**  The Trustee shall determine from time to time the Pro Rata share that holders of Allowed Trust Claims are likely to receive from the Liquidating Trust Assets available for distribution on account of compensable Allowed Trust Claims or for reserves on account GUC Claims for which a Final Determination has not been made, as determined by the Trustee (the "**Initial Payment Percentage**").  As soon as practicable after the Effective Date, the Trustee shall establish an Initial Payment Percentage.

B.  **Payment Upon Final Determination.**  Only after the Trustee has established an Initial Payment Percentage in accordance with the Trust Agreement, then once there is a Final Determination of a Trust Claim pursuant to pursuant to ARTICLE IV.J (based on a final settlement reached or entry of a final order by the Bankruptcy Court in accordance with ARTICLE VI and/or ARTICLE VII), will the Claimant receive a payment of such Final Determination based on the Payment Percentage then in effect as described in ARTICLE VIII.A and ARTICLE VIII.D.

C.  **Initial Payment.**  After there is a Final Determination of the Trust Claim, the Trust shall pay an initial distribution (the "**Initial Distribution**") based on the then-existing Payment Percentage established by the Trustee in accordance with the Trust Agreement.

D.  **Supplemental Payment Percentage.**  In the event that the Trustee determines that the then-current estimates of the Trust's assets and its liabilities, as well as the then-estimated value of then-pending Trust Claims, warrant additional distributions on account of the Final Determinations, the Trustee shall set a supplemental payment percentage in accordance with the

14

Trust Agreement (the "**Supplemental Payment Percentage**" and, together with the Initial Payment Percentage, the "**Payment Percentages**"). Such Supplemental Payment Percentages shall be applied to all Final Determinations that became final prior to the establishment of such Supplemental Payment Percentage. Claimants whose Trust Claim becomes a Final Determination after a Supplemental Payment Percentage is set shall receive an Initial Distribution equal to the then-existing aggregate payment percentage. For the avoidance of doubt, the Allowed Claim Amount of each Allowed Trust Claim after Final Determination shall be deemed to be the Debtors' liability for such Allowed Trust Claim irrespective of how much the holder of such Trust Claim actually receives from the Trust pursuant to the payment provisions set forth in this ARTICLE VIII. For example, if the Allowed Claim Amount for an Allowed GUC Claim that has received a Final Determination is $600,000, even if the Trust distributes less than $600,000 to the GUC Claimant on account of such Allowed GUC Claim based on application of the Initial Payment Percentage and any Subsequent Payment Percentage(s), the Allowed Claim Amount for the GUC Claim is still $600,000.

    E. **Acceptance and Release.** For an Allowed Trust Claim to receive payment from the Trust, the Claimant must submit, as a precondition to receiving such payment from the Trust, an executed acceptance and release (the "**Acceptance and Release**"), which shall include a release of the Trust, the Trustee, the TAC, and each of their respective Representatives; *provided* that, notwithstanding anything to the contrary herein, the holders of Second Lien Deficiency Claims shall not be required to execute an Acceptance and Release. The Acceptance and Release shall be in the form attached hereto as Exhibit 1-1 (Expedited Distributions), Exhibit 1-2 (GUC Claims), and Exhibit 1-3 (Indirect Claims). The Acceptance and Release shall be available for completion electronically and may be executed by the Claimant or his, her or its representative through DocuSign or a similar authorized electronic signature program, or such other simplified and expedient means as the Trust may adopt.

### ARTICLE IX
### EXCESS RECOVERIES

    A. **Limitations on Trust Recovery.** A Claimant may not recover more than the Allowed Claim Amount from the Trust when taking into consideration recoveries obtained from other Potentially Liable Parties or insurance recoveries. The sole source of recovery for GUC Claimants who do not elect to "Opt Out" and who do not elect to pursue recoveries from Potentially Liable Parties is from the Trust. GUC Claimants who elect to pursue recoveries from Potentially Liable Parties or applicable insurance may obtain recoveries from sources other than the Trust on account of their GUC Claims. If a GUC Claimant makes demand upon an insurer for payment as to their GUC Claim or receives payment from an insurer for their GUC Claim based on an existing demand, such GUC Claimant must notify the Trust in writing. If a GUC Claimant recovers on account of his, her or its GUC Claim an amount from a Potentially Liable Party, an insurer, or any source other than the Trust that results in such GUC Claimant recovering the Allowed Claim Amount or a portion thereof of such GUC Claims as determined under the TDPs, then notwithstanding anything contained herein, such GUC Claimant shall not be entitled to receive an additional recovery from the Trust on account of such GUC Claim that would cause the GUC Claimant to receive funds in excess of their Allowed Claim Amount. For example, if the Allowed Claim Amount for an Allowed GUC Claim is $600,000, and the GUC Claimant has received distributions from the Trust totaling $200,000, and the GUC Claimant then recovers $400,000

from a Potentially Liable Party or any source other than the Trust such that his, her or its total recovery is $600,000 on account of such GUC Claim, then such GUC Claimant shall not be entitled to receive any further recovery from the Trust, including in circumstances where the Supplemental Payment Percentage is over 33.3%. The Trustee may ask GUC Claimants if they intend to pursue recoveries on account of their GUC Claims from sources other than the Trust and to provide the Trustee with updates regarding such pursuits. GUC Claimants who obtain any such recoveries shall immediately inform the Trust.

    B.  **Excess Recovery.** If a GUC Claimant were to receive a distribution from the Trust on account of his, her or its GUC Claim and then obtain a recovery from a Potentially Liable Party or any source other than the Trust on account of his, her or its GUC Claim such that the GUC Claimant is placed in a position where he or she has recovered more than the Allowed Claim Amount of such GUC Claim as determined under the TDPs, then such GUC Claimant shall be required to return or deliver to the Trust the portion of such recovery that causes such GUC Claimant's total recovery on account of such GUC Claim to exceed the Allowed Claim Amount, provided, however, that in no circumstance shall a GUC Claimant be required to return or deliver to the Trust an amount greater than the distributions received from the Trust on account of his, her or its GUC Claim. For example, if the Allowed Claim Amount for an Allowed GUC Claim is $600,000, and the GUC Claimant has received distributions from the Trust totaling $200,000, and the GUC Claimant then recovers $500,000 from a Potentially Liable Party such that his, her or its total recovery is $700,000, then such GUC Claimant shall be required to return $100,000 to the Trust. If the Allowed Claim Amount for an Allowed GUC Claim is $600,000, and the GUC Claimant has received distributions from the Trust totaling $200,000, and the GUC Claimant then recovers $2,000,000 from a Potentially Liable Party such that his, her or its total recovery is $2,200,000, then such GUC Claimant shall be required to return $200,000 to the Trust (*i.e.*, the distributions received from the Trust on account of his, her or its GUC Claim).

    C.  **Potentially Liable Parties.** Nothing in the TDPs, nor any action taken pursuant to the TDPs, shall determine, limit, reduce, or impact the liability of any Potentially Liable Party for a Trust Claim. Potentially Liable Parties are not third-party beneficiaries, and their liability for any Trust Claim shall not be determined by, or by reference to, the TDPs.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

    A.  **Amendments.** Except as otherwise provided herein, the TDPs may be amended with the written consent of the Trustee and the TAC, as provided in the Trust Agreement. The consent of the TAC shall not be unreasonably withheld. Nothing herein is intended to preclude the TAC from proposing to the Trustee, in writing, amendments to the TDPs. Notwithstanding the foregoing, absent Bankruptcy Court approval after appropriate notice and opportunity to be heard, the TDPs may not be modified or amended in a material manner that would have the effect of (i) providing for materially different treatment for Trust Claims or (ii) cause the TDPs to be otherwise inconsistent with the Trust Agreement, the Plan, or the Confirmation Order.

    B.  **Severability.** Should any provision contained in the TDPs be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the TDPs.

        **C.**      **<u>Governing Law.</u>**  Each Trust Claim shall be evaluated under the laws of the jurisdiction in which the Trust Claim arose.