**MAIN STREET LEGAL SERVICES**

December 10, 2025

<u>VIA CM/ECF</u>
Hon. Philip M. Halpern
U.S. District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re: <u>Ordonez-Vargas v. Orange County, No. 7:25-cv-00064-PMH;</u><br><u>Rule 12(b)(6) Pre-Motion Opposition Letter</u>

Dear Judge Halpern:

      We write as Plaintiffs' representatives in response to the NYCCS Defendants' letter requesting a pre-motion conference in anticipation of moving to dismiss the Second Amended Complaint. *See* Dkt. 92. For the reasons set forth below, Plaintiffs have amply pled their claims against the NYCCS Defendants and Defendants' proposed motion to dismiss is unavailing.

**I.    Plaintiffs Amply Allege Deliberate Indifference to Their Serious Medical Needs**

      NYCCS Defendants suggest that Plaintiffs failed to state a claim for deliberate indifference to Plaintiffs' medical needs under the Fourteenth Amendment. Dkt. 92, at 2-4. But Plaintiffs amply plead: (1) a sufficiently serious harm; and (2) that NYCCS Defendants knew, or should have known, about those harms. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (requiring that "the challenged conditions were sufficiently serious to constitute objective deprivations" and that "a reasonable person knew[] or should have known" about those harms). We address each Plaintiff.

      **Plaintiff Cruz.** Ms. Cruz has lupus and received test results while incarcerated that informed NYCCS doctors she was experiencing improper kidney function. *See* Dkt. 78, ¶ 37. No NYCCS staff member was qualified to treat Plaintiff's kidney complications. Ms. Cruz's kidney complications were evidenced by repeatedly concerning lab results week after week—any one of which should have alerted Defendants to the fact that further treatment was necessary. *Id.* ¶¶ 38-39. Nonetheless, Defendants unreasonably delayed Plaintiff Cruz's access to specialty care for two months during a severe lupus flare-up and prescribed her no additional medication during those months. *Id.* ¶¶ 40-41 ("Defendant Dominick Piacente knew or should have known that it was necessary for Plaintiff to see a rheumatologist to address her lupus flare"). When Defendants finally scheduled an outpatient rheumatology visit, they refused to wait for the patient to conduct appropriate lab testing onsite, failed to provide Plaintiff the critical medication prescribed by the provider, and failed to deliver the follow-up lab results the outpatient doctor had requested to ensure proper treatment. *Id.* ¶¶ 42-45. As such, Plaintiff went without any meaningful care for her active and degenerative lupus flare-up because Defendants failed to follow basic medical practice standards. *Id.* ¶¶ 38, 41, 43, 44. Plaintiff ultimately developed lupus nephritis and has permanent scarring as a result. *Id.* ¶¶ 53-55 (Plaintiff "left with permanent organ damage—despite repeatedly pleading with Wellpath […] Defendants to provide the baseline care any proper medical staff should have provided"). That is a serious medical condition under the Fourteenth Amendment. *See Revels v. Corr. Med. Care, Inc.*, No. 9:17-cv-0099, 2018 U.S. Dist. LEXIS 511118, at *11-*12 (N.D.N.Y. Mar. 28, 2018) ("A number of district courts in this circuit have found kidney failure to constitute a sufficiently serious medical condition to satisfy the objective component of a deliberate indifference claim") (collecting cases). Defendants' failure to provide the proper treatment for weeks on end, despite Plaintiffs' repeated complaints, Defendants' own serious

lab results, and the urging of an outpatient provider—establishes deliberated indifference. *See Freudenberg v. Cty. of Orange*, No. 23-CV-847, 2024 U.S. Dist. LEXIS 175739, at *13 (S.D.N.Y. Sep. 25, 2024) ("despite [the detainee's] worsening symptoms and dozens of requests for attention, Defendants did nothing to address any […] risk until it was too late").

      Defendants respond that: (1) a six-day lapse in Plaintiff Cruz's medication is not a sufficiently serious medical condition and (2) that there was a mere disagreement over Plaintiff Cruz's diagnosis and the need for specialty care. Neither argument has any merit based on the clear allegations in the Second Amended Complaint. Dkt. 92 at 3. First, Defendants ignore that a mere six-day lapse in prescription medication is not the crux of Plaintiff Cruz's deliberate indifference claim. *See* Dkt. 78, ¶¶ 26-31, 33-34, 35 ("But that was just the beginning of Ms. Cruz's ordeal at OCCF"). The crux of her claim is instead the detailed allegations of more than two months of Defendants' failure to appropriately treat Plaintiff Cruz's worsening lupus and resulting kidney damage despite concerning lab results, alarm bells from an outpatient provider, unacceptable failure to provide prescribed treatment, refusal to wait for onsite lab testing and failure to deliver critical lab results required for treatment. *See* Dkt. 78 at ¶¶ 36-46. Those are the bases of Plaintiff Cruz's claim, and Defendants fail to address them sufficiently.[1]

      Second, Defendants argue that Plaintiff Cruz has no remedy because medical providers in jails are permitted to "disagree" about a prescribed course of treatment. Dkt. 92, at 3. However, it is well settled that—once outside specialists are consulted—a "deliberate indifference claim may lie where prison officials deliberately ignore the medical recommendations of a detainee's treating physician." *Gill v. Mooney*, 824 F.2d 192, 196 (2d. Cir. 1987); *Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) ("prison officials are more than merely negligent if they deliberately defy the express instructions of a detainee's doctors"); *Harper v. Santos*, 847 F.3d 923, 928 (7th Cir. 2017) ("failing to follow instructions received from outside experts can amount to deliberate indifference"). It is the deliberate defiance of those recommendations from Plaintiff Cruz's treating physician that is the basis for her claim—as well as Defendants' refusal to take any meaningful treatments steps whatsoever. *See* Dkt. 78, ¶¶ 43-45; *Ramsey-Nobles v. Keyser*, No. 16 Civ. 5778, 2019 U.S. Dist. LEXIS 147693, at *90 (S.D.N.Y. Aug. 21, 2019) ("when a detainee has received some medical treatment, deliberate indifference will be found when the medical attention rendered [was] so woefully inadequate as to amount to no treatment at all").

      **Plaintiff Ordonez Vargas.** Plaintiff Ordonez Vargas suffered from three distinct and serious facial fractures that resulted in weeks of profuse bleeding from her nose, which was observed by several of the NYCCS Defendants who took no action to treat Plaintiff other than to offer over-the-counter ibuprofen. *See* Dkt. 78, ¶¶ 58, 67, 72, 74, 89 ("Nor was there any reason to delay further, as any forwarded records would simply have confirmed what Defendant Zaccagnino already knew or should have known from Ms. Ordonez Vargas's first appointment—that she had a broken and continuously bloody nose that needed prompt treatment"); *see also id.* ¶ 59 ("As a result of these serious fractures, Ms. Ordonez Vargas was experiencing significant difficulty breathing. She was also continuing to bleed profusely from her nose. The hospital promptly referred [Plaintiff] for surgery consultation because it was determined that the fractures were complex and that her breathing problems necessitated prompt

---

[1] But even if Plaintiff Cruz's claim was purely related to the six-day failure to deliver a particular medication, Defendants are wrong on the law. The sole case to which Defendants cite makes clear that even a short delay in the delivery of medication—if it could result in physical harm or damage—amounts to deliberate indifference under the Fourteenth Amendment. *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003) ("it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care […] that is relevant […] delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay") (internal quotations omitted). Here, there was a substantial risk of that harm occurring purely as a result of the six-day delay in Plaintiff receiving medication. Dkt. 78, ¶ 28 ("If a lupus patient stops taking a drug like Warfarin, their blood will start clotting at the same rate as before […] within one or two days of cessation").

surgical intervention"). Ibuprofen was a woefully inadequate substitution for the treatment Plaintiff's injuries required.

NYCCS Defendants' pre-motion letter puts forth three arguments as to Plaintiff Ordonez Vargas: (1) that the Plaintiff's medical condition is not sufficiently serious; (2) that there was merely a "disagreement" over treatment; (3) that there are no allegations to speak to Defendant Harkin's liability; and (4) that nurse Defendants Baron and Washington cannot be liable because they have no authority to order medications or specialized treatment. Each of these arguments are without merit.

Sufficiently Serious Condition. NYCCS Defendants appear to agree that a broken nose is a sufficiently serious medical condition when accompanied by profuse bleeding. *See* Dkt. 92 at 4 (citing *Lasher v. City of Schenectady*, No. 02-cv-1395, 2004 U.S. Dist. LEXIS 14871, at *14 (N.D.N.Y. Aug. 3, 2004) ("[A] broken nose alone may not be sufficient to constitute a serious medical need, but when a broken nose is bleeding profusely the condition is sufficiently serious")). The SAC alleges throughout that Plaintiff Ordonez Vargas suffered from three different nasal fractures—including a facial fracture with structural implications for her entire face—which caused the Plaintiff to bleed profusely and experience significant difficulty breathing. See Dkt. 78 ¶¶ 67, 72, 74. Defendants ignored these allegations.

Lack of Competent Treatment, Not a Mere "Disagreement." There is no "disagreement" as to treatment. Dkt. 92, at 3. Providing ibuprofen for broken, bleeding bones is constitutionally deficient care *per se*. *See* Dkt. 78, ¶ 95 ("all either provided no medical care or only administered ibuprofen"); *see also Freudenberg*, 2024 U.S. Dist. LEXIS 175739, at *13 ("Plaintiff admits that Defendants […] administered treatment in the form of pain medication […] the treatment appears so woefully inadequate compared to the [detainee's] condition") (citation modified); *see also See Johnson v. Wright*, 234 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) ("the course of treatment was largely ineffective and the defendant declined to do anything more to attempt to improve the plaintiff's situation"); *see also Abdiasiis v. Lewis,* No. 2:20-CV-3315, 2022 U.S. Dist. LEXIS 127456, at *17 (S.D. Ohio Jul. 18, 2022) ("a reasonable juror could find [the Defendant's] actions of giving Gatorade and Ibuprofen [were] woefully inadequate treatment in light of the Plaintiff's symptoms and complaints as to amount to no treatment at all"). Defendants cite not a single case to the contrary.

Defendant Harkins' Liability. Defendant Harkins is not being sued for placing Plaintiff Ordonez Vargas on suicide watch. Dkt. 92, at 4. Instead, Harkins is liable for his failure to take any steps to provide treatment for Plaintiff Ordonez Vargas's obviously painful and bleeding facial fractures, even though he knew or should have known that the Plaintiff's nose required medical attention. *See* Dkt. 78 ¶ 67 ("Any reasonable provider would have taken steps to ensure that Ms. Ordonez Vargas received treatment for the fractures in her face made obvious by her bleeding, swelling, and crying").[2]

Nurse Defendants. NYCCS Defendants also argue that claims against Defendants Barone and Washington should be dismissed because they are "registered nurses without authority to prescribe medication or direct specialized treatment." *See* Dkt. 92 at 4 (citing *Johnson v. Rodriguez*, No. 1:21-cv-00606(JLS)(JJM), 2024 U.S. Dist. LEXIS 29386 (W.D.N.Y. Feb. 20, 2024)). That premise is incorrect by virtue of the very case to which Defendants cite, which merely clarifies that personal involvement is required to sue individual members of a jail medical staff. *Johnson*, 2024 U.S. Dist. LEXIS 29386, at *8 ("there [were] no allegations concerning [the nurse Defendants'] particular roles

---

[2] Defendants' sole supporting authority also proves that Defendant Harkins knew of Plaintiff's need for prompt treatment of her facial fractures. *See* Dkt. 92 at 4 (citing *McTerrell v. Koenigsmann*, No. 18-cv-1028, 2021 U.S. Dist. LEXIS 156334, at *21 (W.D.N.Y. Aug. 19, 2021) ("A factfinder may [] conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious")) (internal quotations and citations omitted).

[or personal involvement] in [Plaintiff's] care"). But Plaintiff Ordonez Vargas already saitsified that requirement by alleging the individual involvement of Defendants Barone and Washington. *See* Dkt. 78, ¶¶ 86, 95 (as to Barone); *id.* ¶¶ 74, 75, 77, 95 (as to Washington). Accordingly, Plaintiffs may proceed with their deliberate indifference claims. Defendants introduce no authority to the contrary.

## II.     Plaintiffs' *Monell* Claim Against NYCCS Is Amply Pled

NYCCS Defendants contend that Plaintiffs' *Monell* claims should be dismissed because: (1) the Second Amended Complaint fails to allege any NYCCS policy, practice, or custom; and (2) the investigative reports, lawsuits, and public materials cited in the Second Amended Complaint do not relate to NYCCS' practices or Plaintiffs' injuries. Dkt. 92, at 4-5. Those arguments are without merit. We address each in turn.

**Specific Custom or Practice Allegations.** Plaintiffs amply allege a *Monell* custom or practice attributable to the NYCCS Defendants. NYCCS is the Wellpath subsidiary that operated inside OCCF during a horrific series of medical harms at the facility. *See* Dkt. 78 ¶¶ 14. Furthermore, Defendants implemented a longstanding and well-documented cost-cutting system it inherited from its corporate parent to "consolidate offsite appointments" and "attempt [] all clinically appropriate interventions before sending a detainee for offsite treatment." *Id.* ¶¶ 102-103. These corporate directives were implemented by NYCCS—a custom or practice that directly caused OCCF detainees to experience serious medical injuries such as those suffered by both Plaintiffs here. *See* Dkt. 78 ¶¶ 112. Plaintiffs specifically identify at least a *dozen* individuals who have experienced shocking medical neglect as a result of Defendants' cost-cutting agenda. *Id.* ¶¶ 51-52, 91, 114-121. These allegations are more than sufficiently detailed—and courts regularly authorize *Monell* claims in the medical context based on a cost-cutting theory. *See, e.g., Lehal v. Central Falls Detention Facility Corporation*, No. 13cv3923 (DF), 2016 WL 7377238, at *14 (S.D.N.Y. Nov. 21, 2016) ("CFDFC's motion to dismiss is denied as to Plaintiff's Monell claim that it had a policy, custom, or practice to deny its detainees medical treatment in order to save costs"); *see also* Dkt. 62, at 4 (collecting cases).

**Relevant Investigative and Other Reports.** Defendants claim that Plaintiffs rely on investigative reporting and related lawsuits that "lack a factual nexus to Plaintiffs' own circumstances." *See* Dkt. 92, at 5. That is false. Defendants' pervasive medical neglect is the very *Monell* custom that Plaintiffs allege has caused their specific injuries—as courts regularly hold. *See, e.g., Mollica v. County of Sacramento*, No. 2:19-cv-2017 KJM DB, 2021 WL 2417118, at *2 (E.D. Cal. June 14, 2021) ("Plaintiff's *Monell* claim, however, is not limited to only the treatment of foot/ankle injuries [… it is] based on an alleged failure to provide necessary medical treatment to inmates housed at jail facilities") (citing *Terry v. County of Milwaukee,* No. 17-CV-1112 JPS, 2018 WL 1411234, at *2 (E.D. Wis. Mar. 21, 2018) ("*Monell* claim embraces a broader theory that [Defendant] ignored or totally failed to provide health care to inmates, including, *as one example*, the specific instance of Plaintiff's March 2014 childbirth") (emphasis added)); *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012) ("Plaintiff alleges that the policies, practices, and customs at the GCJ with respect to medical treatment were the moving force behind the violation of Mr. Awalt's constitutional right to adequate medical care"). Plaintiffs specifically allege four recent investigations into deficient medical care at Orange County Jail by the New York State Commission on Corrections, the New York City Council, the New York Civil Liberties Union, and Catholic Charities—all of which directly investigate severe medical neglect by NYCCS Defendants. Dkt. 78 ¶¶ 136-140. The SAC also identifies numerous similar lawsuits and reports from OCCF documenting the same systemic failures the Plaintiffs experienced here. *Id.* at ¶¶ 101-08, 127-131. These materials *directly* relate to NYCCS/Wellpath operations at OCCF as the primary medical provider during those investigations. Courts have consistently held that such investigative reports and publicly reported information are proper allegations to support *Monell* claims. *See* Dkt. 62, at 4. Furthermore, other national reports cited by

Plaintiffs directly implicate Wellpath—which is NYCCS's corporate parent. Dkt. 78 ¶¶ 14-18, 112-117. Defendants cite no law to the contrary.[3]

Because the Second Amended Complaint alleges: (1) a detailed NYCCS-driven custom and practice of cost-cutting that predictably results in delayed and denied medical care; (2) that this uniform cost-cutting policy—rather than any particular diagnosis—provides the nexus tying together the injuries suffered by Plaintiffs and other detainees; and (3) that multiple investigative reports, lawsuits, and firsthand accounts corroborate NYCCS's deliberate indifference to these systemic failures—Defendants' requests to dismiss Plaintiffs' *Monell* claims should be denied.

### III. Plaintiffs' State Law Claims are Amply Pled in the Second Amended Complaint.

#### A. Plaintiffs' Negligence Claims Are Properly Pled Under a *Respondeat Superior* Theory.

Contrary to Defendants' assertions, Plaintiffs have not attempted to assert *respondeat superior* as a standalone cause of action. *See* Dkt. 92, 5. Instead, Plaintiffs have pled state law negligence and gross-negligence claims and allege that Defendants are liable for "personal injuries to Plaintiffs caused by the wrongful or negligent acts or omissions of Defendants' agents or employees, who were acting within the scope of their office or employment." *See* Dkt. 78, ¶¶ 12-18, 47, 159-166. New York law recognizes *respondeat superior* as a valid theory of liability for negligence actions against an employer. *See Judith M. v. Sisters Charity Hosp.,* 92 N.Y.2d 923, 933 (N.Y. 1999) ("The doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of their employment. Pursuant to this doctrine, an employer may be liable when the employee acts negligently […] so long as the tortious conduct is generally foreseeable and a natural incident of employment"); *Rivello v. Waldron,* 47 N.Y.2d 297, 203 (N.Y. 1979) (same).

#### B. Plaintiffs Have Properly Pled Medical Negligence and Medical Malpractice.

Defendants agree with Plaintiffs that New York law requires Plaintiffs to show: "(1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury." *Mendoza v. Maimonides Med. Ctr.,* 203 A.D.3d 715, 716 (N.Y. App. 2022). Plaintiffs specifically alleged just that. Defendants failed to respond to Plaintiff Cruz's severe lupus flare up for almost two months, failed to arrange a rheumatology referral, failed to follow outside specialist treatment plans, failed to allow for appropriate lab work and disclosure of results, and delayed administering immunosuppressants for weeks despite the known risk of permanent kidney damage. *See* Dkt. 78, ¶¶ 23-48. These failures fell well below the standard of care. *Id.* ¶¶ 34, 40 – 41 ("Wellpath Defendants' decision to take no action in light of Ms. Cruz' flare-up […] was an obvious failure to follow the medical standards for providing necessary care to Ms. Cruz"). Defendants also failed to examine Plaintiff Ordonez Vargas's complex facial fractures for nearly a week, failed to treat her persistent bleeding and airway obstruction, and failed to provide surgical intervention before her fractures healed improperly. *Id.* at ¶¶ 66-99. These actions also fell well below the standard of care. *Id.* ¶¶ 71, 75, 77, 78, 86 ("Defendant Barone knew or should have known to provide relevant medical care to alleviate the fracture confirmed by Defendant Zaccagnino, and any reasonable provider would have

---

[3] Defendants' passing reference to *Iacovangelo* is misplaced. Dkt. 92, at 5. Plaintiffs have not relied on isolated newspaper accounts or conclusory references to unrelated incidents. *Iacovangelo, v. Corr. Med. Care, Inc.*, 624 F. Appx. 10, 13-14 (2d Cir. 2015) ("other than the plaintiff, the amended complaint provides only one additional example of a similar incident"). Plaintiffs here allege a unified, top-down cost-cutting policy implemented by NYCCS, multiple detailed investigative reports, more than a dozen individual accounts of serious medical harm, and specific policies that restrict off-site and outpatient care. *See* Dkt. 78 ¶¶ 101-08, 112-21, 127-31, 191-93; Dkt. 62, at 4.

promptly provided the needed medical care"). Defendants ignore these factual allegations entirely, failing to make any argument as to the allegations' clear sufficiency.[4]

\*\*\*

We thank the Court for its consideration of this letter.

    Respectfully Submitted,

    /s/ Zal K. Shroff
    Zal K. Shroff

    Jayden Lopez\*
    Alison Klein\*

    \*Law Student Interns

    **MAIN STREET LEGAL SERVICES**
    Zal K. Shroff (#5560669)
    Main Street Legal Services Inc.
    2 Court Square West
    Long Island City, NY 11101
    Zal.Shroff@law.cuny.edu
    T: (718) 340-4200
    F: (718) 340-4478

---

[4] Defendants separately assert in passing that Plaintiffs did not follow the required Notice of Claim procedures under New York Law. Dkt. 92, at 4-5. While N.Y. Gen. Mun. Law § 50-d may require a municipality to indemnify an individual contractor providing medical care, N.Y. Gen. Mun. Law § 50-e makes clear that "service of the notice of claim upon an officer, appointee, or employee of a public corporation shall not be a condition precedent to the commencement of an action against such person." N.Y. Gen. Mun. Law 50-e(1)(b). No service of notice of claim was therefore required—either against NYCCS or any individual NYCCS personnel. *See Messina v. Mazzeo,* 854 F. Supp. 116, 145 (E.D.N.Y. 1994) (rejecting argument that "plaintiff did not file timely notices of claim with respect to any of the defendants individually named in this action, or against their respective employers").