**MAIN STREET LEGAL SERVICES**

December 11, 2025

**VIA ECF:**
Hon. Philip M. Halpern, U.S.D.J.
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

    Re: <u>*Ordonez Vargas v. Orange County*, No.: 7:25-cv-00064-PMH;
        Rule 12(b)(6) Pre-Motion Opposition Letter.</u>

Dear Judge Halpern:

    We write as Plaintiffs' representatives in response to Defendant Orange County's letter requesting a pre-motion conference in anticipation of moving to dismiss the Second Amended Complaint. *See* Dkt. 93. For the below reasons, Plaintiffs have amply pled the claims asserted in the Second Amended Complaint ("SAC") and the County's proposed motion to dismiss is unavailing.

    **I.  Plaintiffs Amply Allege Deliberate Indifference to Their Serious Medical Needs.**

    Orange County suggests that Plaintiffs fail to state a claim for deliberate indifference to their medical needs. *See* Dkt. 93 at 2. But Plaintiffs clearly pled: (1) a sufficiently serious harm and (2) that Orange County knew, or should have known, about those harms. *See Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017) (requiring "the challenged conditions [to be] sufficiently serious to constitute objective deprivations" and that "a reasonable person knew or should have known" about those harms). We address each Plaintiff in turn.

    **Plaintiff Ordonez Vargas**. Ms. Ordonez Vargas suffered multiple facial fractures, persistent bleeding, and repeated episodes of difficulty breathing. *See* SAC ¶¶ 58, 60, 63–64, 66–67, 74, 79, 81, 92, 96, 98 (fractures); ¶¶ 59–60, 62, 73, 79, 81–82 (persistent bleeding); ¶¶ 59–60, 73, 82, 88, 91, 98 (difficulty breathing). Courts have consistently held that bleeding facial fractures and breathing impairments present serious medical needs under the Fourteenth Amendment. *See Burns v. Cnty. of Rensselaer*, No. 02-CV-165, 2005 U.S. Dist. LEXIS 41743, at *34 (N.D.N.Y. Dec. 12, 2005) ("a profusely bloody broken nose" may be sufficiently serious); *Lasher v. City of Schenectady*, No. 02–CV–1395, 2004 WL 1732006, at *15–17 (N.D.N.Y. Aug. 3, 2004) ("Plaintiff's nose bleed does not preclude a conclusion that his condition was sufficiently serious"); *Farrow v. Dalman*, No. 97-3598, 1998 WL 879553, at *1 (7th Cir. Dec. 7, 1998) ("no treatment for the broken nose and […] breathing difficulties and substantial pain" was "sufficiently serious"). Despite repeatedly informing over *ten staff* members at Orange County Jail that she struggled to breathe, suffered severe nose and facial pain, and had been scheduled for surgery on the day she was detained, Ms. Ordonez Vargas received no meaningful medical care. *See* SAC ¶¶ 63–64, 67, 74, 79, 88 (complaints to medical staff about pain); ¶¶ 64, 74, 84, 87–91 (telling staff about scheduled surgery). Instead, she was placed in solitary confinement, where she again received no treatment while visibly bleeding and struggling to breathe. *Id.* ¶¶ 70, 78. Even after imaging confirmed multiple facial fractures, the only "care" Ms. Ordonez Vargas received was ibuprofen while in solitary confinement and after she was moved to general population. *Id.* ¶¶ 77, 95–96. Orange County also received direct confirmation from her treating physician that surgery was necessary yet took no action. *Id.* ¶¶ 64. These repeated complaints, coupled with express medical instructions, establish that Orange County knew or should have known of the severity of her condition, and its refusal to follow a doctor's treatment plan amounts to deliberate indifference. *See Tirado v. City of New York*, No. 19-CV-10377, 2021 U.S. Dist. LEXIS 14406, at *19 (S.D.N.Y. Jan. 25, 2021) ("refusal of [detainee's] request for medical assistance […] plausibly establishes that [Defendant] should have known of the obvious risk"); *Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005) (citing *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("prison officials are more than merely negligent if they deliberately defy the express instructions of a detainee's doctors")).

1

**Plaintiff Stefany Cruz.** Ms. Cruz has lupus and received test results while incarcerated at Orange County Jail that informed doctors that her kidneys were not functioning properly. SAC ¶¶ 26, 31. That is a serious medical condition under the Fourteenth Amendment. *See Revels v. Corr. Med. Care, Inc.*, No. 9:17-cv-0088, 2018 U.S. Dist. LEXIS 511118, at *11-12 (N.D.N.Y. Mar. 28, 2018) ("A number of district courts in this circuit have found kidney failure to constitute a sufficiently serious medical condition to satisfy the objective component of a deliberate indifference claim") (collecting cases). Plaintiff Cruz repeatedly informed Orange County medical staff that she was experiencing a clear lupus flare-up, including worsening skin rashes and escalating pain—yet Orange County allowed her condition to deteriorate for nearly two months without providing any meaningful treatment. SAC ¶¶ 32, 36-39. Jail medical staff possessed conclusive lab results showing abnormal kidney function that required urgent rheumatology evaluation, but they refused for weeks to schedule the specialist appointment Plaintiff needed. *Id*. ¶¶ 31-32, 39-40, 45-47. Even once outside care was arranged, Orange County disregarded the rheumatologist's written orders: Plaintiff was denied the critical immunosuppressant medication prescribed to her for forty-two days while her lupus symptoms worsened dramatically. *Id*. ¶¶ 43-45, 49-51. The neglect continued. Plaintiff's outpatient doctor repeatedly contacted the jail seeking follow-up appointments and requesting her lab results—requests Orange County ignored for ten weeks. *Id*. ¶¶ 42-43, 45-47. By the time Plaintiff was finally seen again, her condition had become so severe that the provider ordered her to be rushed to the emergency room. *Id*. ¶¶ 48-49. After that ER visit, Plaintiff again alerted Orange County medical staff that her condition had intensified, and staff told her she would be scheduled to see a nephrologist. Orange County officials never made that appointment. *Id*. ¶¶ 49-50. As a direct result of these prolonged delays, ignored medical directives, and withheld medication, Plaintiff developed lupus nephritis and sustained permanent kidney scarring. *Id*. ¶¶ 53. Orange County's refusal to provide essential medication for six weeks, its repeated failure to schedule obviously necessary specialist visits, and its disregard of explicit treatment instructions from multiple outside providers constitute the precise type of deliberate indifference the Fourteenth Amendment prohibits. *See Freudenberg v. Cnty. of Orange*, No. No. 23-CV-847 (KMK), 2024 U.S. Dist. LEXIS 175739, at *13 (S.D.N.Y. Sep. 25, 2024) ("despite [detainee's] worsening symptoms and dozens of requests for attention, Defendants did nothing to address any […] risk until it was too late").

## II. Plaintiffs Merely Seeing a Doctor Without Receiving *Any* Appropriate Care Is Itself a Fourteenth Amendment Violation.

Orange County's arguments that Plaintiff's deliberate indifference claims are a mere disagreement over the type of care required fail for largely the same reasons as before. *See* Dkt. 62, at 3. The law is well-settled that the provision of *some* treatment is not dispositive when the treatment provided is wholly inadequate for the condition it is intended to treat. *See, e.g., Ramsay-Nobles v. Keyser,* No. 16 Civ. 5778, 2019 U.S. Dist. LEXIS 147693, at *90 (S.D.N.Y. Aug. 21, 2019) ("when a [detainee] has received some medical treatment, deliberate indifference will be found when the medical attention rendered [was] so woefully inadequate as to amount to no treatment at all"); Dkt. 62, at 3.

The SAC pleads, in extensive detail, a pattern of prolonged delays (SAC ¶¶ 33–34, 48, 85, 89, 99), ignored specialist instructions (*id*. ¶¶ 42–43, 45–47, 90), worsening symptoms (*id*. ¶¶ 32, 34, 37, 39–40, 42, 45, 82), and diagnostic neglect (*id*. ¶¶ 43, 90, 94)—none of which can be dismissed as "some care." Far from establishing adequate treatment, the SAC alleges that Plaintiff Cruz's outpatient rheumatology appointment was delayed by weeks to months and her nephrology referral was never scheduled despite clear evidence of kidney dysfunction—in addition to being deprived of critical lupus medication for forty-two days (*id*. ¶¶ 49–51). Plaintiff Ordonez Vargas likewise presented with a confirmed fractured nose, persistent bleeding, difficulty breathing, and a physician's directive that surgery was required, yet Orange County provided nothing more than ibuprofen (*id*. ¶¶ 64, 66–67, 77, 95–96). Both Plaintiffs' conditions deteriorated as a direct result of these delays. Such allegations easily meet the Second Circuit's "seriousness" threshold, which recognizes that even non-life-threatening but painful medical conditions support deliberate indifference where treatment is delayed or denied. *See*, *e.g.*, *Lasher v. City of Schenectady*, No. 02–CV–1395, 2004 WL 1732006, at *5 (N.D.N.Y. Aug. 3, 2004) ("A few hours' delay in receiving medical care for emergency needs such as

broken bones and bleeding cuts may constitute deliberate indifference") (citing *Brown v. Hughes,* 894 F.2d 1533, 1538 (11th Cir. 1990) ("a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim")); *Aldridge,* 753 F.2d at 972 (two and a half hours was an actionable delay); *Freudenberg,* 2024 U.S. Dist. LEXIS 175739, at *18 ("harm from delay is almost a given on the facts of case. Defendants allegedly knew Mr. Freudenberg may have cancer; any delay, not to mention a delay of 10 months, risked harm from the cancer going undiagnosed and untreated").

### III. Plaintiffs Have Amply Pled Facts Supporting Municipal Liability Under *Monell*.

Plaintiffs clearly allege that Orange County—through its contracted medical providers—has engaged in a widespread practice of ignoring requests for serious medical care at Orange County Jail. SAC ¶¶ 187 ("Under color of law, Defendant Orange County and its contracted medical providers have established and maintained a de facto regime in which serious medical needs are routinely disregarded, emergency care is delayed or denied, and essential diagnostic testing, medication, and specialist referrals are withheld"). These *Monell* allegations have already been amply addressed before the Court. *See* Dkt. 62 at 3-5.

The County now attempts four new arguments against *Monell* liability: (1) that there is no allegation the County *itself* had a policy of medical neglect independent of its contractors; (2) that there is no allegation the County knew its contractors had a cost-cutting policy that harmed Plaintiffs; (3) that investigative reports cited in the SAC are irrelevant to Plaintiffs' harms; and (4) that prior lawsuits cannot inform a *Monell* custom or practice. *See* Dkt. 93 at 3-4. None of these arguments have merit.

#### A. The County Can Be Directly Liable for the Misconduct of Independent Contractors.

Contrary to Defendants' assertions, the County's liability does not depend on its own policy of cost-cutting. *See* Dkt. 93 at 3. Instead, the County can be liable purely because of deficient medical care on the part of its contract providers. *See, e.g.*, *McNeil v. Correctional Medical Care, Inc.,* No. 9:18-CV-0894 (LEK/DJS), 2019 WL 4415528, at *10 (N.D.N.Y. Sept. 16, 2019) ("Plaintiff connects CMC's alleged provision of constitutionally inadequate medical care and services to the County, which contracted with CMC to provide medical services at the Jail during the time period relevant here"); *Carter v. Broome Cnty.*, 394 F.Supp.3d 228, 242 (N.D.N.Y. 2019) ("Accordingly, the County itself "remains liable for any constitutional deprivations caused by the policies or customs of the [private medical contractor]") (citing *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985)); *Stewart as Next Friend of Stewart v. Turn Key Health Clinics, LLC,* No. CIV-23-1046-JD, 2024 WL 4723345, at *4 (W.D. Okla., Aug. 23, 2024) (*"*A county may be held liable for constitutional harm caused by a deficient medical delivery system, even when that system is being operated by a third-party contractor"); *Black v. Allegheny Cty.*, No. 13–CV–0179, 2014 WL 5493811, at *10 (W.D. Pa. Oct. 30, 2014) (denying summary judgment to municipality on *Monell* claim where issues of fact remained to be tried on private medical contractor's policy or practice); *see also Hollis v. Davis*, No. 13-CV-0590, 2014 WL 7184406, at *6 (N.D. Okla. Dec. 16, 2014) ("[t]he Supreme Court has made clear that the provision of medical care by an independent contractor does not prevent finding a jail official liable under § 1983") (citing *West v. Atkins,* 487 U.S. 42, 56 (1988)). The County presents no authority to the contrary, and Plaintiffs clearly assert that the County's liability stems from its contractors' pattern of medical neglect. SAC ¶¶ 22, 152, 171.

#### B. Orange County Was on Notice of Contractor Cost-Cutting—But That Notice is Irrelevant to the County's Liability for Obvious Medical Neglect of Which it Was Aware.

The County does not dispute that the SAC clearly alleges the County's awareness of obviously deficient medical care on the part of its contract providers. *See* County Pre-Motion Ltr. at 3 ("the SAC alleges that the County had notice of the medical contractors' alleged failures in providing adequate care").[1] Nor can the County argue otherwise. *See* SAC ¶¶ 46, 133-135, 190 ("The County received numerous grievances, public complaints, inspection reports, and prior lawsuits documenting these

---

[1] The County's first letter exchanged pursuant to this Court's Individual Rules made this point clearly. *See id.*

deficiencies, yet took no steps to investigate, train, supervise, or discipline those responsible, nor to ensure adequate oversight of contracted medical providers"). That is all that is necessary to establish the County's liability. *See, e.g., Carter v. Broome Cnty.*, 394 F.Supp.3d 228, 242 (N.D.N.Y., 2019) ("plaintiff's evidence also establishes that Sheriff Harder and/or Administrator Smolinsky, in their roles as policymakers for the Jail, possessed abundant knowledge about CMC's egregious misconduct"); *Stewart as Next Friend of Stewart v. Turn Key Health Clinics, LLC,* No. CIV-23-1046-JD, 2024 WL 4723345, at *4 (W.D. Okla., August 23, 2024) (county is liable for third party contractor if "a final policymaker was aware of the constitutional deficiencies and failed to take appropriate action"). Regardless, the County is simply incorrect that the SAC does not allege its awareness of its private contractors' cost-cutting policies. *See* SAC ¶¶ 110 ("The sheer number of reports of Wellpath's pattern or practice of cost-cutting has raised significant concerns for legislators. In a December 18, 2023, letter signed by twelve United States Senators, it is stated that Wellpath 'routinely fails to provide time-sensitive care'"). But the County's awareness of the private contractors' cost-cutting motivations has nothing to do with the central requirement for liability, which is that the County was aware of the repeated instances of medical neglect by those providers and yet failed to take any meaningful steps to address those violations. Defendants nevertheless argue that Plaintiffs were required to plead the County's knowledge of its contractors' cost-cutting practices. Dkt. 93 at 3, 5. That is not true. The Fourteenth Amendment requires only that county officials knew, or should have known, that healthcare providers posed an excessive risk of harm—not that they were informed of a particular cost-saving motive. *See Van Hoven v. City of New York*, No. 16cv2080 (GBD) (DF), 2018 WL 5914858, at *9 (S.D.N.Y. Aug. 21, 2018) ("a plaintiff need only plead that the municipality should have known of the constitutional deprivation, and then intentionally or recklessly failed to act with reasonable care to mitigate the risk caused by those conditions"), *citing Zhang v. City of New York*, No. 17cv5415 (JFK), 2018 WL 3187343, at *9 (S.D.N.Y. June 28, 2018) ("Municipal Defendants ignored these warnings and recommendations or made inadequate efforts to provide inmates with acceptable treatment"); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm"). Here, Orange County chose to ignore those obvious signs of serious medical neglect at Orange County Correctional Facility. SAC ¶¶ 46, 133-135, 190.

### C. Repeated Investigative and News Reports Are Directly Relevant to Plaintiffs' Injuries and Give Rise to a Custom or Practice at the Pleadings Stage.

Defendants claim that Plaintiffs rely on a series of investigative reports, news reports, and individual medical complaints that are somehow "unrelated to Plaintiffs' claims." Dkt. 93, at 3. Not so. These recent investigative reports into deficient medical care at Orange County Jail are exactly the kinds of allegations that support *Monell* liability at the pleadings stage. *See* Dkt. 63, at 4 (collecting cases); *see also* Dkt. 78 ¶¶ 136-140. Moreover, other claims of medical neglect and malpractice at Orange County Jail are directly relevant to the harms Plaintiffs experienced due to Defendants' custom or practice of deficient care—regardless of the specific injuries those other individuals suffered. *See, e.g.*, *Mollica v. County of Sacramento*, No. 2:19-cv-2017 KJM DB, 2021 WL 2417118, at *2 (E.D. Cal. June 14, 2021) ("Plaintiff's *Monell* claim, however, is not limited to only the treatment of foot/ankle injuries [… it is] based on an alleged failure to provide necessary medical treatment to inmates housed at jail facilities") (citing *Terry v. County of Milwaukee,* No. 17-CV-1112 JPS, 2018 WL 1411234, at *2 (E.D. Wis. Mar. 21, 2018) ("*Monell* claim embraces a broader theory that [Defendant] ignored or totally failed to provide health care to inmates, including, *as one example*, the specific instance of Plaintiff's March 2014 childbirth") (emphasis added)).[2] Contrary to Defendants' assertions, Plaintiffs need not allege more to show that the County's custom of indifference was the "moving force" behind their injuries. *Compare* Dk. 93, at 4, *with Shultz v. Allegheny Cnty.*, 835 F. Supp. 2d 14, 23 (W.D. Pa. 2011) ("These alleged and inferred circumstances are sufficient to posit that the asserted cost-cutting/saving policy or practice both existed and was a moving force in causing

---

[2] Defendants are also incorrect that investigative reports post-date Plaintiff Ordonez Vargas's injuries—meaning Orange County *did* have advance notice of severe, systemic deficiencies in detainee medical care and nevertheless chose to leave those conditions unaddressed. *See, e.g.*, SAC ¶¶ 137-139; *see also* ¶¶ 140-141.

4

Gillespie's death"); *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012) ("Plaintiff alleges that the policies, practices, and customs at the GCJ with respect to medical treatment were the moving force behind the violation of [his] constitutional right to adequate medical care"); SAC ¶¶ 191-192 ("The County's policymakers and correctional administrators were repeatedly placed on notice regarding the medical contractors' failure to provide constitutionally adequate care […] As a direct and proximate result […] Plaintiffs were denied […] adequate medical treatment").

> D. Other Lawsuits Are Relevant to the *Monell* Inquiry—Especially When Supported by Multiple Other Allegations of Custom or Practice from Varied Sources.

Defendants challenge Plaintiffs' citations to prior lawsuits against them that bolster the municipal liability claims in the Second Amended Complaint. *See* SAC ¶¶ 142-148; *see also id.* ¶¶ 107 ("A review of lawsuits filed over the last five years found the company has been sued for more than 70 deaths"). But courts in the Second Circuit *do* consider allegations from other lawsuits sufficient to allege a custom or practice under *Monell*. *See, e.g., Osterhoudt v. City of New York*, No. 10 CV 3173(RJD)(RML), 2012 WL 4481927, at *2 (E.D.N.Y. Sept. 27, 2012) ("While plaintiff's citations to pending lawsuits and settlement agreements will not suffice to overcome summary judgment ... they do permit a plausible inference of deliberate indifference") (internal quotations omitted). Regardless, particularly where there are ample *additional* allegations of a pattern of misconduct from various investigative reports and other public sources, the Southern District of New York has observed that the existence of other lawsuits bolsters *Monell* liability. *See, e.g., White v. City of New York*, No. 13-CV-7421 (KPF), 2015 WL 4601121, at *6–9 (S.D.N.Y. July 31, 2015) (refusing to dismiss *Monell* claim because plaintiff sufficiently pled policy or custom by citing to DOJ Findings Letter and identifying past lawsuits with similar allegations); *Shepherd v. Powers*, No. 11 Civ. 6860(LTS), 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012) ("the steady stream of suits against the County alleging excessive use of force in the [Westchester County Jail]" added further credibility to the claims alleged in the complaint); *McCants v. City of Newburgh*, No. 14 Civ. 556(VB), 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (finding that the plaintiff's reference to other lawsuits demonstrated that the municipality "was on notice to the possible use of excessive force by its police officers on seventeen different occasions"). Here, there are ample additional allegations of a pattern of misconduct beyond the mere invocation of past lawsuits. *See, e.g.*, SAC ¶¶ 133-141 (listing investigations, news reports, legislator statements, and individual accounts of medical mistreatment).

> **IV. Plaintiffs' State Law Claims are Properly Asserted Against Orange County.**

Orange County's arguments attacking Plaintiffs' state law claims fail for largely the same reasons as before. *See* Dkt 62, at 5. The County makes three arguments: (1) that claims for negligence should be dismissed as duplicative; (2) that claims for medical malpractice are untimely because they should be against the Orange County Sheriff; and (3) that medical malpractice claims cannot be pursued under a *respondeat superior* theory. *See* Dkt. 93 at 4-5. These arguments are incorrect.

First, Plaintiffs' SAC does not include any claims for negligence or gross negligence against the County, thus there is no duplication across state law claims. *See* SAC ¶¶ 159, 164. Second, the SAC makes clear that Orange County was an active participant in selecting, contracting with, and overseeing both NY Correct Care and YesCare. SAC ¶ 12; *see also id.* ¶¶ 13–18; ¶ 152 (sheriff "works with the county's executive branch to handle health care contracts at the jail"). As such, Orange County itself— and not merely the Sheriff—are liable for state torts. *See, e.g., Meriwether v. Sherwood*, 514 F.Supp. 433, 434 (S.D.N.Y. 1981) (observing that the sheriff and Orange County can both be held liable for negligence). Accordingly, Plaintiffs' state law claims against Orange County are appropriate and timely.[3] Finally, the County can be liable under *respondeat superior* for the misconduct of independent contractors if the County exerted the requisite oversight over the contractor. But that is a matter to be determined at trial. *See Gaudreau v. Cucuzzo*, 238 A.D.3d 998, 999 (N.Y. App. 2025) ("whether an employer-employee relationship exists turns on whether the alleged employer exercises control").

---

[3] Ms. Ordonez complied with all conditions precedent to filing this suit and timely filed against Orange County within one year and 90 days (CPLR §217(a)). SAC ¶¶ 4-7. As the County stated, there is a pending action to deem Ms. Cruz's Notice of Claim timely and we will request the Court wait to decide this issue until that petition is decided. *Id.* ¶ 8.

Respectfully submitted,

/s/ Zal K. Shroff
Zal K. Shroff

Jonathan Alleyne*
Jennifer Cardoza*

**MAIN STREET LEGAL SERVICES**
Zal K. Shroff (#5560669)
Main Street Legal Services Inc.
2 Court Square West
Long Island City, NY 11101
Zal.Shroff@law.cuny.edu
T: (718) 340-4200
F: (718) 340-4478

*Attorney for Plaintiffs*

*Law Student Interns