

December 12, 2025

Hon. Philip M. Hapern
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

By Electronic Mail

**Re:** Ordonez Vargas v. Orange County, No.: 7:25-cv-00064-PMH); Pre-Motion Opposition

Dear Judge Halpern:

Plaintiffs write to respond to YesCare's letter requesting a pre-motion conference in anticipation of moving to dismiss the First Amended Complaint ("SAC") in this action. *See* Dkt. 54. For the below reasons, Plaintiffs have amply pled the claims asserted in SAC.[1]

### I. Plaintiff Cruz Amply Alleges Deliberate Indifference to Her Serious Medical Needs.

Plaintiff Cruz meets the standard for Deliberate Indifference under the 14th Amendment, as she clearly pled: (1) a sufficiently serious harm and (2) that YesCare knew, or should have known, about those harms. *See Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017) (requiring "the challenged conditions [to be] sufficiently serious to constitute objective deprivations" and that "a reasonable person knew or should have known" about those harms). Defendant does not dispute this standard. *See* Dkt. 98, at 3.

Ms. Cruz has lupus and received test results while incarcerated at Orange County Jail that informed doctors that her kidneys were not functioning properly. SAC ¶¶ 26, 31. That is a serious medical condition under the 14th Amendment. *See Revels v. Corr. Med. Care, Inc.*, 2018 U.S. Dist. LEXIS 511118, at *11-12 (N.D.N.Y. Mar. 28, 2018) ("A number of district courts in this circuit have found kidney failure to constitute a sufficiently serious medical condition to satisfy the objective component of a deliberate indifference claim") (collecting cases). Ms. Cruz saw an outpatient rheumatologist, and YesCare disregarded the rheumatologist's written orders: Plaintiff was denied the critical immunosuppressant medication prescribed to her while her lupus symptoms worsened dramatically. *Id.* ¶¶ 43-45, 49-51. Plaintiff's outpatient doctor repeatedly contacted the jail seeking follow-up appointments and requesting her lab results—requests YesCare ignored. *Id.* ¶¶ 42-43, 45-47. By the time Plaintiff was finally seen again, her condition had become so severe that the provider ordered her to be rushed to the emergency room. *Id.* ¶¶ 48-49. After that ER visit, Plaintiff again alerted YesCare medical staff that her condition had intensified, and staff told her she would be scheduled to see a nephrologist. YesCare never made that appointment. *Id.* ¶¶ 49-50. As a direct result of these prolonged delays, ignored medical directives, and withheld medication, Plaintiff developed lupus nephritis and sustained permanent kidney scarring. *Id.* ¶¶ 53. YesCare's refusal to

[1] As YesCare only began to provide services at OCCF on January 1, 2025. We do not allege that YesCare is liable for any acts or omissions before January 1, 2025.Therefore, only Plaintiff Cruz (and not Plaintiff Ordonez) alleges claims against YesCare.



provide essential medication, its repeated failure to schedule obviously necessary specialist visits, and its disregard of explicit treatment instructions from multiple outside providers constitute the precise type of deliberate indifference the Fourteenth Amendment prohibits. *See Freudenberg v. Cnty. of Orange*, 2024 U.S. Dist. LEXIS 175739, at *13 (S.D.N.Y. Sep. 25, 2024) ("despite [the detainee's] worsening symptoms and dozens of requests for attention, Defendants did nothing to address any […] risk until it was too late"). Defendants failed to introduce a single case authority to the contrary. *See* Dkt. 98, at 3.

### II. Plaintiff Merely Seeing a Doctor Without Receiving *Any* Appropriate Care Is Itself a Fourteenth Amendment Violation.

YesCare's arguments that Plaintiff's deliberate indifference claims are a mere disagreement over the type of care required fail for largely the same reasons as before. *See* Dkt. 62, at 3 The law is well-settled that the provision of *some* treatment is not dispositive when the treatment provided is wholly inadequate for the condition it is intended to treat. *See, e.g., Ramsay-Nobles v. Keyser,* No. 16 Civ. 5778, 2019 U.S. Dist. LEXIS 147693, at *90 (S.D.N.Y. Aug. 21, 2019) ("when a [detainee] has received some medical treatment, deliberate indifference will be found when the medical attention rendered [was] so woefully inadequate as to amount to no treatment at all") (collecting cases); *see also* Dkt. 62, at 3.

The SAC pleads, in extensive detail, a pattern of prolonged delays (SAC ¶¶ 33–34, 48), ignored specialist instructions (*id.* ¶¶ 42–43, 45–47), worsening symptoms (*id.* ¶¶ 32, 34, 37, 39–40, 42, 45), and diagnostic neglect (*id.* ¶¶ 43)—none of which can be dismissed as "some care." Far from establishing adequate treatment, the SAC alleges that Plaintiff Cruz's outpatient rheumatology appointment was delayed by weeks to months and her nephrology referral was never scheduled despite clear evidence of kidney dysfunction—in addition to being deprived of critical lupus medication for forty-two days (*id.* ¶¶ 49–51). Plaintiff's condition deteriorated as a direct result of these delays. Such allegations easily meet the Second Circuit's "seriousness" threshold, which recognizes that even non-life-threatening but painful medical conditions support deliberate indifference where treatment is delayed or denied. *See*, *e.g.*, *Lasher v. City of Schenectady*, 2004 WL 1732006, at *5 (N.D.N.Y. Aug. 3, 2004) ("A few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference") (citing *Brown v. Hughes,* 894 F.2d 1533, 1538 (11th Cir. 1990) ("a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim")); *Aldridge,* 753 F.2d at 972 (two and a half hours was an actionable delay); *Freudenberg*, 2024 U.S. Dist. LEXIS 175739, at *18.

### III. Plaintiff Cruz Has Amply Pled Facts Supporting Municipal Liability Under *Monell*.

Plaintiff clearly alleges that YesCare has engaged in a widespread practice of ignoring requests for serious medical care at Orange County Jail. SAC ¶¶ 186, 188-89. The SAC details YesCare's long track record of cost-cutting that has led to devastating medical outcomes for people in custody.[2] SAC ¶¶ 118-131. Specifically, the SAC pleads:

---

[2] As explained in the SAC, YesCare was formerly known as Corizon Health. Despite the legal maneuvers in which Corizon and YesCare engaged to evade liability, Corizon's history of providing inadequate medical care and the attendant allegations against it are imputed to YesCare. SAC ¶ 121, n. 42. *See Jackson v. Corizon Health*, No. 19-13382, 2025 U.S. Dist. LEXIS 29622, *14-16 (ED Mich Feb. 19, 2025) ("Years of mounting costs, including litigation expenses relating to claims asserted by incarcerated individuals, threatened Corizon Health's ability to continue as a going concern.



- In 2013, the American Civil Liberties Union observed that Corizon (now YesCare) was sued 660 times in the preceding five years for malpractice. One nurse, Diane Jackson, stated that Corizon saves "money by skipping the ambulance and taking prisoners directly to the morgue." SAC ¶ 126.
- As of late 2021, Corizon (now YesCare) was sued over 1,000 times by plaintiffs alleging substandard care. By one estimate, Corizon was named as a defendant in wrongful death and sexual abuse lawsuits more than 1,300 times. SAC ¶ 127.
- A 2023 investigative report published by The Marshall Project detailed Corizon's history of providing substandard medical care to incarcerated patients throughout the United States, leading to serious injuries and even death. As one example, the report included a case in which multiple Corizon nurses at a jail in Kent County, Michigan, were found to be deliberately indifferent to a 40-year-old inmate's pain and suffering, thus awarding the plaintiff and his family more than $6 million. SAC ¶¶ 128-129.
- A 2023 *amicus* brief submitted on behalf of nonprofit legal advocacy organizations to the U.S. Bankruptcy Court for the Southern Division of Texas, in support of *pro se* litigants' requests for notice and opportunity to participate in Chapter 11 proceedings, detailed Corizon's history of providing inadequate medical care (SAC ¶ 130):

  > For over a decade, Corizon maximized profits by systematically providing substandard care—and sometimes no care at all—subjecting incarcerated people to a substantial risk of serious harm and death. Indeed, a federal district court found that the State of Arizona's prison health care system, which Corizon was responsible for administering between 2013 and 2019, "is plainly grossly inadequate." *Jensen v. Shinn*, 609 F. Supp. 3d 789, 796 (D. Ariz. 2022). As the Court detailed in its 200-page opinion, multiple incarcerated people died or were seriously harmed as a direct result of Corizon's failure to provide timely and adequate health care. See *id.* at 815- 16, 818-22, 827-30, 903 n.70. Many more suffered prolonged and preventable pain and suffering. *Id.*

- The court in *Jensen v. Shinn* further observed that the Corizon defendants[3] were "aware of their failures for years and [] refused to take necessary actions to remedy the failures. Defendants' years of inaction, despite Court intervention and imposition of monetary sanctions, establish Defendants are acting with deliberate indifference to the substantial risk of serious harm posed by the lack of adequate medical and mental health care affecting all prisoners." 609 F. Supp. 3d 789, 796 (D. Ariz. June 30, 2022). SAC ¶ 131.

These allegations are more than sufficiently detailed, and courts regularly authorize *Monell* claims in the medical context based on a cost-cutting theory. *See, e.g., Lehal v. Central Falls Detention Facility Corp.*, 2016 WL 7377238, at *14 (S.D.N.Y. Nov. 21, 2016) ("CFDFC's motion to dismiss is denied

. . . Faced with these circumstances, Corizon Health determined that the fairest and value maximizing path forward would be a divisional merger[.]. Therefore, the Court finds that CHS TX is a 'mere continuation" of Corizon." *Id.* at *16; "The Court also notes that CHS TX refers to itself as 'CHS TX, Inc., d/b/a YesCare' in its bankruptcy proceedings in the Southern District of Texas." *Id.* at *20-21.).

[3] Although YesCare was not a defendant in *Jensen v. Shinn*, Corizon's history of inadequate medical services as detailed in that case should be imputed to YesCare for the reasons discussed in n.1.



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



as to Plaintiff's Monell claim that it had a policy, custom, or practice to deny its detainees medical treatment in order to save costs"); *see also* Dkt. 62, at 4 (collecting cases).

Defendants purport that a *Monell* claim must still identify the specific individual defendants personally responsible for the harm at issue. Dkt. 98, at 3. But that is not the law. *See, e.g.*, *Anderson v. Jones*, 440 F.Supp.3d 819, 835 (S.D. Ohio 2020)("this Court concludes that a lawsuit need not include a valid claim against an individual defendant to make out a Section 1983 violation against a political subdivision. After all, the Supreme Court made it clear in *Monell* that the political subdivision's liability is not derivative of an individual actor's liability"); *Alba v. MCCC*, No. 13-00231 HG/KSC, 2013 WL 2637788, at *3 (D. Haw. June 12, 2013) ("Plaintiff need not identify specific defendants at the outset of his case"). Regardless, the SAC *does* identify the individual YesCare employees who were deliberately indifferent to her serious medical needs. YesCare cites SAC ¶ 18, which names the individual YesCare employees responsible for the constitutional violation here ("Individual Defendants Joseph Patrick Harkins; Teneshia Washington, RN; Jillian M Barone, RN; Mandi Lee Zaccagnino, NP; and Dominick Piacente were employees […] Upon information and belief, all of the Individual Defendants still working at OCCF after January 1, 2025, were hired and became employees of YesCare."). However YesCare fails to mention that paragraphs 44-55 of the SAC then detail the acts and omissions of the YesCare employees named in paragraph 18 of the SAC. Paragraph 180 of the SAC further alleges involvement of YesCare employees ("Beginning on October 10, 2024—the day of Ms. Cruz's initial medical screen—medical personnel at OCCF knew she has lupus and needs to take Warfarin to manage such disease. Defendants, including Defendant Piacente, did not provide Ms. Cruz with necessary care or medications. They also failed to properly refer Ms. Cruz to a specialist during a critical lupus flare up and allowed her urgent condition to deteriorate further by failing to provide appropriate care or outside treatment when it was clearly called for.").

## IV. Plaintiffs' State Law Claims are Properly Pled.

Contrary to Defendant's assertions, Plaintiff has not attempted to assert respondeat superior for violations of the U.S. Constitution through Section 1983. Instead, Plaintiff has pled state law negligence, gross negligence and medical malpractice claims and allege that YesCare is liable for "personal injuries to Plaintiffs caused by the wrongful or negligent acts or omissions of Defendants' agents or employees, who were acting within the scope of their office or employment." *See* SAC ¶¶ 17-18, 44-55, 159-184. New York law recognizes respondeat superior as a valid theory of liability for negligence actions against an employer. *See Judith M. v. Sisters Charity Hosp.*, 93 NY.2d 932, 933 (N.Y. 1999) ("The doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of their employment. Pursuant to this doctrine, an employer may be liable when the employee acts negligently [] so long as the tortious conduct is generally foreseeable and a natural incident of the employment."); *Rivello v. Waldron*, 47 NY.2d 297, 203 (N.Y. 1979) (same).

Further, New York law requires notice to municipalities only—not corporations. While N.Y. Gen. Mun. Law § 50-d may require a municipality to indemnify an individual contractor providing medical care, N.Y. Gen. Mun. Law §50-e makes clear that "[s]ervice of the notice of claim upon an officer, appointee or employee of a public corporation shall not be a condition precedent to the



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



commencement of an action against such person." N.Y. Gen. Mun. Law §50-e(1)(b). No service of a notice of claim was therefore required for YesCare or any individual YesCare personnel. *See Messina v. Mazzeo*, 854 F. Supp. 116, 145 (E.D.N.Y. 1994) (relying on N.Y. Gen. Mun. Law § 50-e(1)(b) to reject argument that "plaintiff did not file timely notices of claim with respect to any of the defendants individually named in this action, or against their respective employers") (cleaned up).

Plaintiff has properly pled medical negligence and medical malpractice. New York law requires Plaintiffs to show: "(1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury." *Mendoza v. Maimonides Med. Ctr.*, 203 A.D.3d 715, 716 (N.Y. App. 2022). As outlined above in relation to the Deliberate Indifference claims, Plaintiff Cruz has alleged just that: YesCare failed to respond to Plaintiff Cruz's severe lupus flareup, failed to arrange the rheumatology referral, failed to follow outside specialist treatment plans, failed to administer immunosuppressants, and failed to schedule a necessary kidney biopsy despite the known risk of permanent kidney damage. *SAC* ¶¶ 41, 46-55, 180-84. These failures fell well below the standard of care.

These failures also rise to the level of gross negligence. As an initial matter, whether negligence rises to level of gross negligence is a matter for a jury. *Lubell v. Samson Moving & Storage, Inc.*, 307 A.D.2d 215, 216 (1st Dept. 2003) (citing *Food Pageant v Con Edison Co.*, 54 N.Y.2d 167, 172-173, 429 N.E.2d 738, 445 N.Y.S.2d 60 [1981] ("Ordinarily the question of gross negligence is a matter to be determined by the trier of fact.)); *see also Rand & Paseka Mfg. Co. v. Homes Protection, Inc.*, 130 A.D.2d 429, 430- 31 (1st Dept. 1987). Moreover, YesCare's reliance on *Lubell v. Samson Moving & Storage, Inc.* and *Colnaghi, U.S.A., Ltd. V. Jewelers Protection Services*—where the court found ordinary negligence in the case of items damaged by water at a storage facility (*Lubell*) and a jewelry store that only had one alarm system (*Colnaghi*)—for its proposition that Plaintiff fails to state a claim of gross negligence is inapt. As identified in Section I above, the SAC pleads acts and omissions upon which a trier of fact could determine that YesCare employees engaged in "intentional wrongdoing" or evinced "a reckless indifference to the rights of others." YesCare's assertion that "the SAC pleads no such conduct" is patently false. Dkt. 98 at 4.

Finally, as explained above in relation to the deliberate indifference claim, the SAC *does* identify the individual YesCare employees who engaged in medical malpractice and negligence. *See SAC* ¶ 18 ("Individual Defendants Joseph Patrick Harkins; Teneshia Washington, RN; Jillian M Barone, RN; Mandi Lee Zaccagnino, NP; and Dominick Piacente were employees […] Upon information and belief, all of the Individual Defendants still working at OCCF after January 1, 2025, were hired and became employees of YesCare."); ¶¶ 44-55, 180-84 (detailing the acts and omissions of the YesCare employees named in ¶ 18). For example, ¶ 180 states: "Beginning on October 10, 2024—the day of Ms. Cruz's initial medical screen—medical personnel at OCCF knew she has lupus and needs to take Warfarin to manage such disease. Defendants, including Piacente, did not provide Ms. Cruz with necessary care or medications. They also failed to refer Ms. Cruz to a specialist during a critical lupus flare up and allowed her urgent condition to deteriorate further by failing to provide appropriate care or outside treatment when it was clearly called for." Additionally, under the doctrine of *respondeat superior*, YesCare is responsible for the acts and omissions of its employees acting within the scope of their employment, even if those employees are not identified. *See e.g. Seiden v. Sonstein*, 127 A.D. 3d 1158 (N.Y. App Div. 2 Dept. 2015).



For these reasons, the complaint satisfies all pleading requirements and should not be dismissed.

With regards,

/s/

Elena L. Cohen
Cohen&Green P.L.L.C.
*Attorneys for Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385