UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**STEFANY CRUZ and MARISOL ORDONEZ VARGAS,**

*Plaintiff,*

*v.*

**ORANGE COUNTY (New York); WELLPATH, LLC (Formerly Known As CORRECT CARE SOLUTIONS MEDICAL SERVICES PC and/or NEW YORK CORRECT CARE SOLUTIONS MEDICAL SERVICES, PC); MATTHEW J. DUNDON, Trustee of Wellpath Holdings, Inc. Liquidating Trust; WELLPATH NY LLC; YESCARE CORP., JOSEPH PATRICK HARKINS; TENESHIA WASHINGTON, RN; JILLIAN M BARONE, RN; MANDI LEE ZACCAGNINO, NP; DOMINICK PIACENTE; AND DOE DEFENDANTS 1-4,**

*Defendants.*

Civil No.:
7:25-cv-00064-PMH

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(B)(6)**

50146620.1

**BARCLAY DAMON LLP**
*Attorneys for Defendants*
*New York Correct Care Solutions Medical*
*Services, P.C., Joseph Patrick Harkins,*
*Teneshia Washington, RN, Jillian M.*
*Barone, RN, Mandi Lee Zaccagnino, N.P.*
*and Dr. Dominick Piacente*
Office and Post Office Address
100 Chestnut Street, Suite 2000
Rochester, New York 14604
Telephone (585) 295-4426
Email: psanders@barclaydamon.com

**PAUL A. SANDERS, ESQ.**
 *of Counsel*

**ORANGE COUNTY DEPARTMENT OF LAW**
Richard B. Golden
*Attorneys for Defendant Orange County*
255-275 Main Street
Goshen, New York 10924
ddeleo@orangecountygov.com

**DANTE D. DELEO, ESQ.**
 *of Counsel*

**KAUFMAN BORGEEST & RYAN LLP**
*Attorneys for Defendant YesCare*
200 Summit Lake Drive
Valhalla, New York 10595
lfleischmann@kbrlaw.com

**LISA FLEISCHMANN, ESQ.**
 *of Counsel*

50146620.1

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Akinlawon v. Polonco*,
  No. 21-CV-2621, 2025 WL 887621 (S.D.N.Y. March 21, 2025) ........................................................ 10

*Alexander v. Westbury Union Free Sch. Dist.*,
  829 F. Supp. 2d 89 (E.D.N.Y. 2011) ............................................................................................... 32

*Amnesty America v. Town of West Hartford*,
  361 F.3d 113 (2d Cir. 2004) ........................................................................................................... 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 8, 19

*Askins v. Doe No. 1*,
  727 F.3d 248 (2d Cir. 2013) ........................................................................................................... 23

*Ayers v. Mohan*,
  154 A.D.3d 411 (2d Dep't 2017) ..................................................................................................... 35

*Baskerville v. Bolt*,
  224 F. Supp. 2d 723 (S.D.N.Y. 2002) (Second Circuit held that the plaintiff failed to
  state a claim of deliberate indifference due to the failure to refill high blood pressure
  medication for several days) ........................................................................................................... 12

*Batista v. Rodriguez*,
  702 F.2d 393 (2d Cir. 1983) ........................................................................................................... 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................................... 7

*Bellotto v. County of Orange*,
  248 Fed. Appx. 232 (2d Cir. 2007) ................................................................................. 8, 15, 21, 34

*Bess v. City of New York*,
  No. 11 Civ. 7604, 2013 WL 1164919 (S.D.N.Y. Mar. 19, 2013) .................................................... 36

*Board of County Com'rs of Bryan County, Okl. v. Brown*,
  520 U.S. 397 ................................................................................................................................... 31

*Boykin v. Westchester County Jail*,
  No. 22-CV-10513, 2024 WL 4252040 (S.D.N.Y. Sept. 20, 2024) ............................................. 10, 14

*Calderon v. City of New York*,
  128 F. Supp.3d 593 (S.D.N.Y. 2015) ......................................................................................... 30, 31

*Charles v. Orange County*,
  925 F.3d 73 (2d Cir. 2019) .......................................................................................... 9

*City of Canton v. Harris*,
  489 U.S. 378 (1989) ................................................................................................... 23

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*,
  81 N.Y.2d 821 (1993)................................................................................................. 32

*Darnell v. Pineiro*,
  849 F.3d 17 (2d Cir. 2017) ....................................................................................... 8, 9

*Dumal v. Westchester County*,
  No. 19-CV-2161, 2021 WL 738365 (S.D.N.Y. Feb. 25, 2021) ......................................... 35

*Estelle v. Gamble*,
  429 U.S. 97 (1976) ................................................................................... 12, 13, 19, 21

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ..................................................................................................... 9

*Feliciano v. Anderson*,
  No. 15-CV-4106, 2017 WL 1189747 (S.D.N.Y. Mar. 30, 2017)...................................... 9

*Flannery v. County of Niagara*,
  763 F.Supp.3d 364 (W.D.N.Y. 2025)....................................................................... 29, 34

*Francis v. City of New York*,
  No. 24-CV-2530, 2025 WL 2977967 (S.D.N.Y. Oct. 10, 2025) (adopted 2025 WL
  3502317 (Dec. 5, 2025))............................................................................................. 10

*Freudenberg v. County of Orange*,
  No. 23-CV-847, 2024 WL 4307176 (S.D.N.Y. Sept. 25, 2024) ........................... 23, 24, 25

*Gaddy v. Sullivan County Jail Administrator and Medical Dept.*,
  No. 24-CV-4243, 2025 WL 2222659 (S.D.N.Y. Aug. 4, 2025) .................................. 10, 13

*Grullon v. City of New Haven*,
  720 F.3d 133 (2d Cir. 2013) ........................................................................................ 10

*Iacovangelo v. Correctional Medical Care, Inc.*,
  624 Fed.Appx. 10 (2d Cir. 2015) .................................................................................. 23

*Isaac v. City of New York*,
  No. 17-CV-1021, 2018 WL 1322196 (S.D.N.Y. March 13, 2018).................................... 24

*Johnson v. Rodriguez*,
  2024 U.S. Dist. LEXIS 29386 (W.D.N.Y. Feb. 20, 2024) ............................................... 20

*Jones v. Town of East Haven*,
  691 F.3d 72 (2d Cir. 2012) .......................................................................................... 15

ii

*Joyner v. Greiner*,
  195 F. Supp. 2d 500 (S.D.N.Y. 2002) .......................................................................................... 9, 12

*Kucharczyk v. Westchester County*,
  95 F. Supp.3d 529 (S.D.N.Y. 2015) .................................................................................................. 24

*Lasher v. City of Schenectady*,
  No. 02-CV-1395, 2004 U.S. Dist. LEXIS 14871 (N.D.N.Y. Aug. 3, 2004) ...................................... 22

*Leath v. County of Orange*,
  18-CV-7318 (NSR), 2020 WL 4016530 .................................................................................... 24, 30

*Leneau v. Ponte*,
  No. 16-CV-776, 2018 WL 566456 (S.D.N.Y. Jan. 25, 2018) .............................................................. 10

*Lucente v. Cnty. of Suffolk*,
  980 F.3d 284 (2d Cir. 2020) ......................................................................................................... 23, 27

*Marom v. City of New York*,
  No. 15-CV-2017, 2016 WL 916424 (S.D.N.Y. Mar. 7, 2016)...................................................... 24, 25

*Maynard v. City of New York*,
  No. 13 Civ. 3412, 2013 WL 6667681 (S.D.N.Y. Dec. 17, 2013) ....................................................... 23

*McBride v. Gomez*,
  1994 U.S. Dist. LEXIS 1231, No. 93 Civ. 4933, 1994 WL 37816 (S.D.N.Y. Feb. 8,
  1994)...................................................................................................................................................... 12

*Mendoza v. Maimonides Med. Ctr.*,
  203 A.D.3d 715 (2d Dep't 2022).......................................................................................................... 32

*Monell v. New York City Dept. of Social Servs.*,
  436 U.S. 658 (1986) .................................................................................................................*passim*

*Morrison v. Mamis*,
  No. 08 Civ. 4302, 2008 U.S. Dist. LEXIS 106416, 2008 WL 5451639 (S.D.N.Y.
  Dec. 18, 2008) ................................................................................................................................ 9, 12

*Murphy v. Piper*,
  24-CV-00561 (PMH), 2025 WL 35060 (S.D.N.Y. Jan. 6, 2025)................................................. 24, 29

*Noto v. 22nd Century Group, Inc.*,
  35 F.4th 95 (2d Cir. 2022) ................................................................................................................... 34

*Rice v. Vandenebossche*,
  185 A.D.2d 336 (2d Dep't 1992).......................................................................................................... 34

*Ruffin v. Deperio*,
  97 F.Supp.2d 346 (W.D.N.Y. 2000)..................................................................................................... 33

50146620.1

*Saccone v. Dubois*,
18 CV 1312 (VB), 2018 WL 4356735 (S.D.N.Y. Sept. 12, 2018).........................................36

*Sims v. City of N.Y.*,
2018 U.S. Dist. LEXIS 212966 (S.D.N.Y. Dec. 17, 2018) .............................................9, 12

*Smith v. Carpenter*,
316 F. 3d 178 (2d. Cir. 2003) ..................................................................................8, 15, 16

*Smith v. Martuscello*,
602 F. Appx. 550 (2d Cir. 2015) ..........................................................................................30

*Sonds v. St. Barnabas Hosp. Corr. Health Servs.*,
151 F. Supp. 2d 303 (S.D.N.Y. 2001) ...............................................................12, 19, 20, 22

*Taranto v. Putnam County*,
No. 21-CV-2455 (KMK), 2023 WL 6318280 (S.D.N.Y. Sep. 28, 2023) ......................24, 29

*Weyant v. Okst*,
101 F.3d 845 (2d Cir. 1996) ...................................................................................................9

*Wynn v. Baxter*,
No. 23-CV-6648, 2024 WL 1585801 (W.D.N.Y. Apr. 11, 2024)...................................35, 36

*Yousef v. County of Westchester*,
No. 19-CV-1737, 2020 WL 2037177 (S.D.N.Y. April 28, 2020)...................................10, 14

**Statutes**

42 U.S.C. § 1983..............................................................................................................*passim*

GML.......................................................................................................................................36

GML Article 50...............................................................................................................35, 36

GML § 50-d ...........................................................................................................................35

GML § 50-e.......................................................................................................................35, 36

New York General Municipal Law §§ 50-e, 50-i, and 50-d ..........................................35

Plaintiffs' Claims are Statutorily Barred by New York's Notice-of-Claim and Statute-of-
Limitations Requirements Under the General Municipal Law .........................................35

**Other Authorities**

Fourteenth Amendment ...................................................................................................8, 22

CPLR § 215(1)......................................................................................................................36

Federal Rules of Civil Procedure Rule 12(b)(6) ....................................................................7

iv

*Leath,* 18-CV-7318 (NSR) .................................................................................................................... 30

v

50146620.1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................1

FACTS ....................................................................................................................................1

ARGUMENT ...........................................................................................................................1

POINT I ..................................................................................................................................2

PLAINTIFFS' DELIBERATE INDIFFERENCE CLAIMS ARE PROPERLY DISMISSED....................2

POINT II ...............................................................................................................................16

THE MONELL CLAIM MUST BE DISMISSED ......................................................................16

POINT III ..............................................................................................................................26

PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED .............................................26

CONCLUSION.......................................................................................................................31

50146620.1

## PRELIMINARY STATEMENT

Defendants Orange County ("County"), New York Correct Care Solutions Medical Services, P.C. ("NYCCS"), YesCare Corp. ("YesCare"), Joseph Patrick Harkins ("Harkins"), Teneshia Washington, RN ("Washington"), Jillian M. Barone, RN ("Barone"), Mandi Lee Zaccagnino, NP ("Zaccagnino"), and Dominick Piacente ("Dr. Piacente") (collectively referred to herein as "Defendants")[1] hereby move to dismiss the Second Amended Complaint ("SAC") of Plaintiffs Stefany Cruz ("Cruz") and Marisol Ordonez Vargas ("Vargas") (collectively, "Plaintiffs"), in its entirety, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTS

Defendants hereby incorporate the facts as alleged in the SAC.

## ARGUMENT

Under Fed. R. Civ. P. 12(b)(6), although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This inquiry requires a

---

[1]    For ease of reference, as used herein, "Medical Defendants" refers jointly to NYCCS and YesCare; "Individual Defendants" refers collectively to Harkins, Washington, Barone, Zaccagnino and Dr. Piacente; and "NYCCS Defendants" refers to NYCC together with the Individual Defendants. Further, unless specifically stated otherwise, "Defendants," as used herein, does not include the other defendants named in this action (*i.e.*, Wellpath, LLC; Matthew J. Dundon, Trustee of Wellpath Holdings, Inc. Liquidating Trust; Wellpath NY LLC; Doe Defendants 1-4).

1

District Court to "draw on its judicial experience and common sense." *Id*. at 679. A plaintiff must raise "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556).

## POINT I

## PLAINTIFFS' DELIBERATE INDIFFERENCE CLAIMS ARE PROPERLY DISMISSED

To state a claim for deliberate indifference under the Fourteenth Amendment, a plaintiff's allegations must satisfy a two-prong test – an objective prong, and a subjective, or *mens rea* prong. *See Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017).

The objective prong "is satisfied when (a) the prisoner was actually deprived of adequate medical care, meaning the prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) the inadequacy in medical care is sufficiently serious." *Bellotto v. County of Orange,* 248 Fed. Appx. 232, 236 (2d Cir. 2007) (internal quotation marks omitted). In instances when a plaintiff does not allege an outright denial of medical care but, instead, alleges a delay in treatment, the Second Circuit has instructed "that it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter,* 316 F. 3d 178, 185 (2d. Cir. 2003) (emphases in original).

To meet the subjective prong, a "pretrial detainee must prove that the defendant-official acted intentionally…or recklessly failed to act with reasonable care to mitigate the risk…posed to the pre-trial detainee even though the defendant-official knew, or should have known" of the risk posed. *See Darnell,* 849 F.3d at 35. A pretrial detainee must prove that "a defendant possesses the requisite *mens rea* when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would result." *Feliciano*

2

*v. Anderson,* No. 15-CV-4106, 2017 WL 1189747 at \*13 (S.D.N.Y. Mar. 30, 2017) (citation omitted).

A plaintiff must show "something more than mere negligence." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). The plaintiff must allege either that the defendants *knew* that failing to provide the complained-of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health. *Charles v. Orange County*, 925 F.3d 73, 87 (2d Cir. 2019). Deliberate indifference requires, at minimum, "culpable recklessness, i.e., an act or a failure to act that evinces a conscious disregard of a substantial risk of serious harm." *Id.* at 87 (cleaned up); see also *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Accordingly, an amount of care or continuous care provided to a detainee, while not dispositive, will nonetheless militate against a finding of an "objectively serious deprivation." *Sims v. City of N.Y.*, 2018 U.S. Dist. LEXIS 212966 (S.D.N.Y. Dec. 17, 2018); *See, e.g., Morrison v. Mamis*, No. 08 Civ. 4302, 2008 U.S. Dist. LEXIS 106416, 2008 WL 5451639, at \*8 (S.D.N.Y. Dec. 18, 2008), *report and recommendation adopted by* 2009 U.S. Dist. LEXIS 61772, 2009 WL 2168845 (S.D.N.Y. July 20, 2009) (dismissing deliberate-indifference claim where plaintiff received medical care on numerous occasions over several months); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 502 (S.D.N.Y. 2002) (granting motion to dismiss where plaintiff received "continuous medical care").

Importantly in this case, "[A § 1983] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Yousef v. County of Westchester*, No. 19-CV-1737, 2020 WL 2037177, at \*6 (S.D.N.Y. April 28, 2020) (cleaned up).  *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Where a

3

complaint caption contains individuals' names but "no allegations indicating exactly how the defendant violated the law or injured the plaintiff," the complaint should be dismissed as to that defendant. *Francis v. City of New York*, No. 24-CV-2530, 2025 WL 2977967, at *10 (S.D.N.Y. Oct. 10, 2025) (adopted 2025 WL 3502317 (Dec. 5, 2025)). *See Gaddy v. Sullivan County Jail Administrator and Medical Dept.*, No. 24-CV-4243, 2025 WL 2222659, at *3 (S.D.N.Y. Aug. 4, 2025) (deliberate indifference claim dismissed; plaintiff identified no defendant who was or should have been aware of serious harm, or risk of harm, posed by delay in providing pain medication and disregarded it); *Boykin v. Westchester County Jail*, No. 22-CV-10513, 2024 WL 4252040, at *8 (S.D.N.Y. Sept. 20, 2024) (deliberate indifference claim dismissed; plaintiff alleged no personal involvement of any of the named defendants "regarding the crutches, the provision of Motrin for his pain, the medical decision that Plaintiff should remain in the F-2 housing unit prior to his second fall, or the provision of items to use for elevating his injured leg"); *cf. Akinlawon v. Polonco*, No. 21-CV-2621, 2025 WL 887621, at n*5 (S.D.N.Y. March 21, 2025) (where plaintiff alleged that Defendant Morley was directly responsible for cancelling his trip to an outside facility to receive medical care, plaintiff sufficiently alleged personal involvement in denying plaintiff STD testing). Moreover, "complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." *Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018).

## A. Claims Related to Stephany Cruz

### a. Subjective Deliberate Indifference

#### i. NYCCS Defendant Dr. Piacente

The SAC fails to allege Dr. Piacente had personal involvement in deliberate medical indifference. Cruz's claim is solely predicated on a brief delay in restarting Warfarin and the timing

4

of an outside specialist consultation, neither of which rises to the level of a constitutional violation. In fact, Cruz's own pleadings establish that she was provided with diligent medical care, including anti-cortisone and steroid treatments, medication (Warfarin), diagnostic testing, monitoring, and a referral to an outside specialist.

Cruz alleges a history of lupus and deep vein thrombosis since 2014 and a Warfarin prescription for approximately ten years. SAC ¶¶ 22–25. Cruz concedes that upon Orange County Correctional Facility ("OCCF") intake, medical staff, including Dr. Piacente, worked to obtain information from her outside physician to verify her medication history and dosage. SAC ¶ 31.

While medical staff were verifying her medication, Cruz was treated with anti-cortisone and steroid treatments to address inflammation, which Cruz admits provided relief. SAC ¶ 31-32. On October 15, 2024, just five days after her admission, Dr. Piacente ordered the blood thinner medication. SAC ¶ 33. Cruz admits she did not experience immediate adverse consequences as a result of an alleged "interruption" in medication. *Id*.

As Cruz's condition evolved, medical staff continued to provide her with care. When she began experiencing lupus "flare-ups" toward the end of October, Dr. Piacente saw her multiple times, ordered weekly laboratory testing to monitor her condition, and issued a referral for a rheumatology consultation. SAC ¶ 37, 42.

The SAC itself establishes active medical management, which is the opposite of deliberate indifference. At most, Cruz appears to challenge the timing of the medication and specialist referral, which do not constitute deliberate indifference as a matter of law. Courts in this Circuit have consistently held that "[d]isagreements over medications, diagnostic methods, forms of treatment, or the need for a specialist do not rise to the level of a constitutional violation." *Sonds v. St. Barnabas Hosp. Corr. Health Servs*., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also*

50146620.1

*Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (medical decisions that reflect professional judgment do not amount to cruel and unusual punishment).

In *Sims v. City of New York*, the Court determined that "the amount of care that the plaintiff received, and its continual, if not entirely seamless, nature, although not necessarily dispositive, militates against the notion that he suffered an objectively serious deprivation." *Sims v. City of N.Y.*, 2018 U.S. Dist. LEXIS 212966 (S.D.N.Y. Dec. 17, 2018); *See, e.g., Morrison,* No. 08 Civ. 4302, 2008 U.S. Dist. LEXIS 106416; *Joyner*, 195 F. Supp. 2d 500.

Further, the SAC does not allege that the time it took for Dr. Piacente to administer her medication was intentional or reckless. See e.g. *Baskerville v. Bolt*, 224 F. Supp. 2d 723 (S.D.N.Y. 2002) (Second Circuit held that the plaintiff failed to state a claim of deliberate indifference due to the failure to refill high blood pressure medication for several days); *McBride v. Gomez,* 1994 U.S. Dist. LEXIS 1231, No. 93 Civ. 4933, 1994 WL 37816, at *2 (S.D.N.Y. Feb. 8, 1994) (motion to dismiss granted where plaintiff did not allege that the defendants acted intentionally to withhold medication).

In sum, Cruz's own allegations warrant dismissal of the SAC. She admits Dr. Piacente evaluated her condition, monitored her, provided anti-cortisone and steroid treatments, ordered diagnostic testing, prescribed medication, and arranged specialty care. Cruz's disagreement with the timing of treatment does not satisfy the § 1983 burden.

### ii.  YesCare

The SAC allegations reflect, at most, belated action; belated dispensing of medication, and delay in, or failure to, make follow-up appointments.  None of these claimed acts or omissions reflect a "conscious disregard of a substantial risk of harm"; they allege, at most, miscommunication. Furthermore, according to the SAC, YesCare performed Cruz's lab work and

6

50146620.1

scheduled the follow-up with her rheumatologist, acts that reflect attention and care to her condition and contradict any claim that YesCare consciously, knowingly disregarded a "substantial risk of harm." A claim that negligence or medical malpractice has occurred does not create a constitutional claim. *Estelle v. Gamble,* 429 U.S. 97, 105–06 (1976).

Cruz's claim of deliberate indifference to her medical needs pursuant to 42 U.S.C. § 1983 must be dismissed because she failed to allege that any individually named, purported YesCare employee had any personal involvement in any alleged deprivation of Cruz's constitutional rights. See *Gaddy,* 2025 WL 2222659. The SAC alleges that on January 27, 2025, after the Medical Defendants allegedly lost the results of Cruz's lab work, "the YesCare Defendants" conducted lab work and shared those results with Cruz's outside provider. SAC ¶ 44. WellPath/YesCare allegedly did not provide Cruz with medication that had been prescribed on December 18, 2024 until January 29, 2025. SAC ¶ 45. "The YesCare Defendants" allegedly belatedly scheduled a follow-up appointment for Cruz with her specialist, despite the specialist's request for an earlier appointment, and then, after a hospital failed to conduct a kidney biopsy during an emergency visit on March 3, 2025, "the YesCare Defendants" allegedly failed to schedule a kidney biopsy for Cruz, and she was released from custody on April 11, 2025. SAC ¶¶ 47-51. The SAC alleges that when Cruz was released from custody, the "YesCare Defendants" gave her a five- or six-day supply of blood thinners, whereas Cruz understood that she was entitled to a seven-day supply, and that because she did not see a doctor until her insurance coverage commenced in May 2025, her lupus progressed. SAC ¶¶ 51-53.

To be sure, at ¶ 18 of the SAC, Cruz names individual Defendants Harkins, Washington, Barone, Zaccagnino, and Piacente and allege that they were employed by WellPath up until January 1, 2025, when they were hired by YesCare. Yet for the post-January 1, 2025 events

7

50146620.1

pleaded in the SAC, Cruz does not identify which individual (or, at times, even which entity Defendant, WellPath or YesCare) allegedly failed to timely provide Cruz with a prescribed immunosuppressant drug, which WellPath and YesCare employees allegedly did not schedule Cruz's rheumatology follow-up appointment until March 3, 2025, which individual YesCare worker allegedly failed to schedule Cruz's kidney biopsy, which individual provided Cruz with less than a weeks' supply of blood thinners, or which individual(s) would have been responsible for communicating or delegating these actions to ensure they were implemented. Cruz has access to medical records and she could have determined which individuals were allegedly responsible for these discrete tasks.  These claims are insufficiently pleaded because they "lump all the defendants together in each claim and provide no factual basis to distinguish their conduct." *Boykin*, 2024 WL 4252040, at *8 (cleaned up).

Indeed, Cruz's non-specific, impermissible group pleading leaves the possibility that not-named individuals are responsible for the alleged acts, particularly given that the acts pleaded appear to be administrative in nature (failing to dispense medicine, failing to make appointments) that may well have been handled by a not-named individual, or the individual(s) responsible for these alleged failings may have been supervised by a not-named individual.  A plaintiff cannot hold an individual defendant responsible for acts and omissions of non-defendants. *Yousef v. Cnty. of Westchester,* No. 19-CV-1737, 2020 WL 2037177, at *9.  Furthermore, these five individuals have varying titles (social worker, registered nurse, nurse practitioner, physician), all of which carry different responsibilities, such that all of these individuals could not possibly be responsible for all alleged acts and omissions.  Thus, here, Cruz's vague pleading fails to put any purported named YesCare employee on notice of the claims against them and thus cannot state a case for relief against the any such individual for deliberate indifference.

8

### iii. County

In addition to the reasons above, Cruz's deliberate indifference claim must be dismissed as against the County because the County cannot be held liable under a theory of *respondeat superior*. *See, e.g., Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) ("Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee.").

### b. Objective Serious Medical Need

Under well-settled Second Circuit precedent, the alleged brief interruption in Lupus treatment does not meet the objective prong of deliberate indifference as a matter of law. *See Smith v. Carpenter*, 316 F.3d 178 (2d Cir. 2003).[2]

In *Smith v. Carpenter*, the Second Circuit held that an eight-day interruption in HIV and lupus medication did not constitute a constitutional violation where the plaintiff failed to demonstrate that the delay caused serious harm. 316 F.3d at 186–87. The court emphasized that "not every lapse in medical care will rise to the level of a constitutional violation," particularly where the plaintiff cannot allege substantial harm resulting from the delay. *Id*. at 185.

Cruz's allegations are weaker than those rejected in *Smith*. The alleged medication interruption here was shorter; Cruz received alternative treatment during the interim; and Cruz admits there were no immediate adverse medical consequences, let alone a condition of urgency that resulted in death, degeneration, or extreme pain. Although Cruz alleges that (well after taking her medication) she experienced lupus "flare-ups," she does not allege they were caused by the

---

[2] The crux of Plaintiff's delayed-treatment allegations arises after January 1, 2025. Because YesCare Defendants assumed responsibility for all medical care and treatment at OCCF as of that date, any claims of deliberate indifference related to Plaintiff Cruz must be dismissed as to the NYCCS Defendants.

9

50146620.1

earlier brief medication interruption. The mere fact that she experienced symptoms commonly associated with her medical condition, without a link to intentional or reckless conduct, is insufficient to satisfy the objective prong. *See id*. at 187.

This independent failure to satisfy the objective prong of the deliberate indifference standard requires dismissal of Plaintiff Cruz's § 1983 claim.

## B. Claims Related to Marisol Vargas

### a. Subjective Deliberate Indifference

#### i. NYCCS defendants Harkins, NP Zaccagnino, Dr. Piacente, and Nurses Washington and Barone

Vargas asserts that on September 17, 2023, prior to her incarceration at OCCF, she suffered a nasal fracture in a car accident. SAC ¶ 58. An x-ray incorporated into the SAC by reference establishes the nasal fraction was non-emergent and non-displaced. The SAC confirms her injury was non-emergent due to the admission that Vargas's "surgical specialist" determined that emergency surgery was not required; rather, a procedure to address the fracture could be scheduled for *fifteen days later* on October 5, 2023. However, Vargas did not appear for the surgery and instead was incarcerated at OCCF. SAC ¶¶ 59–60.

As explained below, the SAC fails to allege personal involvement as to each of the individual NYCCS medical defendants. Further, given the admissions of diligent care in the SAC itself, Vagas fails to state a claim for common-law negligence/malpractice, let alone 42 U.S.C. § 1983 deliberate indifference.

### 1. Defendant Harkins

The claims against Harkins must be dismissed based upon judicial admission. The SAC alleges Harkins is liable for improperly placing Vargas on suicide watch. SAC ¶ 68, 71. However,

10

50146620.1

in her opposition to the NYCCS Defendants' pre-motion letter ("PML"), Dkt. 102, Vargas **admits** she takes no issue with Harkin's placement of Vargas on suicide watch:

> <u>Defendant Harkins' Liability</u>. Defendant Harkins is not being sued for placing Plaintiff Ordonez Vargas on suicide watch. Dkt. 92, at 4. Instead, Harkins is liable for his failure to take any steps to provide treatment for Plaintiff Ordonez Vargas's obviously painful and bleeding facial fractures, even though he knew or should have known that the Plaintiff's nose required medical attention. *See* Dkt. 78 ¶ 67 ("Any reasonable provider would have taken steps to ensure that Ms. Ordonez Vargas received treatment for the fractures in her face made obvious by her bleeding, swelling, and crying").[2]

For this reason alone, the SAC as to Harkins is properly dismissed. [3]

That notwithstanding, the SAC acknowledges Harkins conducted a wellness screening of Vargas, questioned her about suicide ideations using a phone interpreter, noted the language barrier at play in the evaluation, completed a Suicide Watch Initial Assessment for Mental Health, and placed her on constant watch for her own safety.  SAC ¶¶ 67-68.  Such care is the opposite of deliberate indifference does not even establish simple medical malpractice.

### 2.  *Defendant Zaccagnino*

Vargas alleges that NP Zaccagnino evaluated her on October 7, 2023, and administered medication in response to her complaints of pain (SAC ¶ 77); that she conducted a search of several area hospitals seeking to obtain Vargas's medical records (SAC ¶ 85); and that she ordered x-rays (SAC ¶ 89) – the opposite of deliberate indifference.

As established by the below note, referred to and incorporated into the SAC at ¶84 (so it can be considered by the Court), Vargas knew nothing about prior care for  her non-emergent nasal fracture, including the "town, provider or hospital" she was treating with, necessitating the search.

---

[3] The absurd assertion in opposition to the PML, that Harkins, a mental health worker, failed to render medical care for which he is neither qualified nor authorized, is not alleged in the SAC. Additionally, Vargas's medical records show she was seen by medical three times while in suicide watch, once on October 5, 2023 and twice on October 6, 2023.  Relevant entries from Plaintiff's medical records are attached hereto as Exhibit A.

11

See Sanders Declaration at ¶14.  In fact, the SAC states, "Ms. Ordonez Vargas saw Defendant Zaccagnino again for an actual physical examination of her condition.  See *Id*. Again, Vargas' own pleadings show that Defendant Zaccagnino was not deliberately indifferent to Vargas.

> Added 10/12/2023 11:24 AM EST by MZaccagnino Nurse Practitioner
>
> H&P completed on individual today. He states that he was in a MVA on 9/17/2023 and was elevated at a hospital in NY where he was dx with nasal fracture. He then followed with a provider after in NY and was scheduled for surgery on 10/5/2023 for his nasal fracture. Individual does not recall what town, provider or hospital he was elevated at. He states that all the information is in his cellphone. He also states that his friends might have the information but he has not been able to contact them. Will obtain nasal XRAY here until further information can be gathered and ROI can be signed for records.

Further, because of Vargas's inability to provide material information about her injury and prior care, NP Zaccagnino appropriately ordered x-rays (referred to and incorporated into the SAC so they can be considered by the Court). SAC ¶ 89; See Sanders Declaration at ¶14.

**PATIENT REPORT**

| | |
|---|---|
| PATIENT NAME: | Ordonez Vargas, Oswaldo Jose |
| DATE OF BIRTH: | 11/01/1981 |
| FACILITY: | Orange County Correctional - ICE Acct |
| ROOM #: | N/A |

| | |
|---|---|
| DATE OF SERVICE: | 10/12/2023 |
| REFERRING PHY. : | Piacente, Dominick |
| TECHNOLOGIST: | James Barry |
| INTERPRETING COMPANY: | Meridian |

| | |
|---|---|
| Results Document ID: | 991825 |
| PROCEDURE: | 70160 - EXAM, NASAL BONES, COMPLETE, MINIMUM, 3 VIEWS |
| FINDINGS : | Correlative Films Provided:<br>FINDINGS:<br><br>There is acute fracture of the mid nasal bone noted. There is no focal bone lesion. Alignment is anatomic. There is no soft tissue swelling or foreign body identified. |
| IMPRESSIONS: | IMPRESSION:<br>Acute fracture of the mid nasal bone is seen. |
| INTERPRETING DOCTOR: | Jeremy Havas DO |
| ELECTRONICALLY SIGNED : | Jeremy Havas DO Thu, Oct 12, 2023 16:14:56 EDT |

The X-ray shows an acute mid-nasal bone fracture with anatomic alignment, with now soft tissue swelling or foreign body, indicating a nondisplaced injury without radiographic signs of urgency. This finding is consistent with the SAC allegation establishing the surgical specialist necessarily determined the fracture was non-emergent and surgical management could be deferred for 15 days from the initial visit. SAC ¶ 60.

12

By providing pain medication, searching for information about Vargas's injury (due to her inability to provide relevant information), and ordering x-rays (confirming the non-emergent nature of the injury) NP Zaccagnino demonstrated the opposite of deliberate indifference.  To the extent Vargas challenges her medical judgment/decision-making, such a disagreement does not rise to the level of deliberate indifference unless it is so inadequate as to shock the conscience or is medically unacceptable under the circumstances.  *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976); *See Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (disagreements over diagnosis or treatment do not rise to the level of constitutional violations).

Vargas relies on self-serving and conclusory assertions of inadequate care, without supporting facts, that are insufficient to state a claim under § 1983 against NP Zaccagnino. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts Vargas does allege establish NP Zaccagnino rendered diligent and appropriate care.

### 3.  Dr. Piacente

Vargas relies upon the conclusory self-serving subjective belief that Dr. Piacente was "not interested" in providing medical care to her while incarcerated of OCCF.  SAC ¶ 92. However, Vargas admits she was seen by Dr. Piacente on October 30, 2023 and during the visit, he evaluated her nose injury, documented that her nasal septum was deviated to the right, and provided a medical opinion on surgery. SAC ¶¶ 91-93.  Again, to the extent Vargas claims Dr. Piacente should have provided different treatment, such a disagreement does not constitute actionable deliberate indifference. *See Sonds,* 151 F. Supp. 2d 303 at 313.

13

#### *4.  Defendants Barone and Washington*

The allegations against Defendants Barone and Washington similarly fail to state a claim. Importantly, in addition to Vargas's failure to allege specific facts establishing actionable conduct, as explained below, registered nurses like Barone and Washington are not credentialed to order substantive treatment; they can only carry out treatment ordered by higher level providers.

The only fact alleged as to RN Washington is that she evaluated Vargas on October 6, 2023 and administered Tylenol. Compl. ¶ 74. The only fact Vargas alleges about <u>RN Barone</u> is that she evaluated her on October 12, 2023. The SAC adds the conclusory assertion that despite purported knowledge of her medical condition, Barone failed to provide "appropriate" treatment. SAC ¶ 86; Compl. ¶¶ 154–157, 160–163, 165, 169–170.

The SAC fails to factually detail what treatment was required; what treatment was withheld; whether they were credentialed to order such treatment; and/or how they allegedly deviated from accepted medical practice. Such threadbare recitals are insufficient to allege a constitutional violation or negligence.

Importantly, the SAC does not and cannot allege Nurses Barone or Washington possessed authority to prescribe medication, order diagnostic testing, or direct specialized treatment. Courts in this Circuit consistently hold that non-prescribing nurses who lack authority to determine or alter treatment plans cannot be held liable for deliberate indifference where they do not control the ultimate course of care. See *Johnson v. Rodriguez*, 2024 U.S. Dist. LEXIS 29386 (W.D.N.Y. Feb. 20, 2024) (dismissing deliberate indifference claim against nurse lacking authority to prescribe or override physician decisions). Since the SAC alleges higher level providers (Dr. Piacente and NP Zaccagnino) were managing Vargas's nasal fracture, the claims against Barone and Washington are frivolous.

14

Even if Washington and Barone were authorized to prescribe medication (they weren't), a plaintiff's disagreement with the type, strength, or conservativeness of medication ordered – particularly with respect to pain management – does not transform medical judgment into deliberate indifference under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

### ii.  YesCare

At the outset, and as the SAC reflects, YesCare began to provide medical services to OCCF on January 1, 2025. SAC ¶ 17.  The claims regarding Vargas concern events occurring on or before November 9, 2023, her date of discharge from custody. SAC ¶ 97. Thus, because YesCare was not providing services to OCCF when the claims regarding Vargas accrued, the SAC cannot plausibly state any claims against YesCare with respect to Vargas's care.

Plaintiffs conceded the point that YesCare cannot be liable for any claim accruing before January 1, 2025.  See ECF Dkt. No. 105, at 1, n.1. However, all five claims in the SAC are pleaded on behalf of both Plaintiffs and as against YesCare. SAC ¶¶ 153-193. Given this ambiguity in pleading, YesCare respectfully requests that this Court issue an order dismissing YesCare from any claim arising from acts or omissions occurring before January 1, 2025.

### iii.  County

In addition to the reasons above, Vargas' deliberate indifference claim must be dismissed as against the County because the County cannot be held liable under a theory of *respondeat superior*.

### b.  Objective Serious Medical Need

Vargas also fails to allege the existence of an objectively serious medical need – i.e., a condition of urgency that may produce death, degeneration, or extreme pain. The x-ray incorporated into the SAC establishes Vargas sustained a non-emergent nondisplaced fracture

15

without radiographic signs of urgency. SAC ¶89.  The SAC further establishes the lack of an objective serious medical need because the outside surgical specialist determined surgery was not urgent and could wait fifteen days.

Courts within this Circuit have repeatedly held that a broken nose, standing alone, is not necessarily a sufficiently serious medical condition for purposes of the Eighth or Fourteenth Amendment. In *Lasher v. City of Schenectady*, No. 02-CV-1395, 2004 U.S. Dist. LEXIS 14871, at *14 (N.D.N.Y. Aug. 3, 2004), the court explained that "a broken nose alone may not be sufficient to constitute a serious medical need, but when a broken nose is bleeding profusely the condition is sufficiently serious." Similarly, in *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001), the court found that cuts, bruises, and other minor injuries, did not constitute objectively serious medical needs absent allegations of severe complications or substantial risk of harm.

Vargas relies on conclusory assertions (that contradict the x-ray results and conclusions of her outside surgical specialist) that her injury was "serious" – despite needing no treatment for the fifteen days prior to her OCCF incarceration. Such self-serving allegations that contradict the alleged facts are insufficient to satisfy the objective prong. The alleged nondisplaced non-emergent nasal fracture does not constitute a sufficiently serious medical condition sufficient to state a claim.

## POINT II

### THE *MONELL* CLAIM MUST BE DISMISSED

A claim pursuant to *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1986), cannot lie against a municipality (or a vendor under a municipal contract, such as WellPath or YesCare) unless a plaintiff has established that she suffered a constitutional tort "committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or

16

policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). Here, as we explain in Point I, *supra*, Plaintiffs failed to sufficiently plead claims of deliberate indifference to their medical needs as to any Defendant.   Since Plaintiffs failed to plausibly allege any constitutional tort, they cannot state a *Monell* claim against any of the Defendants.  For that reason alone, Plaintiffs' *Monell* claims must all be dismissed.

Should this Court decide to consider Plaintiffs' *Monell* claims, they must also be dismissed for the following reasons.  To plead a *Monell* claim, a plaintiff must state (1) an official policy or custom that (2) causes the claimant to be subjected to (3) a denial of a constitutional right.  *Monell*, 436 U.S. at 690-91.  The practice or policy must be "persistent and widespread," *Iacovangelo v. Correctional Medical Care, Inc.*, 624 Fed.Appx. 10, 13-14 (2d Cir. 2015), and, at the pleading stage, must be supported by facts, *Maynard v. City of New York*, No. 13 Civ. 3412, 2013 WL 6667681, at *4 (S.D.N.Y. Dec. 17, 2013).  A single instance of misconduct is insufficient to support a custom or policy that results in a constitutional deprivation. *See Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020).  Moreover, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity.").

"[C]ourts in this district have widely held that citations to lawsuits, even if they did involve comparable conduct, do not alone establish a custom or practice that is widespread and persistent, particularly if the lawsuits did not result in an adjudication of liability." *Freudenberg v. County of Orange*, No. 23-CV-847, 2024 WL 4307176, at *11 (S.D.N.Y. Sept. 25, 2024).  *See, e.g., Taranto v. Putnam County*, No. 21-CV-2455 (KMK), 2023 WL 6318280, at *18 (S.D.N.Y. Sep. 28, 2023)

17

(listing cases). The filing of or even settlement of a case is not probative of whether "the policies plaintiff alleges exist do in fact exist." *Kucharczyk v. Westchester County*, 95 F. Supp.3d 529, 543 (S.D.N.Y. 2015). Moreover, citations to pending lawsuits are insufficient to establish *Monell* liability. *See Murphy v. Piper*, 24-CV-00561 (PMH), 2025 WL 35060, *4 (S.D.N.Y. Jan. 6, 2025) (citing *Williams v. Fryermuth*, No. 23-CV-02156, 2024 WL 4557444, at *5 (S.D.N.Y. Oct. 23, 2024)); *see also Leath v. County of Orange*, 18-CV-7318 (NSR), 2020 WL 4016530, *5, footnote 5 (S.D.N.Y. July 15, 2020) (finding citation to lawsuit which did not result in an adjudication of the County's liability insufficient for *Monell*). Similarly, references to investigations, absent any facts to link the investigations to the alleged custom and policy, are insufficient to support the existence of a custom. *See Isaac v. City of New York,* No. 17-CV-1021, 2018 WL 1322196 (S.D.N.Y. March 13, 2018). The investigations cited by Plaintiffs do not "substantiate[ ] wrongdoing of some kind, not to mention wrongdoing at OCCF giving rise to similar constitutional violations." *Freudenberg*, at *11 (internal quotations omitted; citing, *inter alia*, *Marom v. City of New York*, No. 15-CV-2017, 2016 WL 916424, at *22 (S.D.N.Y. Mar. 7, 2016) ("Neither a newspaper report nor an academic paper reporting on incidents that ought to be investigated is a showing of anything entitled to a presumption of truth.")).

## A. NYCCS

The SAC contains no facts suggesting the existence of a formal policy, a widespread practice, or deliberate indifference by NYCCS officials who created or enforced any relevant policy.

Plaintiffs instead rely on unsubstantiated media reports and unrelated lawsuits. Dkt. 78. These materials neither demonstrate deliberate indifference nor establish constitutional violations relevant to *Monell*. More importantly, they lack a factual nexus to Plaintiffs' own circumstances.

18

50146620.1

Plaintiffs' conclusory allegations fail to connect any purported policy or custom to the medical care at issue here.

Newspaper articles, on their own, are generally insufficient to establish a *Monell* claim. Courts have consistently held that such articles lack the necessary evidentiary reliability and probative value to demonstrate a municipal policy, custom, or practice that caused a constitutional violation.  See *Marom,* 2016 WL 916424.

While Plaintiffs provided a number of lawsuits filed over an about 14-year span (2008 to Corizon's bankruptcy in 2022, see SAC ¶ 121, n.43), they fail to identify whether the groups of lawsuits are duplicative or overlapping in any way (which certainly seems to be the case), they do not provide the outcomes of these suits, and they fail to provide any court/jury finding of *Monell* or other liability against NYCCS Defendants.  Most importantly, there is no factual nexus between those lawsuits and the facts at issue in this case. See *Freudenberg*, 2024 WL 4307176.

## B.  YesCare

Plaintiffs allege that YesCare has a custom and practice of "cost-cutting and substandard care." SAC ¶ 120. which impacted Cruz because she was "denied the emergency lupus treatment she needed."  As an initial matter, in the SAC, Plaintiffs describe no such custom, so they cannot sufficiently state that acts undertaken pursuant to this "custom" caused  Cruz's injury.  Instead, they allege that the YesCare defendants did not provide her with an immunosuppressant drug prescribed in December 2024 until late January 2025, gave her an inadequate supply of blood-thinners upon her release from custody, and failed to timely schedule a follow-up appointment and an appointment for a kidney biopsy. SAC ¶¶ 45-52. These facts are not reflective of and do not support an agency custom of cost-cutting and substandard care.  These facts instead show, simply,

19

that someone – Plaintiffs have failed to identify precisely whom (*see* Point I, *supra*) – did not dispense or timely dispense medication or call or timely call to schedule appointments.

Furthermore, the SAC provides no specific examples of any "cost-cutting and substandard care" so as to create a custom or pattern. *See* SAC ¶¶ 118-132. Plaintiffs recite a series of alleged YesCare "pattern" conduct, but this alleged conduct is completely unrelated to cost-cutting or substandard care, or even to the facts of this case.

Specifically, Plaintiffs allege that YesCare purportedly does not "ensure that adequate intake screening and health assessments are provided" (SAC ¶ 121); does not implement appropriate medical screening instruments that identify observable and non-observable medical needs including chronic diseases" (SAC ¶ 122); does not "ensure timely access to a physician when patients present symptoms requiring such care" (SAC ¶ 123); and fails to "ensure that inmates have access to adequate health care, including by failing to ensure that the medical request process for inmates adequately meets inmates' needs. The medical request process should include adequate logging, tracking, and timely responses by medical staff." SAC ¶ 124. These allegations are mere statements regarding screening and record-keeping and are supported by no facts or sources, rendering them speculative. Moreover, these unsupported and irrelevant statements seem to concern administrative practice, as opposed to cost-cutting and substandard care. Plaintiffs' *Monell* claim thus fails because they have not pleaded sufficient facts to plausibly allege the existence of a municipal policy or practice

Furthermore, Plaintiffs' *Monell* claim fails because these unsupported allegations fall significantly short of establishing, as Plaintiffs must, a "persistent and widespread practice," such that a "policymaker was aware of a subordinate's unconstitutional actions, and consciously chose

50146620.1

to ignore them, effectively ratifying the actions." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). Plaintiffs identify no policymaker whatsoever.

To bootstrap their utter lack of a pattern of conduct under which YesCare allegedly operated that resulted in Cruz's alleged injuries, Plaintiffs improperly attempt to impute Corizon's litigation history to YesCare. YesCare is a different entity that did not start providing services to OCCF until January 1, 2025. Notably, Plaintiffs indicate that YesCare has existed since 2022 (SAC ¶ 121, n.43), but provide no examples of conduct by YesCare employees or YesCare policies to support a custom of cost-cutting and providing substandard care to patients. As to YesCare, Plaintiffs simply plead their own claims, but a single instance of misconduct is insufficient to support a custom or policy that results in a constitutional deprivation. *See Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020)

Even so, Plaintiffs provide no factually specific cases in which Corizon failed to expeditiously make appointments, or provided an inadequate supply of medication on discharge, nor the results of any such claim. The SAC alleges that Corizon was sued 660 times "for malpractice" between 2008 and 2013 (SAC ¶ 126), was sued over 1,000 times as of late 2021 "by plaintiffs alleging substandard care" and was "named as a defendant in wrongful death and sexual abuse lawsuits" over 1,300 times (SAC ¶ 126), was the subject of a report describing Corizon's history "of providing substandard medical care" to inmate patients, "leading to serious injuries and even death" (SAC ¶ 128), and that the report detailed an instance in which an inmate and his family were awarded $6 million for "pain and suffering" (SAC ¶ 129). Plaintiffs allege further that an amicus brief in a bankruptcy proceeding asserted that Corizon "maximized profits by systematically providing substandard care" and cite to a district court's finding that "multiple

21

50146620.1

incarcerated people died or were seriously harmed" by Corizon's alleged failure to provide adequate care. SAC ¶¶ 130-31.

As NYCCC notes above, Plaintiffs' statistics are potentially overlapping and ambiguous and Plaintiffs fail to divulge the outcomes of the lawsuits, let alone any jury/court finding regarding any alleged Corizon policy of "cost-cutting and substandard care." Plaintiffs thus provide no data to support that Corizon engaged in the precise conduct alleged herein.

Thus, even if this Court considers Plaintiffs' allegations regarding Corizon – and YesCare does not concede that this is appropriate given that YesCare is a completely different entity – Plaintiff's non-specific, unsubstantiated data is completely insufficient to support a policy of "cost-cutting and substandard care" nor does it serve as "pattern" conduct to support this claimed policy because the data is unlike any claim alleged herein.

Finally, but just as significantly, Plaintiffs' *Monell* claim fails for the additional, independent reason that Plaintiffs plead no facts to support any causal link between the claimed custom and policy and Cruz's alleged injury. Plaintiffs fail to establish that the SAC facts regarding medication dispensing and appointment making establish, as Cruz alleges (SAC ¶ 120), that the purported custom of cost-cutting and substandard care *caused* her deprivation of emergency lupus treatment, or that these acts were undertaken pursuant to any such custom. As a result, Plaintiffs' claim that this alleged custom "impacted" Cruz because she was "denied the emergency lupus treatment she needed" is completely conclusory.

### C. County

The SAC attempts to allege a pattern and practice of inadequate medical treatment on the part of the County by alleging that the County "engag[es] private prison medical providers like Defendant NY Correct Care and YesCare to provide medically deficient treatment for a fraction of

22

the cost." *See* SAC at ¶133.  As stated above, the SAC relies on several news articles, press releases, complaints, and other reports (collectively, "reports"). *See id.* at ¶¶ 135-40. These reports, which speak generally of alleged medical negligence and/or deficiencies at OCCF, are unrelated to Plaintiffs' claims of untreated lupus and a nasal fracture. Further, the reports fail to support the claim that the County had a pattern and practice of engaging private medical providers "to provide medically deficient treatment for a fraction of the cost." The SAC does not sufficiently allege that the County had notice of the medical providers' alleged deficient care due to cost-cutting. While the SAC alleges that the Sheriff had notice of reports of inadequate medical care at OCCF (SAC ¶ 149), the SAC fails to plausibly allege that the Sheriff is a final policymaker for the County in this context, especially when the SAC admits that the County contracted with private medical providers for the medical care of OCCF inmates. *See, e.g., Flannery v. County of Niagara*, 763 F.Supp.3d 364, 413 (W.D.N.Y. 2025) ("In this connection, the court finds that Sheriff Filicetti is not a final policy-maker for Niagara County nor does the County have any responsibility for the medical care of Jail inmates, particularly, when, as here, such care has been assigned to a private contractor, PrimeCare and Dr. Cervantes as a PrimeCare employee.").  The SAC's bald assertion that the Sheriff is a final policymaker (SAC ¶ 12) is conclusory and must be disregarded.

The SAC also relies on unrelated lawsuits for its *Monell* claim. *See* SAC at ¶¶ 141-48. Plaintiffs' citations to pending Section 1983 suits, which have not resulted in an adjudication or admission of liability, are insufficient to establish *Monell* liability. *See Murphy v. Piper*, 24-CV-00561 (PMH), 2025 WL 35060,  Here, the SAC cites to seven other lawsuits. SAC at ¶¶ 142-148. Tellingly, the SAC does not allege that any of these lawsuits resulted in an adjudication or admission of liability. Without more, references to these cases are patently insufficient to plausibly allege a "sufficiently widespread practice" as required by *Monell*. *See, e.g., Taranto v. Putnam*

23

*County*, No. 21-CV-2455 (KMK), 2023 WL 6318280, at *18.   Nor does the number of lawsuits (7) suggest a pervasive illegal practice. *See Calderon v. City of New York*, 128 F. Supp.3d 593, 613 (S.D.N.Y. 2015) (finding citation to 16 civil lawsuits insufficient to state a *Monell* claim).

Moreover, the SAC fails to allege that the factual allegations underlying the other lawsuits are the same or similar to Plaintiffs' claims. *See Leath,* 18-CV-7318 (NSR), 2020 WL 4016530, *5, footnote 5 (finding citation to lawsuit that was "inapposite because the policy or custom at issue involved allegations of a lack of discharge planning, not an inmate on inmate attack" insufficient for *Monell*).   For example, none of the cases cited in the SAC involves the medical issues underlying Plaintiffs' claims – a lupus flare-up or a nasal fracture. *See* SAC at ¶¶ 142-148. In fact, each cited lawsuit involves circumstances different from the next, and all of them are different from Plaintiffs' allegations. In short, the SAC alleges nothing more than "a series of discrete incidents taking place . . . over a long period of time" insufficient to state a policy or custom of cost-cutting deficient medical care. *See Smith v. Martuscello*, 602 F. Appx. 550, 552 (2d Cir. 2015) (summary order).

Plaintiffs gloss over this fact by zooming out and presenting everything under the broad policy of "cost-cutting." *See, e.g.,* SAC at ¶ 187. But such a policy, if one existed, would cover every claim involving deficient medical care, no matter how dissimilar.  For example, Plaintiffs lump together the death of an individual three days into her incarceration (SAC at ¶ 144), on one hand, with Vargas' non-life-threatening nasal fracture, on the other. As another example, Plaintiffs point to an incident involving an alleged delay in medical treatment of "three to four hours." SAC at ¶ 143; *see Smith v. DuBois*, 7:23-CV-08211(CS), Doc No. 12, at ¶ 34 (S.D.N.Y. Dec. 12, 2023). An alleged delay in medical treatment of mere hours, however, has zero bearing on Plaintiffs' claims (which span weeks and months), and the SAC does not allege otherwise.

24

Indeed, the SAC offers no factual allegations tying any of the pending lawsuits together, linking them to Plaintiffs' claims, or explaining how they were caused by a policy of "cost-cutting." *See* SAC at ¶¶ 142-148; s*ee Calderon*, 128 F. Supp.3d at 613 ("[Plaintiff] does not cite *any* civil cases that implicated the unlawful practice she challenges (false statements in a warrant application).") (emphasis in original).

Moreover, some of the pending lawsuits cited in the SAC are simply too old to have any bearing on Plaintiffs' claims. *See* SAC ¶ 146 (describing events occurring 13 years prior to Plaintiffs' earliest claims); ¶ 148 (7 years); *see Calderon*, 128 F. Supp.3d at 613 ("[T]he length of time spanned by the cited lawsuits (12 years) . . . makes the number of cited cases particularly inadequate to demonstrate plausibly a municipal custom."). Nor does the SAC allege that the individuals involved in Plaintiffs' claims were also involved in the prior lawsuits.

More fundamentally, the alleged "cost-cutting" policy is divorced from the specific claims alleged by each Plaintiff. The SAC does not contain factual allegations describing how the County's alleged "cost-cutting" impacted (let alone *caused*) the medical treatment received by the Plaintiffs. *See Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 ("The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.") (emphasis in original).

Finally, to the extent the SAC alleges that the County deliberately replaced one allegedly "cost-cutting" medical provider (NYCCS) with another allegedly "cost-cutting" medical provider (YesCare), in an effort to continue a policy of providing "deficient" medical care at a cost savings, such assertion is absurd and completely unsupported by the non-conclusory factual allegations in the SAC.

25

50146620.1

## POINT III

## PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED

### A.  The *Respondeat Superior* Claims are Properly Dismissed

    a.  NYCCS

The state law claims against NYCCS for *Respondeat Superior* lack merit. *Respondeat Superior* is not a recognized independent state or federal cause of action and is thus properly dismissed. *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011).

### A.  The Negligence/Medical Malpractice Claims are Properly Dismissed

    a.  NYCCS

The state law Medical Malpractice/Negligence claims against the NYCCS must be dismissed.  To establish a claim for medical malpractice under New York law, a plaintiff must prove "(1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury." *Mendoza v. Maimonides Med. Ctr.*, 203 A.D.3d 715, 716 (2d Dep't 2022). Plaintiffs fail to allege facts against NYCCS or Individual Medical Defendants amounting to negligence or medical malpractice for the same reasons as articulated above as to deliberate indifference.

Plaintiff likewise cannot sustain any claim sounding in gross negligence. Under New York law, gross negligence requires conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing," and reflects a failure to exercise even slight care. See *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 823–24 (1993). It is well settled that allegations amounting only to ordinary negligence or medical malpractice cannot be recast as gross negligence absent facts demonstrating egregious or reckless conduct. Here, the Complaint contains no non-conclusory allegations that NYCCS or the Individual Medical

26

50146620.1

Defendants engaged in conduct rising to that heightened standard. Rather, the pleaded facts reflect, at most, disagreement with medical judgment and the course of treatment, allegations insufficient as a matter of law to establish gross negligence. Accordingly, any claim predicated upon gross negligence must also be dismissed.

Accordingly, because Plaintiff fails to allege facts establishing a deviation from accepted medical practice, proximate causation, or compliance with the mandatory notice provisions of the General Municipal Law, the state law medical malpractice and negligence, and gross negligence claims against NYCCS and the Individual Medical Defendants must be dismissed in their entirety.

b. YesCare

The SAC fails to plausibly state any claim for negligence and medical malpractice as to YesCare as well. Where Plaintiff alleges belated dispensing of medication and failure to timely make follow-up appointments relating to Plaintiff Cruz's medical condition, her claims sound in medical malpractice. With respect to the individual YesCare defendants, the SAC does not indicate who at YesCare allegedly committed each act or omission, or the title or position of those unidentified individuals. Yet these factors relate to the standard of care that should be imposed with respect to each defendant, as different professionals have different skill sets. Nor do the acts/omissions as alleged amount to "a substantial departure from accepted professional judgment and that the evidence of risk was sufficiently obvious to infer the defendants' actual knowledge of a substantial risk to plaintiff." *Ruffin v. Deperio*, 97 F.Supp.2d 346, 354 (W.D.N.Y. 2000). As noted above, the acts/omission describe, at most, miscommunication.

Moreover, the SAC falls far short of stating a claim for gross negligence. The SAC pleads no such conduct; rather it reflects allegedly belated action, and an alleged failure to provide one or two days' worth of blood thinners, none of which can be characterized as intentional wrongdoing.

27

Plaintiffs plead no facts that even suggest that any defendant intended to harm Plaintiff Cruz or was recklessly indifferent to her rights in allegedly committing the alleged acts/omissions. Moreover, the SAC's factually-unsupported contention that YesCare's actions constitute a "gross deviation" (see SAC ¶ 165) is conclusory and thus insufficient to state a case for relief.   *Noto v. 22nd Century Group, Inc.*, 35 F.4th 95, 102 (2d Cir. 2022).

c.  County

The SAC fails to plausibly state any claim for negligence, gross negligence, or medical malpractice as to the County.[4]   The negligence claims are also duplicative of the medical malpractice claim. *See Rice v. Vandenebossche*, 185 A.D.2d 336, 337 (2d Dep't 1992) ("When the duty owing to the plaintiff by the defendant arises from the physician-patient relationship or is substantially related to medical treatment, the breach thereof gives rise to an action sounding in medical malpractice as opposed to simple negligence.").

As to the medical malpractice claim itself, such claim fails as against the County. First, the SAC does not allege that Plaintiffs were treated by a County officer or employee. Second, such claim cannot be asserted against the County under a theory of *respondeat superior* as the SAC fails to allege that the County directly appointed the physician underlying Plaintiffs' claims. Rather, the SAC merely alleges that the County *contracted* with the third-party medical providers. *See* SAC at ¶ 152. "[A]s such, there is no basis to support an allegation that [the medical provider] was thereby acting as a County officer or employee sufficient to impute liability against the County

---

[4] In their response to the County's initial pre-motion letter, Plaintiffs stated that the "…SAC does not include any claims for negligence or gross negligence against the County…"  (*See* Doc. No. 104). Thus, the negligence and gross negligence claims must be dismissed as against the County.

28

based on *respondeat superior*. *See Flannery v. County of Niagara*, 763 F.Supp.3d 364, 440 (W.D.N.Y. 2025).

### B. Plaintiffs' Claims are Statutorily Barred by New York's Notice-of-Claim and Statute-of-Limitations Requirements Under the General Municipal Law

Plaintiff's state law claims are independently barred by New York's mandatory statutory prerequisites governing actions against municipalities, their employees, and entities acting on their behalf.

First, the claims against the individually named medical providers, NP Zaccagnino and Dr. Piacente, are subject to the notice-of-claim and statute-of-limitations requirements set forth in New York General Municipal Law ("GML") §§ 50-e, 50-i, and 50-d. Under GML § 50-d, claims against municipal employees acting within the scope of their employment, including physicians and other medical providers, are subject to the same procedural requirements applicable to claims against the municipality itself. These requirements are strictly construed, and compliance is a condition precedent to suit. A plaintiff may not circumvent these statutory mandates by styling claims as individual-capacity claims or by asserting generalized supervisory liability. See *Ayers v. Mohan*, 154 A.D.3d 411 (2d Dep't 2017).

Plaintiffs concede at SAC ¶ 8 that Plaintiff Cruz filed a petition in Orange County (Dkt. No. EF007296-2025) seeking to have her untimely Notice of Claim deemed timely. That petition has not been decided. Absent an order granting such relief, Cruz has failed to comply with GML Article 50, and all state law claims against the County must be dismissed as a matter of law.

The same defect requires dismissal of the state law claims against the County and against NYCCS and YesCare. Courts have consistently held that private medical providers contracting with municipalities to provide care to detainees are treated as municipal defendants for purposes of notice-of-claim requirements. See *Dumal v. Westchester County*, No. 19-CV-2161, 2021 WL

29

738365 (S.D.N.Y. Feb. 25, 2021) (dismissing state law claims, including against a private medical contractor, for failure to plead compliance with GML § 50-e); *Wynn v. Baxter*, No. 23-CV-6648, 2024 WL 1585801, at *4–5 (W.D.N.Y. Apr. 11, 2024) (noting that a private entity providing medical services pursuant to a municipal contract is subject to GML notice requirements); *Bess v. City of New York*, No. 11 Civ. 7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013). As the court observed in *Wynn*, if a plaintiff asserts state law claims against such a contractor, he must allege compliance with GML § 50-e. Plaintiffs have not done so here. Accordingly, all state law claims against the County and its contracted medical providers must be dismissed unless and until Cruz obtains an order deeming her Notice of Claim timely.

Independently, the state law claims relating to Vargas are time-barred. Under CPLR § 215(1), actions against a sheriff or his deputies must be commenced within one year. The SAC alleges that Vargas was released from OCCF on November 9, 2023 (SAC ¶ 97), yet this action was not filed until January 3, 2025 (Doc. No. 1) well beyond the one-year limitations period. Courts routinely dismiss such claims as untimely. See *Saccone v. Dubois*, 18 CV 1312 (VB), 2018 WL 4356735, at *5–6 (S.D.N.Y. Sept. 12, 2018).

Moreover, even if the claims were timely, the County cannot be held liable for the acts of the Sheriff or his deputies under New York law. See *Saccone*, 2018 WL 4356735, at *6 (dismissing negligence claims against Orange County because the County is not liable for the acts of the Sheriff or his deputies).

For all of these reasons, failure to comply with GML Article 50, expiration of the one-year statute of limitations under CPLR § 215(1), and the County's lack of vicarious liability for the Sheriff, the state law claims must be dismissed in their entirety.

## CONCLUSION

Based on the foregoing, the SAC must be dismissed, in its entirety, as to each of the Defendants.

50146620.1