UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

**STEFANY CRUZ and MARISOL ORDONEZ VARGAS,**

         *Plaintiff,*

     *v.*

**ORANGE COUNTY (New York); WELLPATH, LLC (Formerly Known As CORRECT CARE SOLUTIONS MEDICAL SERVICES PC and/or NEW YORK CORRECT CARE SOLUTIONS MEDICAL SERVICES, PC); MATTHEW J. DUNDON, Trustee of Wellpath Holdings, Inc. Liquidating Trust; WELLPATH NY LLC; YESCARE CORP., JOSEPH PATRICK HARKINS; TENESHIA WASHINGTON, RN; JILLIAN M BARONE, RN; MANDI LEE ZACCAGNINO, NP; DOMINICK PIACENTE; AND DOE DEFENDANTS 1-4,**

         *Defendants.*

Civil No.:
7:25-cv-00064-PMH

---

**DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(B)(6)**

50532869.1

**BARCLAY DAMON LLP**
*Attorneys for Defendants*
*New York Correct Care Solutions Medical*
*Services, P.C., Joseph Patrick Harkins,*
*Teneshia Washington, RN, Jillian M.*
*Barone, RN, Mandi Lee Zaccagnino, N.P.*
*and Dr. Dominick Piacente*
Office and Post Office Address
100 Chestnut Street, Suite 2000
Rochester, New York 14604
Telephone (585) 295-4426
Email: psanders@barclaydamon.com

**PAUL A. SANDERS, ESQ.**
 *of Counsel*

**ORANGE COUNTY DEPARTMENT
OF LAW**
Richard B. Golden
*Attorneys for Defendant Orange County*
255-275 Main Street
Goshen, New York 10924
ddeleo@orangecountygov.com

**DANTE D. DELEO, ESQ.**
 *of Counsel*

**KAUFMAN BORGEEST & RYAN LLP**
*Attorneys for Defendant YesCare*
200 Summit Lake Drive
Valhalla, New York 10595
lfleischmann@kbrlaw.com

**LISA FLEISCHMANN, ESQ.**
 *of Counsel*

50532869.1

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................ 6

ARGUMENT ........................................................................................................... 6

    PLAINTIFFS' DELIBERATE INDIFFERENCE CLAIMS ARE PROPERLY
    DISMISSED ........................................................................................................ 6

    PLAINTIFFS FAIL TO STATE A MONELL CLAIM AGAINST DEFENDANTS ..... 12

    PLAINTIFFS STATE LAW CLAIMS ARE BARRED ................................................. 19

CONCLUSION ....................................................................................................... 22

50532869.1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arias v. East Hartford*,
No. 3-20-CV-00895 (JCH), 2021 WL 3268846 (D. Conn. Jan. 30, 2021)...........................9, 10

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*,
81 N.Y.2d 821 (1993) ...................................................................................................19, 20

*Cruz v. Orange County*,
Index No. EF007296-2025, Doc. No. 19 ................................................................................21

*Douglas v. County of Oswego*,
151 Misc. 2d 239 (Sup. Ct. Oswego Cnty. 1991) ...................................................................22

*Estelle v. Gamble*,
429 U.S. 97, 97 S. Ct. 285 (1976).............................................................................................7

*Fleming v. City of New York*,
No. 18 Civ. 4866, 2019 WL 4392522 (S.D.N.Y. Aug. 27, 2019) ...........................................21

*Freudenberg v. County of Orange*,
No. 23-CV-847, 2024 WL 4307176 (S.D.N.Y. Sept. 25, 2024)..............................................13

*Jones v. Westchester County Dept. of Corr.*,
557 F. Supp. 2d 408 (S.D.N.Y. 2008)...............................................................................14, 15

*Lasher v. City of Schenectady*,
2004 U.S. Dist. LEXIS 14871 .................................................................................................12

*Lehal v. Central Falls Detention Facility Corp.*,
No. 13-cv-3923, 2016 WL 7377238 (S.D.N.Y. No. 21, 2016).........................................15, 16

*Marom v. City of New York*,
No. 15-CV-2017, 2016 WL 916424 (S.D.N.Y. Mar. 7, 2016) ...............................................13

*Osterhoudt v. City of New York*,
No. 10 CV 3173(RJD)(RML), 2012 WL 4481927 (E.D.N.Y. Sept. 27, 2012)......................17

*Sanchez v. New York Corr. Care Solutions Med. Services, P.C.*,
No. 16-CV-6826, 2018 WL 6510759 (W.D.N.Y. Dec. 11, 2018)..........................................16

*Sims v. City of N.Y.*,
2018 U.S. Dist. LEXIS 212966 (S.D.N.Y. Dec. 17, 2018) ......................................................6

*Smith v. Carpenter*,
   316 F.3d 178 (2d Cir. 2003)......................................................................................................7

*White v. City of New York*,
   No. 13-CV-7421 (KPF), 2015 WL 4601121 (S.D.N.Y. July 31, 2015)..................................17

**Statutes**

CPLR § 215(1)...............................................................................................................................22

50532869.1

## PRELIMINARY STATEMENT

Defendants Orange County ("County"), New York Correct Care Solutions Medical Services, P.C. ("NYCCS"), YesCare Corp. ("YesCare"), Joseph Patrick Harkins ("Harkins"), Teneshia Washington, RN ("Washington"), Jillian M. Barone, RN ("Barone"), Mandi Lee Zaccagnino, NP ("Zaccagnino"), and Dominick Piacente ("Dr. Piacente") (collectively referred to herein as "Defendants") respectfully submit this memorandum of law in further support of their joint motion to dismiss the Second Amended Complaint ("SAC") of Plaintiffs Stefany Cruz ("Cruz") and Marisol Ordonez Vargas ("Vargas") (collectively, "Plaintiffs"), in its entirety, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants respond to Plaintiffs' opposition only as necessary, and otherwise rely upon their main moving papers.

## ARGUMENT

### PLAINTIFFS' DELIBERATE INDIFFERENCE CLAIMS ARE PROPERLY DISMISSED

a. *Plaintiff Cruz*

    i. **NYCCS**

Plaintiff alleges that Dr. Piacente caused a brief delay in restarting Warfarin and the timing of an outside specialist consultation, neither of which rises to the level of a constitutional violation.

Plaintiff's opposition ignores the very facts alleged in the SAC that warrant dismissal of her claims: Cruz received continuous and active medical care, including physician evaluation, ongoing laboratory monitoring, steroid treatment, diagnostic testing, prescribed medication, and a referral for specialty care. In other words, the SAC itself alleges repeated and consistent medical attention over time. *Sims v. City of N.Y.*, 2018 U.S. Dist. LEXIS 212966 (S.D.N.Y. Dec. 17, 2018). Plaintiff cannot recast that course of treatment as constitutionally deficient by isolating minor, inconsequential, or unintentional delays.

50532869.1

A temporary interruption in otherwise adequate care that does not cause actual harm is insufficient to establish deliberate indifference. *Smith v. Carpenter*, 316 F.3d 178 (2d Cir. 2003). Here, the SAC alleges a mere five-day delay in anticoagulation medication, during which Cruz received alternative steroid-based therapy. The SAC does not allege any injury as a result, in fact, Cruz's allegations are weaker than those rejected by the Second Circuit in *Smith*, where a longer delay in critical medication was held insufficient to state a claim. The SAC states, "Plaintiff finally received her blood thinner medication six days after informing medical staff that her need for the medication was urgent and fortunately did not experience any immediate consequences…" CM/ECF Dkt. No. 78 at ¶ 33.  Plaintiff's own SAC admits that she was administered steroid treatment and did not suffer a serious injury related to the time it took to administer her medication.

Further, Plaintiffs' vague, conclusory criticism of the timing of specialist treatment falls within medical judgment and does not rise to a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976). Again, the SAC itself establishes that treatment decisions were consistently made, monitored, and adjusted over time. Cruz's preference for different treatment does not transform professional judgment into deliberate indifference.

The remaining opposition arguments are inconsistent, conclusory, and/or extrinsic to the SAC:

- Cruz erroneously asserts that she required specialist rheumatology care (Plaintiffs' Opposition, p. 5); but SAC ¶ 25 states her lupus did not require a specialist as she had only begun searching for one.

- Cruz erroneously asserts kidney failure (Plaintiffs' Opposition at pg. 5); SAC ¶ 37 does not allege impaired kidney function.

50532869.1

- Plaintiff asserts that she returned to "her" rheumatologist upon release with crisis-level lupus, yet admits elsewhere that she did not have a rheumatologist prior to incarceration. SAC ¶ 35.

Finally, the SAC allegations regarding a 42-day delay in immunosuppressant medication, the timing of laboratory results, and delayed follow-up care all arise after January 1, 2025 – when YesCare assumed responsibility for medical services at OCCF. These allegations cannot, as a matter of law, be attributed to the NYCCS Defendants.

### ii.    **<u>YesCare</u>**

It is, of course, settled law that to assert a § 1983 claim alleging deliberate indifference to medical needs, a plaintiff must plead facts to support the claim that an individual was personally involved in acts/omissions that amount to a constitutional violation.  YesCare established in its main moving papers that Cruz's claims against it fall well short of that requirement.  Aside from the lack of factual pleading, Cruz's complaint is clearly worded to hedge all bets, while placing no purported individual on notice.  Cruz includes in her caption "DOE DEFENDANTS 1-4"; asserts in her complaint that YesCare is being sued for the acts of "Defendants' agents or employees" (SAC ¶17); asserts that "Individual Doe Medical Defendant 4 worked at OCCF," without mentioning what entity employed that person, or when (moreover, there is no "Individual Doe Medical Defendant 4" in the caption) (SAC ¶19); designates the term "YesCare Defendants" to "expressly include its agents and employees, including any of the Individual Defendants ultimately hired by YesCare" (SAC ¶18 n. 4); and asserts that "[u]pon information and belief," YesCare employed "some" of the Defendant NYCCS employees (SAC ¶151).   In her opposition to the Defendants' joint motion to dismiss the SAC, Cruz is similarly vague in describing the complaint facts.  She attributes acts to, collectively, "Defendants" while citing SAC paragraphs containing

no mention of YesCare's treatment of Cruz.  Plaintiffs' Opposition at pgs. 5-7, citing, eg., SAC ¶¶38-45.  Cruz's attempt to attribute all acts to all defendants is misleading and clearly undertaken to bolster claims that are factually deficient in the first instance.

Cruz's scattershot pleading aimed at unnamed (or otherwise unidentified) individuals who may have worked for or acted as agents of YesCare, NYCCS, or both, is insufficient to state a deliberate indifference claim.  Rule 12(b)(6) provides, among other things, a check on federal civil rights plaintiffs by requiring them to state these very details.  Cruz bore witness to her own medical care and treatment.  She presumably reviewed her medical records before opting to level federal civil rights charges against "individuals."  Her argument that the details of her claims are "peculiarly within Defendants' control," Plaintiffs' Opposition at pg. 8, is thus untrue and improperly faults Defendants for her failure to meet her pleading burden and/or perform due diligence.  Cruz's argument that, even though she failed to identify a single YesCare employee by name or Doe designation, she sufficiently pleaded her claim because she "identified a specific corporate entity, a defined time period, specific treatment failures, and resulting harm" and differentiated between the medical providers and Orange County's role in overseeing medical services (Plaintiffs' Opposition at pgs. 8, 11), is defeated by the bank of cases decided in this Circuit, cited by Defendants (Defendants' MOL at pgs. 3-4), all of which require a plaintiff to identify the acts undertaken by the state actor-defendants to support the pleading of a § 1983 claim.  Cruz, in fact, does not address or distinguish these cases.

Cruz merely denies that she has engaged in impermissible group pleading, contending that "context matters in notice pleading." Plaintiffs Opposition at pg. 7-8.  Cruz relies on *Arias v. East Hartford*, No. 3-20-CV-00895 (JCH), 2021 WL 3268846 (D. Conn. Jan. 30, 2021), in which the court declined to dismiss, under Rule 12(b)(6), claims against four police officers who used

excessive force in arresting and handcuffing the plaintiffs, where the plaintiffs did not identify which officer committed which unconstitutional act. The court held that the personal involvement issue was a "close question" but because the four officers were involved in the plaintiffs' arrest and imprisonment, it might be unreasonable to expect the plaintiff to remember who took what action.

Here, in contrast, Cruz identifies acts/omissions that could have been done by any YesCare employee or agent over a period of about 3½ months. Thus, while the four officers in *Arias* were on notice that they were charged with acts arising in the context of a single event in which they all participated, here, any employee or agent in either or both YesCare and NYCCS could have committed the alleged acts/omissions at some point over a 3½ month span. *Arias* is thus factually and contextually inapplicable to this matter and does not excuse Cruz's vague group pleading. Under the very settled law in this Circuit, the deliberate indifference claims should be dismissed.

### b. *Plaintiff Vargas*

#### i. **NYCCS**

Plaintiff's claims against the individual defendants are as follows:

- **Defendant Harkins**: The SAC alleges Harkins is liable for improperly placing Vargas on suicide watch. SAC ¶ 68, 71.

- **Defendant Zaccagnino**: Vargas alleges that NP Zaccagnino evaluated her on October 7, 2023, and administered medication in response to her complaints of pain (SAC ¶ 77); that she conducted a search of several area hospitals seeking to obtain Vargas's medical records (SAC ¶ 85); and that she ordered x-rays (SAC ¶ 89);

- **Defendant Piacente**: Vargas alleges that Dr. Piacente examined her on October 30, 2023, evaluated her nasal injury, noted a rightward septal deviation, and offered a surgical opinion. SAC ¶¶ 91-93;

- **Defendant Barone**: Plaintiff alleges that Defendant Barone evaluated her and "confirmed her condition," on October 12, 2023.  SAC ¶ 86; and

- **Defendant Washington**: Plaintiff alleges that Defendant Washington evaluated her on October 6, 2023 and administered Tylenol. SAC ¶ 74.

None of the above conduct rises to the level of deliberate indifference.

Both the SAC and Vargas's own opposition establish consistent medical attention that falls well short of deliberate indifference. Ultimately, Vargas admits the following: that she was evaluated multiple times by NYCCS medical providers and staff who documented her condition; that medical staff conducted a search for outside records because she failed to provide critical prior treatment information; that she was prescribed and administered medication; that she underwent diagnostic testing; that she was assessed by a physician who documented her condition and exercised clinical judgment regarding surgical treatment (consistent with her outside surgical specialist – see below); and she was seen by a Social Worker to ensure she did not harm herself.

Critically, Consistent with Dr. Piacente, Vargas's own pleadings establish that her nondisplaced nasal fracture was neither urgent or emergent and did not require immediate surgical intervention. The SAC itself alleges that Vargas's own outside surgical specialist determined emergency intervention was unnecessary and a corrective procedure could be delayed at least 15 days. The timing of elective surgery does not constitute a constitutional violation.

Vargas's opposition also mischaracterizes the grounds for dismissal as relying on "group pleading," and Vargas's reliance on Rule 8 is misplaced. The basis for the motion is not group

pleading, it's much simpler: the failure to allege facts establishing personal involvement in deliberate indifference as to any individual NYCCS Defendant (including Harkins, NP Zaccagnino, Dr. Piacente, and Nurses Washington and Barone).

Finally, as to the objective prong, Vargas' conclusory characterization of her injury as "serious" does not negate her own treating surgeon's determination that that the non-displaced nasal fracture was non-emergent. Self-serving conclusory assertions that contradict well-plead facts are insufficient to satisfy the objective prong. Vargas alleges facts establishing she sustained a nondisplaced non-emergent nasal fracture, which did not require urgent or emergent treatment, on which her outside surgeon and Dr. Piacente agreed. Those facts, standing alone, warrant dismissal of the SAC.[1]

### ii.    **The County**

The County relies on Defendants' moving papers as well as the Medical Defendants' arguments made herein in support of Defendants' position that both Plaintiffs have failed to state a deliberate indifference claim. Notably, Plaintiffs' opposition does not reference the County with regards to the deliberate indifference claim except in relation to the *Monell* argument. *See* Plaintiffs' Opposition at pg. 11. As discussed below, the SAC fails to state a claim against the County under *Monell*.

### PLAINTIFFS FAIL TO STATE A *MONELL* CLAIM AGAINST DEFENDANTS

### a.  *NYCSS*

Plaintiffs' opposition reinforces that the *Monell* claim is properly dismissed. The SAC simply does not allege a formal policy, widespread practice, or deliberate indifference by NYCCS

---

[1] Courts in this Circuit have repeatedly held that a broken nose, absent complications, does not constitute a sufficiently serious medical condition. *Lasher v. City of Schenectady*, 2004 U.S. Dist. LEXIS 14871.

officials who created or enforced relevant policy.  *Freudenberg v. County of Orange*, No. 23-CV-847, 2024 WL 4307176, at *11 (S.D.N.Y. Sept. 25, 2024).

Plaintiffs rely on unadjudicated lawsuits, generalized reports, and investigations, not facts establishing a widespread custom/practice with a direct nexus to the specific factual allegations. The investigations cited by Plaintiffs simply do not "substantiate[ ] wrongdoing of some kind, not to mention wrongdoing at OCCF giving rise to similar constitutional violations." *Freudenberg*, at *11 (internal quotations omitted; citing, *inter alia*, *Marom v. City of New York*, No. 15-CV-2017, 2016 WL 916424, at *22 (S.D.N.Y. Mar. 7, 2016) ("Neither a newspaper report nor an academic paper reporting on incidents that ought to be investigated is a showing of anything entitled to a presumption of truth.")).

### b. YesCare

Cruz's opposition on the *Monell* point, as with her opposition on the personal involvement point, is conclusory, speculative, and leaves most of YesCare's arguments unanswered (see Plaintiffs' Opposition, 25-26).

Significantly, Cruz does not address YesCare's point that she failed to plead facts, including pattern facts, to show that YesCare acted pursuant to a policy of cost-cutting and providing substandard care.  Defendants' MOL at pg. 19-21.  No pattern conduct cited by Cruz at SAC ¶¶121-24 supports this particular allegation, nor do the specific facts of this case—which merely concern alleged administrative failures to timely dispense medication and schedule, or timely schedule, appointments—support the existence of any such alleged policy.  Plaintiffs also ignore YesCare's point that Cruz never alleged that any policymaker knew or should have known of YesCare's alleged pattern conduct, and consciously chose to ignore it.  Defendants' MOL at pgs. 20-21.  While Cruz cites to cases in which plaintiffs survived Rule 12(b)(6) dismissal of

*Monell* claims against "correctional medical contractors" based on policies of cost-driven systemic denial of care, one of the three cases (*Jones v. Westchester County Dept. of Corr.,* 557 F. Supp. 2d 408 (S.D.N.Y. 2008)) does not even concern a contractor, and the plaintiffs in the other two cases pleaded sufficient factual support; as YesCare demonstrated, Cruz did not.

Moreover, Cruz does not address YesCare's irrefutable point that Corizon's litigation and investigative history cannot be attributed to YesCare because YesCare is a different entity.  See Plaintiffs' Opposition at pg. 25.  Cruz merely repeats the allegations against Corizon and makes the completely conclusory argument that those allegations "support the inference that the denial of adequate medical care at OCCF resulted from systemic practices attributable to YesCare rather than isolated incidents." *Id.*  Cruz ignores Yescare's point that Cruz identified no lawsuit against Corizon based on failure to make appointments and dispense medication, nor did Cruz provide the outcomes of the lawsuits beyond stating that in one case, the plaintiff and his family received an award for $6 million for "pain and suffering." Defendants' MOL at pgs. 21-22.  Thus, Cruz provides no support for her claim that Corizon had a policy of denying care to cut costs.  Lastly, Cruz fails to address YesCare's significant point that she pleaded no facts to support any causal link between the alleged cost-cutting/denial of sufficient care policy and her injury.  Defendants' MOL at pgs. 21.

    c.  *The County*

The cases cited by Plaintiffs in support of their *Monell* claim against the County are distinguishable and/or unavailing. For the reasons set forth in Defendants' moving papers and this reply, the SAC's *Monell* claim should be dismissed.

Plaintiffs argue that "Courts routinely permit *Monell* claims against correctional healthcare providers based on allegations that cost-driven policies resulted in delayed or denied medical

treatment" and cite several cases in support of that proposition. *See* Plaintiffs' Opposition at pg. 18. As an initial matter, however, the cases cited by Plaintiffs do not allege the same kind of broad, amorphous policy alleged in the SAC; instead, those cases allege a specific policy of purposely delaying treatment until detainees are transferred out of their respective facilities to avoid costs. There are no factual allegations in the SAC linking any "cost-cutting" policy to the alleged deficiencies in medical care. Rather, the SAC offers no explanation for such deficiencies. *See* SAC at ¶¶ 30 ("Those officials did not give any explanation as to why [Ms. Cruz] was not getting her necessary medication."); 33 ("…there was no explanation for the delay in prescribing and ordering Plaintiff's critical medication").

Plaintiffs' reliance on *Jones v. Westchester Cty. Dep't of Corr. Med. Dep't*, 557 F.Supp.2d 408, 417 (S.D.N.Y. 2008), is misplaced for two reasons. First, the plaintiff in *Jones* was pro se.  In denying that portion of Westchester County's motion to dismiss the *Monell* claim, the Court specifically credited plaintiff's pro se status. *See Jones*, 557 F.Supp.2d at 417 ("Construing the pleading liberally in favor of the pro se petitioner, I find that Jones has stated a claim."). In contrast, here, Plaintiffs are represented by counsel and have already had more than one opportunity to amend the complaint. Second, the alleged municipal policy and custom in Jones was specific and definable. *See* id. (describing the alleged "custom of denying medical procedures to pre-trial detainees who are soon to be transferred"). Here, the policy alleged by Plaintiffs (i.e., contracting with cost-cutting medical providers to provide deficient medical care) is substantively different and so broad as to undermine the plausibility that any such policy existed.

Plaintiffs also rely on *Lehal v. Central Falls Detention Facility Corp.*, No. 13-cv-3923, 2016 WL 7377238, *1 (S.D.N.Y. No. 21, 2016). Similar to *Jones*, the plaintiff in *Lehal* alleged a policy of delaying medical treatment until after the detainees were transferred out of the facility in

order to save money. *See* id. at \*10-11. In support of that policy, the operative complaint specifically "alleged a concerted effort by numerous different [defendant] employees and contractors to determine [plaintiff's] sentencing and transfer date, by asking him directly, searching through his privileged legal mail, and attending his court proceedings." Id. at \*11.  Here, by contrast, the SAC does not make any factual allegations that the alleged delay in medical treatment was in any way related to Plaintiffs' transfer or release dates. *See*, e.g., SAC at ¶¶ 47-49 (allegedly delayed medical treatment by outpatient rheumatologist occurred prior to Ms. Cruz's release from OCCF).  Indeed, the only allegation in the SAC tying the allegedly delayed treatment to cost-cutting is a patently conclusory statement made "upon information and belief" and devoid of any factual support. *See* SAC at ¶ 50 ("Upon information and belief, the YesCare Defendants and the Orange County Defendants were made aware of Ms. Cruz's likely release from detention and determined not to provide care to avoid the costs associated with that care."). That's not enough under *Twombly* and *Iqbal*.  Further, Plaintiff Cruz's claim is undermined by her admission that she was seen by the rheumatologist before her transfer out of OCCF. Thus, any inference of a policy of delaying treatment until she was released from OCCF to avoid costs is baseless.  As to Plaintiff Vargas, the SAC does not make any factual allegations tying the allegedly delayed treatment to her transfer/release date or any other cost-cutting effort.  Thus, *Lehal* is inapposite.

Plaintiffs' reliance on the *Sanchez* case, meanwhile, completely undermines their *Monell* claim against the County. *See Sanchez v. New York Corr. Care Solutions Med. Services, P.C.*, No. 16-CV-6826, 2018 WL 6510759, \*1 (W.D.N.Y. Dec. 11, 2018). The *Sanchez* Court specifically found that the "allegations are not sufficient to plausibly state a *Monell* claim against Monroe County." *See* id. at \*11 (emphases added). Here, Plaintiffs' allegations are likewise insufficient to state a *Monell* claim against the County.

Plaintiffs also cite several cases in support of their position that allegations from other lawsuits can be sufficient to allege a custom or practice under *Monell*. As explained in Defendants' moving papers, however, the other lawsuits referenced in the SAC do not allege the same injuries or "cost-cutting" policy at issue here. The cases cited by Plaintiffs are distinguishable because the underlying lawsuits in those cases did allege the same injury/policy at issue. *See, e.g., Osterhoudt v. City of New York*, No. 10 CV 3173(RJD)(RML), 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012) (complaints cited in pleading alleged same injury/policy of "arresting political demonstrators without determining probable cause on an individual basis").

*White*, on the other hand, is distinguishable because the Court, in deciding the *Monell* issue and finding that the plaintiff plausibly alleged a sufficiently widespread practice of which policymakers must have been aware, relied primarily on the DOJ Findings Letter included in that complaint. *See White v. City of New York*, No. 13-CV-7421 (KPF), 2015 WL 4601121, *6-7 (S.D.N.Y. July 31, 2015) ("In the instant case, the Court is persuaded that Plaintiff's incorporation of the DOJ Findings Letter, which details the rampant use of excessive force at Rikers Island, 'nudges Plaintiff's claims across the line from conceivable to plausible.'") (internal alterations/citation omitted).  The DOJ Findings Letter was based on an investigation in which the DOJ reviewed "hundreds of thousands of pages of records" and approximately "200 use of force incidents." Id. at *3.  Here, the only similar document relied upon by Plaintiffs is the NYSCOC report stemming from a single incident involving the death of an inmate. *See* SAC at ¶ 136. While the SAC alleges that NYSCOC investigated "at least three deaths at OCCF," the SAC only cites to the one report involving the single incident. Id. Thus, unlike in *White*, Plaintiffs' reliance on the extremely limited NYSCOC report does not support an inference that there was a sufficiently widespread practice of which policymakers must have been aware.

Plaintiffs' reliance on several cases finding that municipal liability may be "established through a persistent and widespread practice that implies the constructive acquiescence of senior officials" (*see* Plaintiffs' Opposition at pgs. 21-22) is beside the point. Defendants' position, as set forth in their moving papers and this reply, is that the SAC's factual allegations fail to plausibly allege the existence of any persistent and widespread practice of cost-cutting deficient medical care.

Plaintiffs also fail to substantively address Defendants' causation argument. Plaintiffs gloss over the fact that the SAC fails to allege that the alleged cost-cutting policy was the "moving force" behind their alleged injuries. Without citing any supporting caselaw, Plaintiffs assert that the SAC's allegations of delayed medical care "permit the reasonable inference that the harms suffered by Plaintiffs were not the result of isolated clinical judgment but rather the predictable consequence of a medical system that routinely delayed and denied necessary care." *See* Plaintiff's Opposition at pg. 19. But, again, Plaintiffs contort the alleged policy to fit their argument by dropping any reference to cost-cutting. The SAC does not include factual allegations linking a cost-cutting policy of providing deficient medical care to the specific alleged instances of delayed medical care. Nor does the SAC include factual allegations linking the County to said policy or the alleged incidents. Indeed, the undisputed fact that the County replaced its medical provider during the timeframe covered by the SAC cuts against any inference that the County had a policy of contracting with cost-cutting medical providers to provide deficient medical care. Thus, any inference that said policy was the "moving force" behind Plaintiffs' alleged injuries would not be reasonable.

**PLAINTIFFS STATE LAW CLAIMS ARE BARRED**

a. *NYCCS*

Plaintiffs do not dispute that Cruz failed to comply with New York's notice-of-claim requirement. In fact, Plaintiff's application to bring a late notice of claim has been denied and the time to appeal has passed.  Plaintiffs have thus abandoned the state law claims against Defendants Harkins, Defendant Zaccagnino, Dr. Piacente, RN Barone, and RN Washington.

As to the remaining NYCCS Defendants, Plaintiff's state-law claims for medical malpractice/negligence fail as a matter of law. Plaintiffs make no attempt to remedy the pleading deficiencies in their opposition.

For the same reasons articulated above, the state law claims reflect, at most, disagreement with medical judgment – not a departure from accepted standards.

Plaintiff's attempt to elevate these allegations to gross negligence is equally unavailing. Under New York law, gross negligence requires conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing," amounting to a failure to exercise even slight care. *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 823–24 (1993).

The SAC contains no non-conclusory factual allegations approaching that heightened standard; to the contrary, the SAC admits ongoing consistent treatment and clinical decision-making.

Accordingly, the state-law claims for medical malpractice, negligence, and gross negligence must be dismissed in their entirety.

b. *YesCare*

Cruz ignores YesCare's argument that her negligence claim actually sounds, instead, in medical malpractice.  Cruz ignores the fact that because she fails to identify who at YesCare

committed what act, and what professional titles and responsibilities the alleged "YesCare Defendants" held, it is impossible to discern the standard of care and alleged departures committed by individual YesCare employees. Once again, Cruz's deficient pleading deprives YesCare of notice of what, precisely, Cruz alleges against it.

Nor does Cruz explain how YesCare providers' conduct rose to the level of gross negligence, conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing," and reflects a failure to exercise even slight care. *Colnaghi, USA, Ltd. V. Jewelers Prot., Servs. Ltd.*, 81 N.Y.2d 821, 823-24 (1993). Cruz makes no effort to address the claims against YesCare in terms of whether the alleged acts/omissions rise to this significantly heightened pleading standard. Instead, she again lumps the "Defendants" together in describing their acts as failing to respond to the Plaintiffs' medical conditions, ignoring symptoms, delaying treatment, and failing to provide prescriptive medication. Plaintiffs' Opposition at pg. 28. The claims against YesCare, however, are limited to Cruz, and amount merely to belated action and the failure to provide two days' worth of blood thinners. These facts do not evince something less than slight care and certainly do not evince intentional wrongdoing. Cruz's claim that whether Defendants' conduct constitutes gross negligence is a "factual question that cannot be resolved on a motion to dismiss" Plaintiffs' Opposition at pg. 28 attempts to misdirect the Court, which is empowered to dismiss a claim under Rule 12(b)(6), if a plaintiff cannot plausibly plead facts to support it. Cruz should not be permitted to proceed on claims that she cannot state in the first instance, on the hope that she may subsequently stumble upon proof.

c. *The County*

### a. <u>Medical Malpractice</u>

The County relies on Defendants' moving papers as well as the Medical Defendants' arguments made herein in support of its position that Plaintiffs have failed to state a claim for medical malpractice. Plaintiffs fail to address the County's arguments in the moving papers. *See* Defendants' MOL at pg. 28-29; Plaintiffs' Opposition at pgs. 28-30. Plaintiffs cite a single case which *dismisses* a medical malpractice claim against individual medical defendants and which does not otherwise address any medical malpractice claim made against a municipality. *See Fleming v. City of New York,* No. 18 Civ. 4866, 2019 WL 4392522, at *19 (S.D.N.Y. Aug. 27, 2019).

### b. <u>Notice of Claim</u>

Plaintiffs admit that Cruz's state law claims "may require dismissal" but contend that "any such dismissal must be without prejudice" because the state law petition to file a late notice of claim was pending. *See* Plaintiffs' Opposition at pg. 30. As an initial matter, Plaintiffs' state law petition had already been denied by the time Plaintiffs served their opposition on March 20, 2026. Specifically, the petition was denied in a Decision and Order dated March 4, 2026. *See Cruz v. Orange County*, Index No. EF007296-2025, Doc. No. 19. No appeal was taken and the time to appeal has since expired. *See id.* at Doc. No. 20 (notice of entry served on March 13, 2026). Thus, Cruz's state law claims must be dismissed in their entirety as against all moving Defendants because she failed to file a timely notice of claim and because her petition to file a late notice of

claim was dismissed. Further, because no appeal was taken and the time to appeal has expired, Cruz's state law claims must be dismissed with prejudice.[2]

### c.  CPLR § 215(1)

Plaintiffs' opposition on the County's statute of limitations argument also fails. First, the only state law claim against the County is the medical malpractice claim.  Plaintiffs cite a single trial court decision from 1991 for the proposition that "a county may be held vicariously liable for malpractice committed in the course of [a jail physician's] treatment."  *Id.* at p. 32.  That decision, however, *does not* deal with CPLR § 215(1) or otherwise address the statute of limitations issue. *See Douglas v. County of Oswego,* 151 Misc. 2d 239, 242 (Sup. Ct. Oswego Cnty. 1991). Regardless, the County cannot be liable for medical malpractice based on a theory of vicarious liability for the reasons set forth in Defendants' moving papers.

### d.  County Not Liable for Acts of Sheriff

Again, Plaintiffs fail to address the County's argument that the County cannot be held vicariously liable for the acts of the medical providers where there are no allegations that the County directly appointed the underlying medical professionals or that they were acting as County officers or employees. *See* Defendants' MOL at pg. 28-29.

### CONCLUSION

Based on the foregoing, the SAC must be dismissed, in its entirety, as to each of the Defendants.

---

[2] A second petition was filed on December 12, 2025, and was discontinued, with prejudice, on April 22, 2026. *See* EF012370-2025. A third petition was inexplicably filed on April 11, 2026. *See* EF003694-2026. The County will oppose that petition as patently improper based on the initial petition's dismissal.

50532869.1